UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DEVROL PALMER,

                            Plaintiff,

                                                    9:16-cv-00027
v.                                                  (GLS/TWD)


DR. MICHAEL SEIDMAN, et. al.,

                            Defendants.
_____

APPEARANCES:                          OF COUNSEL:

DEVROL PALMER
Plaintiff, *pro se*
Trysee
Brown's Town P.O.
St. Ann
Jamaica WI

BARBARA D. UNDERWOOD              SHANNAN C. KRASNOKUTSKI, ESQ
Attorney General of the State of New York
Attorney for Defendants
The Capitol
Albany, New York 12224

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## REPORT-RECOMMENDATION AND ORDER

## I.    INTRODUCTION

This *pro se* civil rights action, commenced pursuant to 42 U.S.C. §1983, has been

referred for Report and Recommendation by the Hon. Gary L. Sharpe, Senior U.S. District

Judge, pursuant to 28 U.S.C. § 636(b) and Northern District of New York Local Rule ("L.R.")

72.3 (c).  Plaintiff Devrol Palmer, a former inmate of the New York State Department of

Corrections and Community Supervision ("DOCCS"), alleges Eighth Amendment deliberate

indifference claims against Defendants Dr. Michael Seidman, C. Wheeler, K. Wyen, J. Parks, Grace Kennedy, and C. Hayes.  (Dkt. No. 28 at 2.[1])

Defendants, with the exception of K. Wyen who has not been properly served in this action, have moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("FRCP").  (Dkt. No. 80.)  Plaintiff has not opposed the motion despite the Court *sua sponte* granting an extension of time within which to do.  (Dkt. No. 84.)  For reasons explained below, the Court recommends that Defendants' motion for summary judgment (Dkt. No. 80) be granted and that Plaintiff's amended complaint (Dkt. No. 28) be dismissed in its entirety.

## II.    BACKGROUND

Dr. Seidman treated Plaintiff for his seizure disorder at Riverview Correctional Facility ("Riverview") from August 2014, through September 2015.[2]  (Dkt. No. 80-1 at 2.)  At all relevant times, Dr. Seidman prescribed Plaintiff Keppra, an anti-seizure medication, to be taken twice a day on a "nurse administered" or "1:1" basis.  *Id.*  Plaintiff alleges he missed multiple doses of Keppra from July 10, 2015, through July 23, 2015, while in transit from Riverview to a court appearance in Bronx, New York, which involved stops at Watertown Correctional Facility ("Watertown") and Ulster Correctional Facility ("Ulster").  (Dkt. No. 28 at 3-5.)

Specifically, Plaintiff claims he missed the following scheduled doses of Keppra:

(1) July 10, 2015, a.m. dose at Riverview;

(2) July 13, 2015, a.m. dose at Watertown;

---

[1]  Page references to documents identified by docket number are to the numbers assigned by the CM/ECF docketing system maintained by the Clerk's Office.

[2]  Plaintiff was released to parole supervision on September 14, 2015.  *See* http://nysdoccslookup.doccs.ny.gov (information for former inmate Devrol Palmer, DIN 01-A-4746) (last visited August 13, 2018) (noting Palmer was conditionally released to immigration). In February 2017, Plaintiff was deported from the United States to Jamaica, where he currently resides.  (Dkt. 80-17 at 4, 10-12.)

(3) July 13, 2015, p.m. dose at Ulster;

(4) July 14, 2015, a.m. dose at Ulster;

(5) July 15, 2015, a.m. dose at Ulster;

(6) July 21, 2015, a.m. dose at Ulster;

(7) July 23, 2015, a.m., dose at Watertown; and

(8) July 23, 2015, p.m. dose at Riverview.

*Id.* Plaintiff also claims he missed his morning/early afternoon dose of Keppra on July 25, 2015, at Riverview. *Id.* at 5. Later that afternoon, on July 25, 2015, Plaintiff suffered two seizures. *Id.* at 6.

Plaintiff alleges Dr. Seidman was deliberately indifferent to his serious medical needs because he prescribed Keppra on a 1:1 basis, failed to provide appropriate instruction or otherwise ensure Plaintiff received his medication while in transit in July 2015, and was grossly negligent in his supervision of subordinates. *Id.* at 6-10. Plaintiff alleges Parks, Hayes, Kennedy, and Wheeler were deliberately indifferent to his serious medical needs by failing to administer scheduled doses of Keppra at various point in time in July 2015, thereby contributing to his medication "falling below the therapeutic level" and causing Plaintiff's seizures on July 25, 2015. *Id.* at 10-17.

Dr. Seidman, Parks, and Hayes have submitted declarations in support of Defendants' motion, along with declarations from non-party Nurse Administrators at Riverview, Watertown, and Ulster. (Dkt. Nos. 80-1 through 80-17.) Generally, Defendants contend Dr. Seidman is entitled to summary judgment because he provided appropriate treatment, does not develop policy, and does not supervise any other Defendant. (Dkt. No. 82 at 10-14.) Wheeler, Parks, Kennedy, and Hayes seek summary judgment for lack of personal involvement because they

were either (1) not working during the shift they allegedly failed to administer medication; (2) actually administered the alleged missed dose, and/or (3) Plaintiff was marked as a "No Show" for the alleged missed dosage. *Id.* at 14-19.

## III.  APPLICABLE LEGAL STANDARD

Summary judgment may be granted only if the submissions of the parties taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); Fed. R. Civ. P. 56(c).  The party moving for summary judgment bears the initial burden of showing, through the production of admissible evidence, no genuine issue of material fact exists. *Salahuddin v. Goord*, 467 F.3d 263, 272-73 (2d Cir. 2006).  A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248.

Only after the moving party has met this burden is the nonmoving party required to produce evidence demonstrating genuine issues of material fact exist.  *Salahuddin*, 467 F.3d at 272-73.  The nonmoving party must do more than "rest upon the mere allegations . . . of the [plaintiff's] pleading" or "simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). "Conclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact."  *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998).

A party opposing summary judgment is required to submit admissible evidence.  *See Spiegel v. Schulmann*, 604 F.3d 72, 81 (2d Cir. 2010) ("It is well established that in determining the appropriateness of a grant of summary judgment, [the court] . . . may rely only on admissible evidence.") (quotation marks omitted).  A plaintiff's verified complaint is to be treated as an

affidavit.[3]  *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995) ("A verified complaint is to be treated as an affidavit . . . and therefore will be considered in determining whether material issues of fact exist . . . .") (citations omitted).

In *Jeffreys v. City of New York*, the Second Circuit reminded that on summary judgment motions "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could *reasonably* find for the plaintiff." 426 F.3d 549, 554 (2d Cir. 2005).  "At the summary judgment stage, a nonmoving party must offer some hard evidence showing that its version of the events is not wholly fanciful."  *Id.* (citation and internal quotation marks omitted).  "To defeat summary judgment, . . . nonmoving parties may not rely on conclusory allegations or unsubstantiated speculation."  *Id.* (citation and internal quotation marks omitted).  "[T]o satisfy [FRCP] Rule 56(e), affidavits must be based upon 'concrete particulars,' not conclusory allegations."  *Schwapp v. Town of Avon*, 118 F.3d 106, 111 (2d Cir. 1997) (citation omitted).  "Statements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment."  *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999).

In determining whether a genuine issue of material fact exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party.  *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008).  Where a party is proceeding *pro se*, the court is obliged to "read [the *pro se* party's] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest."  *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994); *see also Ruotolo v. IRS*, 28 F.3d 6, 8 (2d Cir. 1994) (district court

---

[3]  The Court finds Plaintiff's amended complaint was adequately verified under 28 U.S.C. § 1746 by Plaintiff's declaration under penalty of perjury.  (Dkt. No. 28 at 1, 20.)

"should have afforded [*pro se* litigants] special solicitude before granting the . . . motion for summary judgment"). However, "a *pro se* party's 'bald assertion,' unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Cole v. Artuz*, No. 93 Civ. 5981 (WHP) (JCF), 1999 WL 983876, at *3 (S.D.N.Y. Oct. 28, 1999)[4] (citing *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

When a party fails to respond to a motion for summary judgment, "[t]he fact that there has been no [such] response . . . does not . . . mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). Rather, the Court must (1) determine what material facts, if any, are undisputed in the record; and (2) assure itself that, based on the undisputed material facts, the law indeed warrants judgment for the moving party. *Id.*; *see also Giannullo v. City of New York*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

## IV.    PLAINTIFF'S FAILURE TO COMPLY WITH L.R. 7.1(A)(3)

While courts are required to give due deference to a plaintiff's *pro se* status, that status "does not relieve [a *pro se*] plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment." *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003). In this case, Plaintiff has failed to respond to Defendants' statement of material facts as required under L.R. 7.1(a)(3).[5]

---

[4]  Copies of all unpublished decisions cited herein will be provided to Plaintiff in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

[5]  L.R. 7.1(a)(3) requires the opposing party to file a response to the movant's statement of material facts. Under the rule, the response "shall mirror the movant's statement of material facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs. Each denial shall set forth a specific citation to the record where the factual issue arises."

Where a party has failed to respond to the movant's statement of material facts, the facts in the movant's statement will be accepted as true (1) to the extent they are supported by evidence in the record,[6] and (2) the nonmovant, if proceeding *pro se*, has been specifically advised of the possible consequences of failing to comply with the requirements of FRCP Rule 56(e) and L.R. 7.1.[7]  *See Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996).

This Circuit adheres to the view that nothing in FRCP Rule 56 imposes an obligation on the court to conduct a search and independent review of the record to find proof of a factual dispute where a nonmovant willfully fails to respond to a properly filed summary judgment motion.  *Amnesty Am. v. Town of West Hartford*, 288 F.3d 467, 470 (2d Cir. 2002).  However, the Second Circuit has ruled that "[a] district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules," including local rules relating to requirements regarding the submission of and response to statements of material facts on summary judgment motions, and to "conduct an assiduous review of the record."  *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001) (citation and internal quotation marks omitted).  In deference to Plaintiff's *pro se* status, the Court has opted to review the entire summary judgment record.

---

[6]  L.R. 7.1(a)(3) provides that "The Court shall deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert."  *But see Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d. Cir. 2004) ("[I]n determining whether the moving party has met his burden of showing the absence of a genuine issue for trial, the district court may not rely solely on the statement of undisputed facts in the moving party's [Statement of Material Facts].  It must be satisfied that the citation to evidence in the record supports the assertion.") (citations omitted).

[7]  Plaintiff was provided with the requisite notice of the consequences of his failure to respond to their summary judgment motion.  (Dkt. No. 83.)

## V.    DISCUSSION

### A.    Personal Involvement

The law is settled that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citing *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991); *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977)).  In order to prevail on a § 1983 cause of action against an individual, a plaintiff must show "a tangible connection between the acts of a defendant and the injuries suffered." *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*.").  Thus, "[h]olding a position in a hierarchical chain of command, without more, is insufficient to support a showing of personal involvement." *Groves v. Davis*, No. 9:11-CV-1317 (GTS/RFT), 2012 WL 651919, at *6 (N.D.N.Y. Feb. 28, 2012) (citing *McKinnon*, 568 F.2d at 934).

To establish responsibility on the part of a supervisory official for a civil rights violation, a plaintiff must demonstrate that the individual (1) directly participated in the challenged conduct; (2) after learning of the violation through a report or appeal, failed to remedy the wrong; (3) created or allowed to continue a policy or custom under which unconstitutional practices occurred; (4) was grossly negligent in managing the subordinates who caused the unlawful event; or (5) failed to act on information indicating that unconstitutional acts were occurring.  *Colon*, 58 F.3d at 873 (citing *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir.

1986)).[8]  "Further, a [§] 1983 plaintiff must 'allege a tangible connection between the acts of the defendant and the injuries suffered.'"  *Austin v. Pappas*, No. 04-CV-7263, 2008 WL 857528, at *2 (S.D.N.Y. Mar. 31, 2008) (quoting *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986)) (other citation omitted).

### B.    Deliberate Indifference to Serious Medical Needs

Claims that prison officials have intentionally disregarded an inmate's serious medical needs fall under the Eighth Amendment umbrella of protection from the imposition of cruel and unusual punishments.  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  Prison officials must ensure, among other things, that inmates receive adequate medical care.  *Id*. (citing *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)).  A claim that prison officials have intentionally disregarded an inmate's serious medical needs has both objective and subjective elements.  *Caiozzo v. Koreman*, 581 F.3d 63, 72 (2d Cir. 2009).

To meet the objective requirement, the alleged deprivation must be "sufficiently serious."  *Farmer*, 511 U.S. at 844; *see also Salahuddin*, 467 F.3d at 280 ("[T]he objective test asks whether the inadequacy in medical care is sufficiently serious.").  Factors informing this inquiry include "whether a reasonable doctor or patient would find it important and worthy of comment, whether the condition significantly affects an individual's daily activities, and whether it causes chronic and substantial pain."  *Salahuddin*, 467 F.3d at 280 (quotation marks and alterations omitted); *see also Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (determining whether a deprivation is sufficiently serious requires a court to examine the seriousness of the deprivation, and whether the deprivation represents "a condition of urgency, one that may produce death,

---

[8]  The Second Circuit has not yet addressed how the Supreme Court's decision in *Iqbal* affected the standards in *Colon* for establishing supervisory liability.  *See Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013).

degeneration, or extreme pain[.]" (quotation marks omitted)).  Importantly, it is "the particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather than the severity of the prisoner's underlying medical condition, considered in the abstract, that is relevant for Eighth Amendment purposes."  *Smith v. Carpenter*, 316 F.3d 178, 186 (2d Cir. 2003).

To satisfy the subjective element, the plaintiff must demonstrate that defendants had "the necessary level of culpability, shown by actions characterized by 'wantonness.'"  *Blyden v. Mancusi*, 186 F.3d 252, 262 (2d Cir. 1999).  "In medical-treatment cases . . . , the official's state of mind need not reach the level of knowing and purposeful infliction of harm; it suffices if the plaintiff proves that the official acted with deliberate indifference to inmate health."  *Salahuddin*, 467 F.3d at 280.  "Deliberate indifference," in a constitutional sense, "requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result."  *Id.*; *see also Farmer*, 511 U.S. at 837 ("[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.").  "Deliberate indifference is a mental state equivalent to subjective recklessness, as the term is used in criminal law."  *Salahuddin*, 467 F.3d at 280 (citing *Farmer*, 511 U.S. at 839-40).

Disagreements over medication, diagnostics, forms of treatment, and the need for specialists are not adequate grounds for a § 1983 claim, since those issues implicate medical judgment and at worst negligence constituting malpractice.  *See Sonds v. St. Barnabas Hosp. Corr. Health Servs.*, 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001).  Stated another way, "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner."  *Estelle*, 429 U.S. at 106; *accord Hill*, 657 F.3d at 123; *see also Smith*, 316 F.3d at 184 ("Because

the Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute

for state tort law, not every lapse in prison medical care will rise to the level of a constitutional

violation.").

C.    **Analysis**

1.    **Serious Medical Need**

Since his arrival at Riverview in August 2014, Plaintiff received on-going treatment for

his seizure condition and was prescribed Keppra, 500 mg, twice daily.  (Dkt. No. 80-1 at 2.)

Plaintiff alleges he missed multiple doses of his required seizure medication from July 10, 2015,

through July 25, 2015, and, as a result, he suffered two seizures on July 25, 2015.  (Dkt. No. 28

at 3-6.)  Thus, for purposes of this motion, the Court finds Plaintiff's seizure condition

constitutes a serious medical need.[9]  *See, e.g.*, *Harrington v. Vadlamudi*, No. 9:13-CV-

0795(BKS/DJS), 2016 WL 4570441, at *7 (N.D.N.Y. Aug. 9, 2016) (finding a seizure condition

is a serious medical condition); *Bennett v. Hunter*, No. 9:02-CV-1365 (FJS/GHL), 2006 WL

1174309, at *3 (N.D.N.Y. May 1, 2006) (same).

2.    **Dr. Seidman**

Plaintiff claims Dr. Seidman was deliberately indifferent to his serious medical needs

because he (1) prescribed Keppra on a 1:1 basis as opposed to "self-carry" while in transit; (2)

failed to ensure Plaintiff would receive his medication as scheduled; and (3) was grossly

negligent in his supervision of subordinates.  (Dkt. No. 28 at 7-10.)

The Court finds no reasonable fact finder could conclude that Dr. Seidman's treatment

was inadequate or, to the extent it could be construed as inadequate, which the Court seriously

---

[9]  Defendants do not address the first prong of the deliberate indifference standard in their memorandum of law.  (Dkt. No. 80-2.)

doubts, that Dr. Seidman acted with a culpable state of mind. Plaintiff's allegations boil down to a disagreement regarding the course of treatment Dr. Seidman chose. The Eighth Amendment does not afford prisoners a right to medical treatment of their choosing, and prison medical personnel are vested with broad discretion to determine what method of care and treatment to provide their patients. *Estelle*, 429 U.S. at 107.

In addition to work in the private and academic sectors, Dr. Seidman has been employed by DOCCS since 1987, and has been the Medical Director at Riverview since 2005. (Dkt. No. 80-1 at 1-2.[10]) As Medical Director, his duties include treating inmate patients and supervising other physicians at Riverview. *Id*. at 2.

Dr. Seidman prescribed Keppra to Plaintiff, to be taken twice a day on an 1:1 or nurse administrated basis. (Dkt. No. 80-1 at 2; Dkt. No. 80-2.) Generally, Plaintiff alleges Dr. Seidman was deliberately indifferent to his serious medical needs because he failed to prescribe Keppra as "self-carry" or "keep on person" while out to court. (Dkt. No. 28 at 7-8.) In support of Defendants' motion, Dr. Seidman declares:

> My prescription of Keppra to Plaintiff reflected my medical judgment that Plaintiff required this medication, in the dosage and the frequency at which I prescribed it to him. When I prescribed this medication to Plaintiff on a 1:1 basis, I understood that my medical orders would be carried out, and that Plaintiff would continue to receive this medication, whether at Riverview or elsewhere. It was certainly my intention that my orders be carried out.

*Id*. at 4. Indeed, Dr. Seidman considers nurse administration to be the most appropriate means of dispensing seizure medications. *Id*. He explains requiring nurse administration of essential

---

[10] Dr. Seidman received his medical degree from Boston University in 1979. (Dkt. No. 80-1 at 1.) He completed residences at Montefiore Hospital in Bronx, New York and SUNY HSC Brooklyn in Brooklyn, New York. *Id*. He is board certified in Internal Medicine and Nephrology. *Id*.

medication reduces problems of non-compliance, which otherwise arise frequently in a correctional facility setting. *Id.* Similarly, requiring nurse administration avoids improper dosing or overdose of seizure medications. *Id.* In fact, during the many years Dr. Seidman has worked as a DOCCS physician, he has always prescribed seizure medication on a 1:1 basis, and he continues to prescribe these medications on a 1:1 basis for all seizure patients currently housed at Riverview. *Id.*

As to Plaintiff's claim that Dr. Seidman "failed to provide specific written instruction" or otherwise failed to ensure that Plaintiff would not "miss" his medication while in transit, Dr. Seidman does not develop procedures relating to transport of inmates. *Id.* at 3. Rather, such policies are contained in DOCCS Directives originating from Central Office. (Dkt. Nos. 28 at 8, 80-1 at 2-3.) Dr. Seidman's role is to issue orders and prescribe medication for the proper treatment of his patients at Riverview. *Id.* at 2. Thus, when Dr. Seidman's patients are in transit, he relies on DOCCS policies and procedures to ensure continuity of their care. *Id.* Among those procedures, when transfer of an inmate is anticipated, medical staff complete documentation informing transporting personnel and receiving facilities of an inmate's ongoing medical needs. *Id.* Accordingly, non-party medical staff issued an Intersystem Transfer/Pre-Screening Form for Plaintiff on June 26, 2015, indicating, among other health information, Plaintiff has a seizure disorder, and requires "1:1 drugs" and a bottom bunk. (Dkt. No. 81-2.) Dr. Seidman explains that completion of that form was to facilitate continuation of Plaintiff's medical treatment pursuant to his orders while in transit. *Id.* at 4. Plaintiff's claim that Dr. Seidman should have changed his medication regimen prior to his court trip amounts to nothing more than a disagreement and preference over medical treatment. *See, e.g.*, *Patterson v. Lilley*, No. 02 Civ.6056 NRB, 2003 WL 21507345, at *5 (S.D.Y.Y. June 30, 2003) (finding prisoner's

disagreements with method in which medication was administered involved mere difference of opinion rather than deliberate indifference).

As to Plaintiff's contention Dr. Seidman was "grossly negligent in managing subordinates," Dr. Seidman does not supervise any other Defendant in this action. (Dkt. No. 28 at 9.) As Medical Director, Dr. Seidman has supervisory authority over other physicians at Riverview. (Dkt. No. 80-1 at 2.) He does not, however, supervise the nurses at Riverview; these employees are supervised by Nurse Administrator Lisa Cota. *Id.*; *see also* Dkt. No. 80-4 at 1.[11] Nor does Dr. Seidman supervise personnel at any other DOCCS facility. (Dkt. No. 80-1 at 2.)

Nevertheless, at this juncture, Plaintiff has not identified and/or properly served any Riverview employee who allegedly failed to provide him with medication on one of the specified dates at issue. While Plaintiff claims he did not receive his morning dose of Keppra at Riverview on July 10, 2015, the Court notes Plaintiff has not named any individual responsible for this incident, and, notably, Plaintiff's Treatment and Medication Record ("TMR") indicate both scheduled doses were administrated to Plaintiff at Watertown on that date. (Dkt. No. 28 at 11; Dkt. No. 80-11 at 2.) As to Plaintiff's claim that K. Weyn, purportedly a registered nurse at Riverview, failed to provide him with medication on the afternoon of July 23, 2015, no individual identified as K. Weyn had been properly served in this action. A summons addressed to K. Weyn at Riverview was returned unexecuted. (Dkt. No. 28 at 14-15; Dkt. No. 40.) Finally, although Plaintiff claims he missed his scheduled medication on the morning of July 25, 2015, Plaintiff apparently attributes that failure to unnamed corrections officers supervising

---

[11]    As Nurse Administrator at Riverview, Cota's responsibilities include the supervision of the nursing staff, nursing scheduling, monitoring time and attendance of nursing staff, training of nursing staff, and overseeing the provision of nursing care to patients. (Dkt. No. 80-4 at 1.)

Riverview's Rastafarian Family Day event on July 25, 2015, rather than to any subordinate of Dr. Seidman.  (*See* Dkt. No. 28 at 5-6, 18.)

Based on the foregoing, the Court recommends granting summary judgment to Dr. Seidman.

### 3.    Parks

Plaintiff claims Parks failed or refused to provide him his morning doses of Keppra on July 13, 2015, and July 23, 2015, prior to his departure from Watertown on each of those dates. (Dkt. No. 28 at 10.)  Parks seeks summary judgment for lack of personal involvement.  (Dkt. No. 82 at 17-18.)  "It is axiomatic that, as with any other type of civil rights violations, personal involvement in the conduct giving rise to a deliberate indifference claim is a prerequisite to a finding of liability."  *Johnson v. Adams*, No. 914-CV-0811 (GLS/DEP), 2016 WL 6604129, at *7 (N.D.N.Y. July 25, 2016) (collecting cases).

Michelle McCormick, Nurse Administrator at Watertown has submitted a declaration in support of Defendants' motion.  (Dkt. No. 80-11 at 1.)  Her responsibilities in this position include the supervision of the nursing staff, nursing scheduling, monitoring time and attendance of nursing staff, training of nursing staff, and overseeing the provision of nursing care to patients. *Id*.  Attached to her declaration are Watertown's nursing duty records for July 2015 and Plaintiff's TMR.  (Dkt. Nos. 80-11; 80-12; 80-13.)

The record demonstrates Parks was the medication administration nurse on duty for the "noon medication runs" on both dates.  (Dkt. No. 80-11 at 2.)  However, there is no indication Plaintiff ever reported for the noon medication run on either date and/or was denied medication. *Id*.  Plaintiff's TMR indicates Plaintiff was either "No Show" or not present in the facility for the noon medication runs on July 13, 2015, and July 23, 2015.  *Id*., Dkt. No. 80-13.  In her

declaration, Park states she does not recall seeing Plaintiff or interacting with him during the medication runs at issue.  (Dkt. Nos. 80-15 at 2.)

As discussed above, a plaintiff must show "a tangible connection between the acts of a defendant and the injuries suffered."  *Bass*, 790 F.2d at 263.  Here, the record demonstrates Parks was not personally involved in Plaintiff's alleged missed doses on either July 13, 2015, or July 23, 2015.  Therefore, the Court recommends granting summary judgment to Parks for lack of personal involvement.

### 4.    Hayes

Plaintiff claims Hayes, a registered nurse at Ulster, failed or refused to provide him with medication on three occasions: (1) July 13, 2015, p.m. dose; (2) July 14, 2015, a.m. dose; and (3) July 15, 2015, a.m. dose.  (Dkt. No. 28 at 12.)  Defendants argue Hayes is entitled to summary judgment because the record demonstrates Hayes administered medication to Plaintiff on July 13, 2015, and had no personal involvement in the alleged denial of medication on July 14, 2015, and July 15, 2015.  (Dkt. No. 82 at 14-16.)

Merri White, Nurse Administrator at Ulster, has submitted a declaration in support of Defendants' motion.  (Dkt. No. 80-7 at 1.)  Like McCormick, her responsibilities include the supervision of nursing staff, nursing scheduling, monitoring time and attendance of nursing staff, training of nursing staff, and overseeing the provision of nursing care to patients.  *Id.*  Attached to White's declaration are Ulster's nursing duty record for July 2015 and Plaintiff's TMR.  (Dkt. Nos. 80-8; 80-9.)

Plaintiff's TMR indicates Hayes administered medication to Plaintiff on the afternoon of July 13, 2015.  (Dkt. Nos. 80-7 at 1, 80-10 at 2.)  To the extent Plaintiff claims Hayes should have administered an "extra" dose of medication to account for an alleged missed dose at

Watertown earlier that day, both Hayes and White testify that such unilateral action by Hayes would have violated Ulster's policy.  (Dkt. Nos. 80-7 at 2; 80-10 at 2.)  Indeed, Hayes declares he has "no authority to 'double up' doses or authorize extra doses of medication."  (Dkt. No. 80-10 at 2.)  Further, both Hayes and White testify an alleged single missed dose would not have prompted any emergency action by medical staff.  (Dkt. Nos. 80-7 at 2; 80-10 at 2.)  As such, the Court finds Plaintiff's allegations pertaining to July 13, 2015, reflect no more than a dispute as to the appropriate medical treatment for Plaintiff.  *See Chance*, 143 F. 3d at 703 (holding disagreement over the proper treatment does not create a constitutional claim).

Regarding the alleged missed doses of Keppra on July 14, 2015, and July 15, 2015, the record demonstrates Hayes was not the nurse on duty for the morning medication run on either day.  (Dkt. Nos. 80-10 at 2; 80-7 at 3.)  Further, Plaintiff's TMR was marked "No Show" for the morning medication runs on these days.  (Dkt. No. 80-7 at 3.)

Based on the foregoing, the Court finds Hayes was not personally involved in any alleged missed doses of Keppra at Ulster.  *See, e.g.*, *Gabriel v. Cty. of Herkimer*, 889 F. Supp. 2d 374, 396 (N.D.N.Y. 2012) (granting summary judgment to nurse for lack of personal involvement where record demonstrated she was not on duty during times at issue).  Therefore, the Court recommends that Hayes be granted summary judgment for lack of personal involvement.

### 5.    Kennedy

Plaintiff alleges Kennedy, a registered nurse at Ulster, failed or refused to provide Plaintiff with medication in the morning/early afternoon of July 21, 2015, before he left the facility on his return trip to Riverview.  (Dkt. No. 28 at 4, 13.)  Defendants argue Kennedy is entitled to summary judgment because there is absolutely no evidence that she had any personal

involvement in any alleged failure to provide medication to Plaintiff on that date.  (Dkt. No. 82 at 16-17.)  The Court agrees with Defendants.

The record demonstrates Kennedy was not on duty during the shift at issue.  (Dkt. No. 80-7 at 3.)  Therefore, the Court recommends granting summary judgment to Kennedy for lack of personal involvement.  *See, e.g.*, *Gabriel*, 889 F. Supp. 2d at 396.

### 6.    Wheeler

Plaintiff alleges Wheeler, a registered nurse at Riverview, was deliberately indifferent by failing to provide medication to him in the morning/early afternoon on July 25, 2015.  (Dkt. No. 28 at 15-17.)  Defendants argue Wheeler is entitled to summary judgment because there is no evidence that Wheeler was personally involved in any alleged failure or denial of medication to Plaintiff on that date.  (Dkt. No. 82 at 19.)

The record demonstrates Wheeler was not the Riverview nurse on duty during the morning/early afternoon medication run on July 23, 2015.  (Dkt. No. 80-4 at 2.)  Rather, Wheeler worked the 2 p.m. to 10 p.m. shift that day.  *Id.*  Plaintiff's TMR reflects Plaintiff was a "No Show" for the noon medication run.  *Id.*  According to Plaintiff, he attended a religious family day event that day scheduled from 8 a.m. until 2:30 p.m.  *Id.* at 15.  At approximately 2:50 p.m., all inmates that attended the religious family event were sent back to their housing unit.  *Id.* at 6. Later that afternoon, Plaintiff suffered two seizures.  *Id.*

Here, the Court finds Wheeler had no personal involvement in any alleged failure to provide medication to Plaintiff on July 25, 2015.  Therefore, the Court recommends granting summary judgment to Wheeler for lack of personal involvement.  *See, e.g.*, *Gabriel*, 889 F. Supp. 2d at 396.

## VI.    FAILURE TO PROSECUTE

Plaintiff had a duty to diligently litigate his claims, including a specific duty to identify, name, and serve Defendant K. Weyn, purportedly a registered nurse at Riverview.  *See* Fed. R. Civ. P. 41(b); L.R. 41.2(a); Fed. R. Civ. P. 4(m).  Plaintiff has failed to fulfill that duty.

As indicated above, K. Weyn has not been properly served in this action; a summons addressed to K. Weyn at Riverview was returned unexecuted on February 13, 2017.  (Dkt. No. 40.)  On November 14, 2017, Plaintiff was directed to advise the Court within thirty (30) days whether he actually intended to name "Katherine Weegar" a nurse employed at Riverview on July 23, 2013, as Defendant instead of "K. Weyn."  (Dkt. No. 77.)  If, however, Plaintiff was not able to determine if K. Weyn was "Katherine Weegar," he was directed to show cause within thirty (30) days of the issuance of the November 14, 2017, Text Order why his claims against Defendant K. Weyn should not be *sua sponte* dismissed without prejudice for failure to serve Defendant K. Weyn pursuant to FRCP Rule 4(m).  *Id.*  To date, Plaintiff has not responded to this directive nor communicated with the Court in any fashion.  (*See* Docket Report.)

"United States Courts are vested with broad discretion to impose sanctions for non-compliance with court orders, and those sanctions can include the severe sanction of dismissing a case." *Tylicki v. Ryan*, 244 F.R.D. 146, 147 (N.D.N.Y. 2006) (Kahn, D.J.) (citing *Internet Law Library, Inc. v. Southridge Capital Mgmt., LLC*, No. 01 Civ. 6600(RLC), 2005 WL 3370542, at *1 (S.D.N.Y. Dec. 12, 2005) ("Moreover, the court has the inherent authority to dismiss a case when a party disobeys any of its orders.")).  Furthermore, FRCP Rule 41(b) provides that a court may, in its discretion, dismiss an action based upon the failure of a plaintiff to prosecute the case, or to comply with the procedural rules or orders of the court.  Fed. R. Civ. P. 41(b); *LeSane v. Hall's Sec. Analyst, Inc.*, 239 F.3d 206, 209 (2d Cir. 2001).  This power to dismiss may be

exercised when necessary to achieve orderly and expeditious disposition of cases. *See Freeman v. Lundrigan*, No. 95-CV-1190 (RSP/RWS), 1996 WL 481534, at *1 (N.D.N.Y. Aug. 22, 1996). It is also well-settled that the term "these rules" in Rule 41(b) refers not only to the Federal Rules of Civil Procedure, but also to the local rules of practice for a district court. *Tylicki*, 244 F.R.D. at 147.

In determining whether such dismissal is appropriate, the court should consider (1) the duration of the delay occasioned by the plaintiff's conduct, (2) whether the plaintiff has received notice that further delay would result in dismissal, (3) whether the defendant is likely to be prejudiced by further delay, (4) the plaintiff's right to due process, and (5) the efficacy of lesser sanctions. *Lucas v. Miller*, 84 F.3d 532, 535 (2d Cir. 1996); *Davis v. Citibank, N.A.*, 607 F. App'x 93, 94 (2d Cir. 2015). No one factor is dispositive. *See Martens v. Thomann*, 273 F.3d 159, 180 (2d Cir. 2001). However, with regards to *pro se* litigants, Rule 41(b) dismissal "remains a harsh remedy to be utilized only in extreme circumstances," and *pro se* plaintiffs "should be granted special leniency regarding procedural matters." *LeSane*, 239 F.3d at 209 (citation omitted).

In this instance, the Court finds that the above five factors weigh decidedly in favor of dismissal for failure to prosecute and for failure to comply with a court directive. Considering the first factor, L.R. 41.2(a) states that "the plaintiff's failure to take action for four (4) months shall be presumptive evidence of lack of prosecution. L.R. 41.2(a). Here, Plaintiff has failed to take any action in the case for approximately one year. (*See* Docket Report.)

Regarding the second factor, "[t]he Second Circuit requires that the plaintiff receive adequate notice that the case could be dismissed due to inaction." *Folk v. Rademacher*, No. 00-CV-199S, 2005 WL 2205816, at *4 (W.D.N.Y. Sept. 9, 2005) (citing *Martens*, 273 F.3d at 180-

81).  Here, Plaintiff was ordered on November 17, 2017, to show cause why his claims against K. Weyn should not be *sua sponte* dismissed.  (Dkt. No. 77.)  Plaintiff has not responded.  *See, e.g.*, *Nolan v. Primagency, Inc.*, No. 07 Civ. 134 (RJS), 2008 WL 1758644, at *3 (S.D.N.Y. Apr. 16, 2008) ("The Second Circuit has held that where a court puts a plaintiff on notice that the court is considering dismissal, and a plaintiff fails to file a document explaining the failures and outlining why the action should not be dismissed, this element has been met.") (citing *Shannon v. General Elec. Co.*, 186 F.3d 186, 194-95 (2d Cir. 1999)); *Europacific Asset Mgmt. Corp. v. Tradescape, Corp.*, 233 F.R.D. 344, 353 (S.D.N.Y. 2005) ("A court's prior warning of dismissal, and subsequent inaction by a plaintiff, weighs in favor of dismissal.").

With respect to the third factor, "prejudice to defendants resulting from unreasonable delay may be presumed."  *Lyell Theatre Corp. v. Loews Corp.*, 682 F.2d 37, 43 (2d Cir. 1982).  Here, the fact that K. Weyn has not been properly served presents an obvious impediment to the case going forward.  Moreover, the events giving rise to Plaintiff's claims occurred in July 2015, and the statute of limitations regarding the alleged July 23, 2013, missed dosage of Keppra has since expired.  *See Patterson v. Cty. of Oneida*, N.Y., 375 F.3d 206, 225 (2d Cir. 2004) (holding statute of limitations applicable to claims brought in New York under 1983 is three years).

As to the fourth factor, the Court finds that the need to alleviate congestion on the Court's docket outweighs Plaintiff's right to receive a further chance to be heard in this case.  With respect to the fifth factor, the Court has carefully considered sanctions less drastic than dismissal and finds them to be inadequate.

Based on the foregoing, the Court recommends *sua sponte* dismissing Plaintiff's claims against K. Weyn with prejudice for failure to diligently litigate.  *See, e.g.*, *McNamee v. Schoharie Cty. Jail*, No. 9:06-CV-1364 (TJM/GHL), 2008 WL 686796, at *1 (N.D.N.Y. Mar. 10, 2008)

(*sua sponte* dismissing the complaint against defendants with prejudice for failure to prosecute);

*Garcia v. City of New York*, No. 14-CV-4160 (NGG) (LB), 2016 WL 1275621, at *4 (W.D.N.Y.

Mar. 31, 2016) (same); *Baker v. Volpe*, No. 9:01-cv-1894 (GLS/GJD), 2006 WL 3150030, at *1

(N.D.N.Y. Nov. 1, 2006) (dismissing complaint in its entirety with prejudice for failure to

prosecute).

      **WHEREFORE**, it is hereby

      **RECOMMENDED** that Defendants' motion for summary judgment (Dkt. No. 80) be

**GRANTED**; and it is further

      **RECOMMENDED** that Plaintiff's claims against K. Weyn be *sua sponte* **DISMISSED**

**WITH PREJUDICE** for failure to prosecute; and it is further

      **RECOMMENDED** that Plaintiff's amended complaint (Dkt. No. 28) be **DISMISSED**

**IN ITS ENTIRETY**; and it is further

      **ORDERED** that the Clerk provide Plaintiff with a copy of this Order and Report-

Recommendation, along with copies of the unpublished decisions cited herein in accordance

with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2008) (per curiam).

      Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file

written objections to the foregoing report.[12]  Such objections shall be filed with the Clerk of the

Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL**

**PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing

---

[12]  If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

*Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989) (per curiam)); 28 U.S.C.

§ 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 72, 6(a).


Dated: August 13, 2018
      Syracuse, New York

                                Therèse Wiley Dancks
                                United States Magistrate Judge

1999 WL 983876
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Craig COLE, Plaintiff,

v.

Christopher P. ARTUZ, Superintendent, Green
Haven Correctional Facility, R. Pflueger, A.
Glemmon, Sgt. Stevens, Lt. Haubert, Capt.
W.M. Watford, Capt. T. Healey, and John
Doe # 1–5, all as individuals, Defendants.

No. 93 Civ. 5981(WHP) JCF.
|
Oct. 28, 1999.

## Attorneys and Law Firms

Mr. Craig Cole, Bare Hill Correctional Facility, Malone,
New York, Legal Mail, Plaintiff, pro se.

William Toran, Assistant Attorney General, Office of the
Attorney General of the State of New York, New York,
New York, for Defendant.

## *MEMORANDUM & ORDER*

PAULEY, J.

**\*1** The remaining defendant in this action, Correction
Officer Richard Pflueger, having moved for an order,
pursuant to Fed.R.Civ.P. 56, granting him summary
judgment and dismissing the amended complaint, and
United States Magistrate Judge James C. Francis IV
having issued a report and recommendation, dated
August 20, 1999, recommending that the motion
be granted, and upon review of that report and
recommendation together with plaintiff's letter to this
Court, dated August 28, 1999, stating that plaintiff does
"not contest the dismissal of this action", it is

ORDERED that the attached report and
recommendation of United States Magistrate Judge
James C. Francis IV, dated August 20, 1999, is adopted in
its entirety; and it is further

ORDERED that defendant Pflueger's motion for
summary judgment is granted, and the amended
complaint is dismissed; and it is further

ORDERED that the Clerk of the Court shall enter
judgment accordingly and close this case.

## *REPORT AND RECOMMENDATION*

FRANCIS, Magistrate J.

The plaintiff, Craig Cole, an inmate at the Green Haven
Correctional Facility, brings this action pursuant to 42
U.S.C. § 1983. Mr. Cole alleges that the defendant
Richard Pflueger, a corrections officer, violated his First
Amendment rights by refusing to allow him to attend
religious services. The defendant now moves for summary
judgment pursuant to Rule 56 of the Federal Rules of Civil
Procedure. For the reasons set forth below, I recommend
that the defendant's motion be granted.

*Background*

During the relevant time period, Mr. Cole was an
inmate in the custody the New York State Department
of Correctional Services ("DOCS"), incarcerated at the
Green Haven Correctional Facility. (First Amended
Complaint ("Am.Compl.") ¶ 3). From June 21, 1993 to
July 15, 1993, the plaintiff was in keeplock because of
an altercation with prison guards. (Am.Compl.¶¶ 17–
25). An inmate in keeplock is confined to his cell for
twenty-three hours a day with one hour for recreation.
(Affidavit of Anthony Annucci dated Dec. 1, 1994 ¶
5). Pursuant to DOCS policy, inmates in keeplock must
apply for written permission to attend regularly scheduled
religious services. (Reply Affidavit of George Schneider
in Further Support of Defendants' Motion for Summary
Judgment dated September 9, 1996 ("Schneider Aff.") ¶
3). Permission is granted unless prison officials determine
that the inmate's presence at the service would create
a threat to the safety of employees or other inmates.
(Schneider Aff. ¶ 3). The standard procedure at Green
Haven is for the captain's office to review all requests
by inmates in keeplock to attend religious services.
(Schneider Aff. ¶ 3). Written approval is provided to the
inmate if authorization is granted. (Affidavit of Richard
Pflueger dated April 26, 1999 ("Pflueger Aff.") ¶ 5). The
inmate must then present the appropriate form to the

gate officer before being released to attend the services. (Pflueger Aff. ¶ 5).

**\*2** On June 28, 1993, the plaintiff submitted a request to attend the Muslim services on July 2, 1993. (Request to Attend Scheduled Religious Services by Keep–Locked Inmate dated June 28, 1993 ("Request to Attend Services"), attached as Exh. B to Schneider Aff.) On June 30, 1993, a supervisor identified as Captain Warford signed the request form, indicating that the plaintiff had received permission to attend the services. (Request to Attend Services). Shortly before 1:00 p.m. on July 2, 1993, the plaintiff requested that Officer Pflueger, who was on duty at the gate, release him so that he could proceed to the Muslim services. (Pflueger Aff. ¶ 3). However, Officer Pflueger refused because Mr. Cole had not presented the required permission form. (Pflueger Aff. ¶ 3). The plaintiff admits that it is likely that he did not receive written approval until some time thereafter. (Deposition of Craig Cole dated February 28, 1999 at 33–35, 38).

On August 25, 1993, the plaintiff filed suit alleging that prison officials had violated his procedural due process rights. On December 4, 1995, the defendants moved for summary judgment. (Notice of Defendants' Motion for Summary Judgment dated December 4, 1995). The Honorable Kimba M. Wood, U.S.D.J., granted the motion and dismissed the complaint on the grounds that the plaintiff failed to show that he had been deprived of a protected liberty interest, but she granted the plaintiff leave to amend. (Order dated April 5, 1997). On May 30, 1997, the plaintiff filed an amended complaint, alleging five claims against several officials at the Green Haven Correctional Facility. (Am.Compl.) On November 16, 1998, Judge Wood dismissed all but one of these claims because the plaintiff had failed to state a cause of action or because the statute of limitations had elapsed. (Order dated Nov. 16, 1998). The plaintiff's sole remaining claim is that Officer Pflueger violated his First Amendment rights by denying him access to religious services on July 2, 1993. The defendant now moves for summary judgment on this issue, arguing that the plaintiff has presented no evidence that his First Amendment rights were violated. In addition, Officer Pflueger contends that he is entitled to qualified immunity. (Defendants' Memorandum of Law in Support of Their Second Motion for Summary Judgment).

A. *Standard for Summary Judgment*

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Tomka v. Seiler Corp.,* 66 F.3d 1295, 1304 (2d Cir.1995); *Richardson v. Selsky,* 5 F.3d 616, 621 (2d Cir.1993). The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Where the movant meets that burden, the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute concerning material facts. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). In assessing the record to determine whether there is a genuine issue of material fact, the court must resolve all ambiguities and draw all factual inferences in favor of the nonmoving party. *Anderson,* 477 U.S. at 255; *Vann v. City of New York,* 72 F.3d 1040, 1048–49 (2d Cir.1995). But the court must inquire whether "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party" and grant summary judgment where the nonmovant's evidence is conclusory, speculative, or not significantly probative. *Anderson,* 477 U.S. at 249–50 (citation omitted). "The litigant opposing summary judgment may not rest upon mere conclusory allegations or denials, but must bring forward some affirmative indication that his version of relevant events is not fanciful." *Podell v. Citicorp Diners Club, Inc.,* 112 F.3d 98, 101 (2d Cir.1997) (citation and internal quotation omitted); *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986) (a non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts"); *Goenaga v. March of Dimes Birth Defects Foundation,* 51 F.3d 14, 18 (2d Cir.1995) (nonmovant "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible") ((citations omitted)). In sum, if the court determines that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' " *Matsushita Electric Industrial Co.,* 475 U.S. at 587 (quoting *First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 288 (1968)); *Montana v. First Federal Savings & Loan Association,* 869 F.2d 100, 103 (2d Cir.1989).

**\*3** Where a litigant is *pro se,* his pleadings should be read liberally and interpreted "to raise the strongest arguments that they suggest." *McPherson v. Coombe,* 174 F.3d 276, 280 (2d Cir.1999) (quoting *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994)). Nevertheless, proceeding *pro se* does not otherwise relieve a litigant from the usual requirements of summary judgment, and a *pro se* party's "bald assertion," unsupported by evidence, is not sufficient to overcome a motion for summary judgment. *See Carey v. Crescenzi,* 923 F.2d 18, 21 (2d Cir.1991); *Gittens v. Garlocks Sealing Technologies,* 19 F.Supp.2d 104, 110 (W.D.N.Y.1998); *Howard Johnson International, Inc. v. HBS Family, Inc.,* No. 96 Civ. 7687, 1998 WL 411334, at *\*3 (S.D .N.Y. July 22, 1998); *Kadosh v. TRW, Inc.,* No. 91 Civ. 5080, 1994 WL 681763, at *\*5 (S.D.N.Y. Dec. 5, 1994) ("the work product of *pro se* litigants should be generously and liberally construed, but [the *pro se*' s] failure to allege either specific facts or particular laws that have been violated renders this attempt to oppose defendants' motion ineffectual"); *Stinson v. Sheriff's Department,* 499 F.Supp. 259, 262 (S.D.N.Y.1980) (holding that the liberal standard accorded to *pro se* pleadings "is not without limits, and all normal rules of pleading are not absolutely suspended").

### B. *Constitutional Claim*

It is well established that prisoners have a constitutional right to participate in congregate religious services even when confined in keeplock. *Salahuddin v. Coughlin,* 993 F.2d 306, 308 (2d Cir.1993); *Young v. Coughlin,* 866 F.2d 567, 570 (2d Cir1989). However, this right is not absolute. *See Benjamin v. Coughlin,* 905 F.2d 571, 574 (2d Cir.1990) (right to free exercise balanced against interests of prison officials). Prison officials can institute measures that limit the practice of religion under a "reasonableness" test that is less restrictive than that which is ordinarily applied to the alleged infringement of fundamental constitutional rights. *O'Lone v. Estate of Shaabazz,* 482 U.S. 342, 349 (1986). In *O'Lone,* the Court held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Id.* at 349 (quoting *Turner v. Safley,* 482 U.S. 78, 89 (1987)). The evaluation of what is an appropriate and reasonable penological objective is left to the discretion of the administrative officers operating the prison. *O'Lone,* 482 U.S. at 349. Prison administrators are "accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish,* 441 U.S. 520, 547 (1979).

The policy at issue here satisfies the requirement that a limitation on an inmate's access to religious services be reasonable. The practice at Green Haven was to require inmates in keeplock to present written approval to the prison gate officer before being released to attend religious services. This policy both accommodates an inmate's right to practice religion and allows prison administrators to prevent individuals posing an active threat to security from being released. The procedure is not overbroad since it does not permanently bar any inmate from attending religious services. Rather, each request is decided on a case-by-case basis by a high ranking prison official and denied only for good cause.

**\*4** Furthermore, in order to state a claim under § 1983, the plaintiff must demonstrate that the defendant acted with deliberate or callous indifference toward the plaintiff's fundamental rights. *See Davidson v. Cannon* 474 U.S. 344, 347–48 (1986) (plaintiff must show abusive conduct by government officials rather than mere negligence). Here, there is no evidence that the defendant was reckless or even negligent in his conduct toward the plaintiff or that he intended to violate the plaintiff's rights. Officer Pflueger's responsibility as a prison gate officer was simply to follow a previously instituted policy. His authority was limited to granting access to religious services to those inmates with the required written permission. Since Mr. Cole acknowledges that he did not present the necessary paperwork to Officer Pflueger on July 2, 1993, the defendant did nothing improper in denying him access to the religious services. Although it is unfortunate that the written approval apparently did not reach the plaintiff until after the services were over, his constitutional rights were not violated. [1]

1     In light of this finding, there is no need to consider the defendant's qualified immunity argument.

### *Conclusion*

For the reasons set forth above, I recommend that the defendant's motion for summary judgment be granted and judgment be entered dismissing the complaint. Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(e) of the Federal Rules of Civil Procedure, the parties shall

1999 WL 983876

have ten (10) days to file written objections to this report and recommendation. Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable William H. Pauley III, Room 234, 40 Foley Square, and to the Chambers of the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007. Failure to file timely objections will preclude appellate review.

Respectfully submitted,

**All Citations**

Not Reported in F.Supp.2d, 1999 WL 983876

---

**End of Document**

© 2018 Thomson Reuters. No claim to original U.S. Government Works.

2012 WL 651919
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Kenneth Carl GROVES, Sr., Plaintiff,

v.

Brett DAVIS, Secure Care Treatment Aid; David
W. Sill, Secure Care Treatment Aid; Thomas
Nicolette, RN, Ward Nurse; Charmaine Bill,
Treatment Team Leader; Jill E. Carver, Social
Worker, Primary Therapist; Edwin Debroize,
Psychologist Assist; Jeff Nowicki, Chief of Mental
Health Treatment Serv.; Terri Maxymillian,
Ph.D., Dir. of Mental Health Serv.; Sgt. Sweet,
Security Services, CNYPC; Michael Hogan,
Comm'r, Dep't of Mental Health, Defendants.

No. 9:11–CV–1317 (GTS/RFT).
|
Feb. 28, 2012.

**Attorneys and Law Firms**

Kenneth Carl Groves, Sr., Marcy, NY, pro se.

***MEMORANDUM DECISION and ORDER***

Hon. GLENN T. SUDDABY, District Judge.

 **\*1** Currently before the Court, in this *pro se* civil rights
action filed by Kenneth Carl Groves, Sr. ("Plaintiff"),
against numerous employees of New York State or the
Central New York Psychiatric Center ("Defendants"),
are Plaintiff's motion to proceed *in forma pauperis,* his
motion for a temporary restraining order and preliminary
injunction, and his motion for appointment of counsel.
(Dkt.Nos.2, 3, 4.) [1]  For the reasons set forth below,
Plaintiff's motion to proceed *in forma pauperis* is granted;
his motion for a preliminary injunction is denied; his
motion for appointment of counsel is denied; Plaintiff's
claims of deliberate indifference to his mental health
needs against Defendants Bill, Carver and DeBroize are
*sua sponte* dismissed with prejudice; Plaintiff's claims
against Defendants Bill, Carver, DeBroize, Nowicki,
Maxymillian, and Hogan arising from their alleged
personal involvement in the August 8, 2011 assault are

*sua sponte* dismissed without prejudice and with leave to
amend in this action in accordance with Fed.R.Civ.P.
15; Sgt. Sweet is *sua sponte* dismissed without prejudice
as a Defendant in this action; the Clerk is directed to
issue summonses, and the U.S. Marshal is directed to
effect service of process on Defendants Davis, Sill, and
Nicolette.

[1]   This is the fourth civil rights action filed by Plaintiff
in this District. Generally, two of these actions arose
out of Plaintiff's refusal to consent to a strip search
and the subsequent actions taken against Plaintiff
as a result of his refusal. *See Groves v. New York,*
09–CV–0406, Decision and Order (N.D.N.Y. filed
May 11, 2009) (Hurd, J.) (*sua sponte* dismissing
complaint pursuant to 28 U.S.C. § 1915[e][2][B] );
*Groves v. The State of New York,* 9:09–CV–0412,
Decision and Order (N.D.N.Y. filed Mar. 26, 2010)
(Sharpe, J.) (granting defendants' motion to dismiss
the complaint pursuant to Fed.R.Civ.P. 12[b][6] ).
The third action alleged numerous violations of
Plaintiff's constitutional rights during the period July
23, 2009, and August 26, 2009, and was dismissed
without prejudice upon Plaintiff's request in October,
2010. *See Groves v. Maxymillian,* 9:09–CV–1002,
Decision and Order (N.D.N.Y. filed Oct. 8, 2010)
(Suddaby, J.). As a result, it does not appear that
the current action is barred because of res judicata,
collateral estoppel, and/or the rule against duplicative
litigation.

**I. RELEVANT BACKGROUND**
On November 7, 2011, Plaintiff commenced this action
*pro se* by filing a civil rights Complaint, together with
a motion to proceed *in forma pauperis.* (Dkt. Nos.1,
2.) [2]  Liberally construed, Plaintiff's Complaint alleges
that the following constitutional violations against him
occurred during his confinement at Central New York
Psychiatric Center ("CNYPC"): (1) Defendants Davis and
Sill used excessive force against him under the Eighth
and/or Fourteenth Amendments; (2) Defendant Nicolette
knew of and failed to take action to protect Plaintiff
from the assault under the Eighth and/or Fourteenth
Amendments; (3) Defendants Bill, Carver, and DeBroize
were deliberately indifferent to his mental health needs
under the Eighth and/or Fourteenth Amendments;
and (4) Defendants Bill, Carver, DeBroize, Nowicki,
Maxymillian, Bosco, and Hogan failed to "adequately
train the staff under their supervision" and to take
appropriate action in response to the incident. (*See*

*generally* Dkt. No. 1.) For a more detailed description of Plaintiff's claims, and the factual allegations giving rise to those claims, the reader is referred to Part III.B of this Decision and Order.

2      At that time, Plaintiff also filed motions for injunctive relief and for appointment of counsel. (Dkt.Nos.3, 4.)

## II. MOTION TO PROCEED *IN FORMA PAUPERIS*

Because Plaintiff sets forth sufficient economic need, the Court finds that Plaintiff may properly commence this action *in forma pauperis.* (Dkt. No. 2.)

## III. *SUA SPONTE* REVIEW OF PLAINTIFF'S COMPLAINT

In light of the foregoing, the Court must now review the sufficiency of the allegations that Plaintiff has set forth in his Complaint in light of 28 U.S.C. § 1915(e)(2)(B). This is because Section 1915(e)(2)(B) directs that, when a plaintiff seeks to proceed *in forma pauperis,* "(2) ... the court shall dismiss the case at any time if the court determines that —... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). 3

3      The Court notes that, similarly, Section 1915A(b) directs that a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b).

### A. Governing Legal Standard

**\*2** It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed.R.Civ.P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed.R.Civ.P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cnty.,* 549 F.Supp.2d 204, 211, nn. 15–16 (N.D.N.Y.2008) (McAvoy, J., adopting Report–Recommendation on *de novo* review).

Because such dismissals are often based on the first ground, a few words regarding that ground are appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2) [emphasis added]. In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[ ]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed.R.Civ.P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed.R.Civ.P. 8(a)(2) as "simplified" and "liberal." *Jackson,* 549 F.Supp.2d at 212, n. 20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed.R.Civ.P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson,* 549 F.Supp.2d at 212, n .17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson,* 549 F.Supp.2d at 212, n. 18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F.Supp.2d 203, 213 & n. 32 (N.D.N.Y.2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12–61 (3d ed.2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F. Supp .2d at 213, n. 22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949–52, 173 L.Ed.2d 868 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly,* the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). In doing so, the Court "retire[d]" the famous statement by

2012 WL 651919

the Court in *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly,* 127 S.Ct. at 1968–69. Rather than turn on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id.* at 1965–74. The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id.* at 1965. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id.*

**\*3** As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S.Ct. at 1949. "[D]etermining whether a complaint states a plausible claim for relief ... [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged— but it has not show[n]—that the pleader is entitled to relief." *Id.* at 1950 [internal quotation marks and citations omitted]. However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id.,* it "does not impose a probability requirement." *Twombly,* 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal,* 129 S.Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Iqbal,* 129 S.Ct. at 1949 (internal citations and alterations omitted). *Rule 8* "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citations omitted).

This pleading standard applies even to *pro se* litigants. While the special leniency afforded to *pro se* civil rights litigants somewhat loosens the procedural rules governing the form of pleadings (as the Second Circuit has observed), it does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in *Fed.R.Civ.P. 8, 10* and *12.* [4] Rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the requirements set forth in *Fed.R.Civ.P. 8, 10* and *12* are procedural rules that even *pro se* civil rights plaintiffs must follow. [5] Stated more simply, when a plaintiff is proceeding *pro se,* "all normal rules of pleading are not absolutely suspended." *Jackson,* 549 F.Supp.2d at 214, n. 28 [citations omitted]. [6]

4    *See Vega v. Artus,* 610 F.Supp.2d 185, 196 & nn. 8–9 (N.D.N.Y.2009) (Suddaby, J.) (citing Second Circuit cases); *Rusyniak,* 629 F.Supp.2d at 214 & n. 34 (citing Second Circuit cases).

5    *See Vega,* 610 F.Supp.2d at 196, n. 10 (citing Supreme Court and Second Circuit cases); *Rusyniak,* 629 F.Supp.2d at 214 & n. 34 (citing Second Circuit cases).

6    It should be emphasized that *Fed.R.Civ.P. 8*'s plausibility standard, explained in *Twombly,* was in no way retracted or diminished by the Supreme Court's decision (two weeks later) in *Erickson v. Pardus,* in which (when reviewing a *pro se* pleading) the Court stated, *"Specific facts are not necessary"* to successfully state a claim under *Fed.R.Civ.P. 8(a)(2). Erickson v. Pardus,* 551 U.S. 89, 93, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) [emphasis added]. That statement was merely an abbreviation of the often-repeated point of law—first offered in *Conley* and repeated in *Twombly*—that a pleading need not "set out *in detail* the facts upon which [the claim is based]" in order to successfully state a claim. *Twombly,* 127 S.Ct. 1965, n. 3 (citing *Conley,* 355 U.S. at 47) [emphasis added]. That statement did not mean that all pleadings may achieve the requirement of "fair notice" without ever alleging any facts whatsoever. Clearly, there must still be enough fact set out (however set out, whether in detail or in a generalized fashion) to raise a right to relief above the speculative level to a plausible level. *See Rusyniak,* 629 F.Supp.2d at 214 & n. 35 (explaining holding in *Erickson* ).

**B. Analysis of Plaintiff's Complaint**

The Court prefaces its analysis of Plaintiff's Complaint by noting that, although Plaintiff is a civilly committed sex offender and no longer a prisoner, the Court will look to cases addressing prisoner's rights in analyzing Plaintiff's claims, because "confinement of civilly committed patients is similar to that of prisoners." *Holly v. Anderson,* 04–CV–1489, 2008 WL 1773093, at *7 (D.Minn. Apr.15, 2008); *see also Morgan v. Rabun,* 128 F.3d 694, 697 (8th Cir.1997) ("The governmental interests in running a state mental hospital are similar in material aspects to that of running a prison."). Thus, whereas claims of excessive force by convicted criminals are analyzed under the Eighth Amendment to the United States Constitution, because Plaintiff is a civilly committed sex offender and no longer a prisoner, his substantive rights to be free from unsafe conditions of confinement arise under the Due Process Clause of the Fourteenth Amendment. In *Youngberg v. Romeo,* 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982), the Court stated "[i]f it is cruel and unusual punishment to hold convicted criminals in unsafe conditions, it must be unconstitutional [under the Due Process Clause] to confine the involuntarily committed-who may not be punished at all-in unsafe conditions." *Youngberg,* 457 U.S. at 315–16. As have numerous other courts which have considered the issue, this Court has found that "the standard for analyzing a civil detainee's Fourteenth Amendment [conditions of confinement] claim is the same as the Eighth Amendment standard." *Groves v. Patterson,* 09–CV–1002, Memorandum–Decision and Order at *15– 16 (N.D.N.Y. filed Nov. 18, 2009). [7]

[7]    *See Weyant v. Okst,* 101 F.3d 845, 856 (2d Cir.1996) ("[W]hile the Supreme Court has not precisely limned the duties of a custodial official under the Due Process Clause to provide needed medical treatment to a pretrial detainee, it is plain that an unconvicted detainee's rights are at least as great as those of a convicted prisoner."); *Walton v. Breeyear,* 05–CV– 0194, 2007 WL 446010, at *8, n. 16 (N.D.N.Y. Feb.8, 2007) (Peebles, M.J.) (noting that pretrial detainees enjoy protections under the due process clause of the Fourteenth Amendment parallel to those afforded to sentenced prisoners by the Eighth Amendment); *Vallen v. Carrol,* 02–CV–5666, 2005 WL 2296620, at ——8–9 (S.D.N.Y. Sep.20, 2005) (finding that the Eighth Amendment standard of "deliberate indifference" is the correct one for Section 1983 claims brought by involuntarily committed mental patients based on alleged failures to protect them

that violated their substantive due process rights); *Bourdon v. Roney,* 99–CV–0769, 2003 WL 21058177, at *10 (N.D.N.Y. Mar.6, 2003) (Sharpe, M.J.) ("The standard for analyzing a pretrial detainee's Fourteenth Amendment [conditions of confinement] claim is the same as the Eighth Amendment standard.").

**1. Excessive Force Claims Against Defendants Davis, Still and Nicolette**

 **\*4**  Plaintiff alleges that on August 8, 2011, Defendant Davis entered Plaintiff's dorm room at CNYPC and "viciously attacked and brutally assaulted and battered" him. (Dkt. No. 1 at 4.) During the course of this assault, Defendant Sill is alleged to have entered Plaintiff's room and "jump[ed] on the plaintiff's legs holding and pinning them as Defendant Davis [continued to beat Plaintiff]." (*Id.*) As alleged in the Complaint, although Defendant Nicolette knew in advance that this assault was planned, he "remained in the Nurses Station" and "did nothing to interceed [sic] or stop the brutal attack on the plaintiff." (*Id.* at 5.)

To validly assert a violation of the Eighth Amendment through the use of excessive force, an inmate must allege the following: (1) subjectively, that the defendants acted wantonly and in bad faith; and (2) objectively, that the defendants' actions violated "contemporary standards of decency." *Blyden v. Mancusi,* 186 F.3d 252, 262–63 (2d Cir.1999) (internal quotation marks omitted) (citing *Hudson v. McMillian,* 503 U.S. 1, 8 [1992] ).

Here, construing the factual allegations of Plaintiff's Complaint with special leniency, the Court finds that Plaintiff appears to have alleged facts plausibly suggesting that he was subjected to excessive force by Defendants Davis and Sill. In addition, by alleging that Defendants Davis, Sill and Nicolette discussed the assault in advance of it occurring, and that Nicolette was in the vicinity of Plaintiff's room and had an opportunity to intervene to prevent it, the Complaint sufficiently alleges that Defendant Nicolette was personally involved and/or failed to protect Plaintiff from the assault. *See Bhuiyan v. Wright,* 06–CV–0409, 2009 WL 3123484, at *7 (N.D.N.Y. Sept.29, 2009) (Scullin, J.) ("The fact that defendant Davis was not in the room, but was acting as a 'lookout' so that no one came into the room while plaintiff was being beaten, would not absolve him from liability for the assault. An officer's failure to intervene during another officer's use of excessive force can itself constitute an

Eighth Amendment violation unless the assault is "sudden and brief," and the defendant had no real opportunity to prevent it."); *Jeffreys v. Rossi,* 275 F.Supp.2d 463, 474 (S.D.N.Y.2003) (holding that an officer may be personally involved in the use of excessive force if he either directly participates in the assault or if he was present during the assault, yet failed to intervene on behalf of the victim, even though the officer had a reasonable opportunity to do so).

As a result, a response to these claims is required from Defendants David, Sill, and Nicolette. In so ruling, the Court expresses no opinion as to whether Plaintiff's claims can withstand a properly filed motion to dismiss or for summary judgment.

### 2. Deliberate Indifference Claims Against Defendants Bill, Carver and DeBroize

Plaintiff alleges that on August 9, 2011, the day after the alleged assault, he attempted to "discuss the incident and what transpired" with Defendants Bill and Carver. (Dkt. No. 1 at 5.) Plaintiff alleges that Defendant Bill told him, "I don't want to discuss this Mr. Groves, we're too busy for your foolishness and the matter is being investigated." (*Id.*) Plaintiff's effort to explain that he was frightened by the incident was rebuffed by Defendant Bill, who told Plaintiff to "grow up." (*Id.* at 5–6.) The following day, Plaintiff attempted to discuss the incident with Defendant Carver, his primary therapist, again without success. A further attempt at discussion later that day was met with Defendant Carver "stating to the plaintiff in a snotty tone 'grow the hell up!' " (*Id.* at 6.) On August 10, 2011, Plaintiff attempted to discuss the incident "and his current fears and feelings," during his Monday afternoon "Process Group," which is facilitated by Defendant DeBroize. As alleged, Defendant DeBroize told Plaintiff and the other group members that the matter was under investigation "so no one could discuss the incident with anyone." (*Id.* at 6.)

**\*5** To state a claim of deliberate indifference to a serious medical and/or mental health need under the Eighth Amendment, a plaintiff must first allege facts plausibly suggesting that prison officials acted with "deliberate indifference to serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). "[T]he plaintiff must allege conduct that is 'repugnant to the conscience of mankind' or 'incompatible with the evolving standards of decency that mark the progress of a maturing society.' " *Ross v. Kelly,* 784 F.Supp.

35, 44 (W.D.N.Y.), *aff'd,* 970 F.2d 896 (2d Cir.1992) (quoting *Estelle v. Gamble,* 429 U.S. at 102, 105–06). The "deliberate indifference standard embodies both an objective and a subjective prong," both of which the plaintiff must establish. *Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1994), *cert. denied,* 513 U.S. 1154, 115 S.Ct. 1108, 130 L.Ed.2d 1074 (1995). "First, the alleged deprivation must be, in objective terms, 'sufficiently serious.' " *Id.* (citations omitted). Second, the defendant "must act with a sufficiently culpable state of mind." *Id.*

With regard to the first element, generally, to be sufficiently serious for purposes of the Constitution, a medical condition must be "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Nance v. Kelly,* 912 F.2d 605, 607 (2d Cir.1990) (Pratt, J. dissenting) [citations omitted], *accord, Hathaway,* 37 F.3d at 66; *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998).). [8] Under the subjective component, a plaintiff must also allege facts plausibly suggesting that the defendant acted with "a sufficiently culpable state of mind." *Hathaway,* 37 F.3d at 66. The requisite culpable mental state is similar to that of criminal recklessness. *Wilson v. Seiter,* 501 U.S. 294, 301–03, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). A physician's negligence in treating or failing to treat a prisoner's medical condition does not implicate the Eighth Amendment and is not properly the subject of a Section 1983 action. *Estelle,* 429 U.S. at 105– 06; *Chance,* 143 F.3d at 703. [9]

[8]    Relevant factors informing this determination include whether the plaintiff suffers from an injury that a "reasonable doctor or patient would find important and worthy of comment or treatment," a condition that "significantly affects" a prisoner's daily activities, or "the existence of chronic and substantial pain." *Chance,* 143 F.3d at 702.

[9]    Thus, a physician who "delay[s] ... treatment based on a bad diagnosis or erroneous calculus of risks and costs" does not exhibit the mental state necessary for deliberate indifference. *Harrison,* 219 F.3d at 139. Likewise, an inmate who disagrees with the physician over the appropriate course of treatment has no claim under Section 1983 if the treatment provided is "adequate." *Chance,* 143 F.3d at 703. The word "adequate" reflects the reality that "[p]rison officials are not obligated to provide inmates with whatever care the inmates desire. Rather, prison officials fulfill their obligations under the Eighth Amendment

2012 WL 651919

when the care provided is 'reasonable.' " *Jones v. Westchester Cnty. Dept. of Corr.,* 557 F.Supp.2d 408, 413 (S.D.N.Y.2008). In addition, "disagreements over medications, diagnostic techniques (e .g., the need for X-rays), forms of treatment, or the need for specialists or the timing of their intervention are not adequate grounds for a section 1983 claim." *Sonds v. St. Barnabas Hosp. Corr. Health Servs.,* 151 F.Supp.2d 303, 312 (S.D.N.Y.2001). However, if prison officials consciously delay or otherwise fail to treat an inmate's serious medical condition "as punishment or for other invalid reasons," such conduct constitutes deliberate indifference. *Harrison,* 219 F.3d at 138.

Here, even when construed with the utmost special liberality, Plaintiff's Complaint fails to allege facts plausibly suggesting that Defendants Bill, Carver, and DeBroize acted with deliberate indifference to Plaintiff's serious mental health condition when they declined to discuss the incident of August 8, 2011. There is nothing in the Complaint that even remotely suggests that the requested conversations were integral to Plaintiff's treatment as a convicted sex offender involuntarily committed to CNYPC, or that Defendants' refusal to discuss the incident with Plaintiff when he requested to do so caused Plaintiff to suffer any harm or worsening of his condition. In addition, Plaintiff does not allege that any of these Defendants acted with the requisite culpable state of mind.

Moreover, the statements made by Defendants Bill and Carver that he should "grow up," even if construed as verbal harassment, do not give rise to a cognizable claim that may be pursued under Section 1983. Allegations of verbal harassment are insufficient to support a Section 1983 claim. *Johnson v. Eggersdorf,* 8 F. App'x 140, 143 (2d Cir.2001); *see also Purcell v. Coughlin,* 790 F.2d 263, 265 (2d Cir.1986) ("[A]llegations of verbal harassment are insufficient to base a § 1983 claim if no specific injury is alleged .").

**\*6** For these reasons, Plaintiff's deliberate indifference claims against Defendants Bill, Carver, and DeBroize are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and Fed.R.Civ.P. 12(b)(6). Moreover, because the Court cannot imagine how Plaintiff might correct this claim through better pleading, he is not granted leave to attempt to do so in an amended pleading.[10] Rather, this claim is hereby dismissed with prejudice.

[10]　The Court notes that, generally, leave to amend pleadings shall be freely granted when justice so requires. Fed.R.Civ.P. 15(a). However, an opportunity to amend is not required where amendment would be futile. *John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp.,* 22 F.3d 458, 462 (2d Cir.1994). *John Hancock Mut. Life Ins. Co.,* 22 F.3d at 462. The Second Circuit has explained that "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129, 131 (2d Cir.1993); *see Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) ("The problem with [Plaintiff's] cause of action is substantive; better pleading will not cure it. Repleading would thus be futile. Such a futile request to replead should be denied."). This rule is applicable even to *pro se* plaintiffs. *See, e.g., Cuoco,* 222 F.3d at 103.

### 3. Failure to Supervise Claims Against Defendants Bill, Carver, DeBroize, Nowicki, Maxymillian, and Hogan

To prevail on a claim under 42 U.S.C. § 1983, a defendant must be personally involved in the plaintiff's constitutional deprivation. *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977). Generally, for purposes of 42 U.S.C. § 1983, supervisory personnel may be considered "personally involved" only if they (1) directly participated in the violation, (2) failed to remedy that violation after learning of it through a report or appeal, (3) created, or allowed to continue, a policy or custom under which the violation occurred, (4) had been grossly negligent in managing subordinates who caused the violation, or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring.[11]

[11]　*Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995) (adding fifth prong); *Wright,* 21 F.3d at 501 (adding fifth prong); *Williams v. Smith,* 781 F.2d 319, 323–324 (2d Cir.1986) (setting forth four prongs).

Holding a position in a hierarchical chain of command, without more, is insufficient to support a showing of personal involvement. *McKinnon,* 568 F.2d at 934. Rather, a plaintiff must demonstrate " 'a tangible connection between the acts of the defendant and the injuries suffered.' " *Austin v. Pappas,* 04–CV–7263, 2008 WL 857528, at \*2 (S.D.N.Y. Mar.31, 2008) (quoting *Bass v. Jackson,* 790 F.2d 260, 263 [2d Cir.1986] ) (other citation omitted). An official's failure to respond to grievance letters from inmates, however, "does not

establish supervisory liability." *Watson v. McGinnis,* 964 F.Supp. 127, 130 (S.D.N.Y.1997).[12] Moreover, "the law is clear that inmates do not enjoy a constitutional right to an investigation of any kind by government officials." *Pine v. Seally,* 9–CV–1198, 2011 WL 856426, at \*9 (N.D.N.Y. Feb.4, 2011).[13]

[12]   See also *Gillard v. Rosati,* 08–CV–1104, 2011 WL 4402131, at \*7 (N.D.N.Y. Aug.22, 2011) (Peebles, J.) ("It is well-established that without more, 'mere receipt of letters from an inmate by a supervisory official regarding a medical claim is insufficient to constitute personal liability." [internal quotation marks and brackets omitted] ); *Greenwaldt v. Coughlin,* 93–CV–6551, 1995 WL 232736, at \*4 (S.D.N.Y. Apr.19, 1995) ("it is well-established that an allegation that an official ignored a prisoner's letter of protest and request for an investigation of allegations made therein is insufficient to hold that official liable for the alleged violations."); *Clark v. Coughlin,* 92–CV 0920, 1993 WL 205111, at \*5 n. 2 (S.D.N.Y. Jun.10, 1993) ("Courts in this jurisdiction have consistently held that an inmate's single letter does not constitute the requisite personal involvement in an alleged constitutional deprivation to trigger the Commissioner's liability.")

[13]   See also *Bernstein v. N.Y.,* 591 F.Supp.2d 448, 460 (S.D.N.Y.2008) ("Courts within the Second Circuit have determined that there is no constitutional right to an investigation by government officials." [internal quotation marks, brackets and ellipsis omitted] ).

In his Complaint, Plaintiff alleges in wholly conclusory terms that Defendants Bill, Carver, DeBroize, Nowicki, Maxymillian, and Hogan failed to "adequately train the staff under their supervision and fail[ed] to act within the scope and training of the position and job title they hold." (Dkt. No. 1 at 8.) Plaintiff alleges that he submitted a letter of complaint to Defendant Hogan and wrote to Defendant Nowicki on several occasions expressing concern his complaint had not been responded to, only to be advised that in September, 2011 that an investigation was ongoing. (*Id.* at 6–7.) Plaintiff does not allege that any of these Defendants personally participated in the alleged assault on August 8, 2011.

Here, even when construed with the utmost special liberality, Plaintiff's Complaint fails to allege facts plausibly suggesting any personal involvement by these Defendants in the alleged used of excessive force

on August 8, 2011. As a result, Plaintiff's claims against Defendants Bill, Carver, DeBroize, Nowicki, Maxymillian, and Hogan arising from this incident are *sua sponte* dismissed pursuant to 28 U.S.C. § 1915(e) (2)(B)(ii) and Fed.R.Civ.P. 12(b)(6). This dismissal is without prejudice to Plaintiff's right to file an Amended Complaint that corrects the above-described pleading defects, and states a viable claim against these Defendants. The Court notes that, at this early stage of the case, Plaintiff has the right—without leave of the Court— to file an Amended Complaint within the time limits established by Fed.R.Civ.P. 15(a)(1)(B). However, if he seeks to file an Amended Complaint after those time limits, he must file a motion for leave to file an Amended Complaint in accordance with Fed.R.Civ.P. 15(a)(2). In either event, Plaintiff is advised that *any Amended Complaint must be a complete pleading that will replace and supersede the original Complaint in its entirety, and that may not incorporate by reference any portion of the original Complaint. See* N.D.N.Y. L.R. 7.1(a) (4).

**\*7** Finally, although Plaintiff names Sgt. Sweet as a Defendant in the caption of the complaint and in the listing of the parties, he has not set forth in the Complaint any allegations of fact regarding the conduct of this Defendant complained of. (*See generally* Dkt. No. 1.) As a result, the Complaint fails to state a claim upon which relief may be granted and Sgt. Sweet is dismissed from this action without prejudice to Plaintiff's right to file an Amended Complaint as set forth above.

## IV. MOTION FOR INJUNCTIVE RELIEF

A preliminary injunction is an "extraordinary remedy that should not be granted as a routine matter." *Patton v. Dole,* 806 F.2d 24, 28 (2d Cir.1986). In most cases, to warrant the issuance of a preliminary injunction, a movant must show (a) irreparable harm and (b) either (1) a likelihood of success on the merits of the claim or (2) sufficiently serious questions going to the merits, and a balance of hardships tipping decidedly in favor of the moving party. *D.D. ex rel. V.D. v. New York City Bd. of Educ.,* 465 F.3d 503, 510 (2d Cir.2006) (quotation omitted). "The purpose of issuing a preliminary injunction is to 'preserve the status quo and prevent irreparable harm until the court has an opportunity to rule on the ... merits.' " *Candelaria v. Baker,* 00–CV–912, 2006 WL 618576, at \*3 (W.D.N.Y. Mar.10, 2006) (quoting *Devose v. Herrington,* 42 F.3d 470, 471 [8th Cir.1994] ). Preliminary injunctive relief " 'should not be granted

unless the movant, by a clear showing, carries the burden of persuasion.' " *Moore v. Consolidated Edison Co. of New York, Inc.,* 409 F.3d 506, 510 (2d Cir.2005) (quoting *Mazurek v. Armstrong,* 520 U.S. 968, 972 [1997] ). "Where there is an adequate remedy at law, such as an award of money damages, injunctions are unavailable except in extraordinary circumstances." *Moore,* 409 F.3d at 510 (citing *Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 381, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992). The same standards govern consideration of an application for a temporary restraining order. *Perri v. Bloomberg,* 06–CV–0403, 2008 WL 2944642, at *2 (E.D.N.Y. Jul.31, 2008) [citation omitted]. The district court has broad discretion in determining whether to grant a preliminary injunction. *Moore,* 409 F.3d at 511.

"The Second Circuit has defined 'irreparable harm' as 'certain and imminent harm for which a monetary award does not adequately compensate,' noting that 'only harm shown to be non-compensable in terms of money damages provides the basis for awarding injunctive relief.' " *Perri,* 2008 WL 2944642, at *2 (citing *Wisdom Import Sales Co., L.L.C. v. Labatt Brewing Co., Ltd.,* 339 F.3d 101, 113–14 [2d Cir.2003] ); *see also Kamerling v. Massanari,* 295 F.3d 206, 214 (2d Cir.2002) ("To establish irreparable harm, a party seeking preliminary injunctive relief must show that there is a continuing harm which cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation.") (internal quotation omitted). Speculative, remote or future injury is not the province of injunctive relief. *Los Angeles v. Lyons,* 461 U.S. 95, 111–12, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983); *see also Hooks v. Howard,* 07–CV–0724, 2008 WL 2705371, at *2 (N.D.N.Y. Jul.3, 2008) (citation omitted) ("Irreparable harm must be shown to be imminent, not remote or speculative, and the injury must be such that it cannot be fully remedied by monetary damages.").

 **\*8** Plaintiff has submitted a document entitled "Order to Show Cause for Preliminary Injunction and Tempor[ary] Restraining Order." (Dkt. No. 3.) Construed liberally, Plaintiff's submission seeks a temporary restraining order and injunctive relief enjoining Defendants from "submitting and filing false and untrue statements and reports" regarding the August 11, 2011 incident, and to "stop all retaliatory actions against the plaintiff ...." (*Id.* at 1.) Plaintiff also seeks an "Order of Seperation [sic]" directing that Defendants Davis, Sill, Nicolette, Bill,

Carver and DeBroize be "restrained from being within 100 feet from the plaintiff in any form or matter." (*Id.* at 2.)

The Court has reviewed Plaintiff's motion papers thoroughly and considered the claims asserted therein in the light most favorable to Plaintiff, as a *pro se* litigant. Based upon that review, the Court finds that the harm Plaintiff alleges is purely speculative and, therefore, not "irreparable." Plaintiff's motion is supported only by a recitation of the alleged assault in August, 2011. (*Id.* at 1–4.) Plaintiff has not supported the claims of ongoing misconduct set forth in his motion papers with any factual allegations, such as the dates on which the misconduct occurred, the nature of the injuries he claims to have suffered, the identities of the persons responsible for the conduct he seeks to enjoin, or the relationship between those actions and the claims asserted in his Complaint. Simply stated, Plaintiff's alleged fear of future wrongdoing by the Defendants is not sufficient to warrant the extraordinary remedy of preliminary injunctive relief.

The Court further notes that the requested injunctive relief cannot be granted unless there is also proof that Plaintiff has a likelihood of succeeding on the merits of his claim, or evidence that establishes sufficiently serious questions going to the merits of his claim and a balance of hardships tipping decidedly toward him. *See Covino v. Patrissi,* 967 F.2d 73, 77 (2d Cir.1992). Plaintiff has failed to submit *proof or evidence* that meets this standard. Plaintiff's allegations, standing alone, are not sufficient to entitle him to preliminary injunctive relief. *See Ivy Mar Co. v. C.R. Seasons Ltd.,* 907 F.Supp. 547, 561 (E.D.N.Y.1995) ("[B]are allegations, without more, are insufficient for the issuance of a preliminary injunction."); *Hancock v. Essential Resources, Inc.,* 792 F.Supp. 924, 928 (S.D.N.Y.1992) ("Preliminary injunctive relief cannot rest on mere hypotheticals."). Without evidence to support his claims that he is in danger from the actions of anyone at CNYPC, the Court will not credit Plaintiff's conclusory allegations that he will be retaliated against or harmed in the future.

Plaintiff has failed to establish either of the two requisite elements discussed above. As a result, Plaintiff's request for a temporary restraining order and/or injunctive relief is denied.

**V. MOTION FOR APPOINTMENT OF COUNSEL**

**\*9** Courts cannot utilize a bright-line test in determining whether counsel should be appointed on behalf of an indigent party. *Hendricks v. Coughlin,* 114 F.3d 390, 392–93 (2d Cir.1997). Instead, a number of factors must be carefully considered by the court in ruling upon such a motion:

> [T]he district judge should first determine whether the indigent's position seems likely to be of substance. If the claim meets this threshold requirement, the court should then consider the indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in that case why appointment of counsel would be more likely to lead to a just determination.

*Terminate Control Corp. v. Horowitz,* 28 F.3d 1335, 1341 (2d Cir.1994) (quoting *Hodge v. Police Officers,* 802 F.2d 58, 61 [2d Cir.1986] ). This is not to say that all, or indeed any, of these factors are controlling in a particular case. [14] Rather, each case must be decided on its own facts. *Velasquez v. O'Keefe,* 899 F.Supp. 972, 974 (N.D.N.Y.1995) (McAvoy, C.J.) (citing *Hodge,* 802 F.2d at 61).

[14]    For example, a plaintiff's motion for counsel must always be accompanied by documentation that substantiates his efforts to obtain counsel from the public and private sector, and such a motion may be denied solely on the failure of the plaintiff to provide such documentation. *See Terminate Control Corp. v. Horowitz,* 28 F.3d 1335, 1341 (2d Cir.1994); *Cooper v. Sargenti Co., Inc.,* 877 F.2d 170, 172, 174 (2d Cir.1989) [citation omitted].

Upon due consideration, the Court finds that the relevant factors weigh decidedly against granting Plaintiff's motion at this time. For example, the Court finds as follows: (1) the case does not present novel or complex issues; (2) it appears to the Court as though, to date, Plaintiff has been able to effectively litigate this action; (3) while it is possible that there will be conflicting evidence implicating the need for cross-examination at the time of the trial, as is the case in many actions brought under 42 U.S.C. § 1983 by *pro se* litigants, "this factor alone is not determinative of a motion for appointment of counsel," *Velasquez,* 899 F.Supp. at 974; (4) if this case survives any dispositive motions filed by Defendants, *it is highly probable that this Court will appoint trial counsel at the final pretrial conference;* (5) this Court is unaware of any special reasons why appointment of counsel at this time would be more likely to lead to a just determination of this litigation; and (6) Plaintiff's motion for counsel is not accompanied by documentation that substantiates his efforts to obtain counsel from the public and private sector.

For these reasons, Plaintiff's motion for the appointment of counsel is denied without prejudice. After the Defendants have responded to the allegations in the Complaint which survive *sua sponte* review, and the parties have undertaken discovery, Plaintiff may file a second motion for the appointment of counsel, at which time the Court may be better able to determine whether such appointment is warranted in this case. Plaintiff is advised that any second motion for appointment of counsel must be accompanied by documentation that substantiates his efforts to obtain counsel from the public and private sector.

**\*10  ACCORDINGLY,** it is

**ORDERED** that Plaintiff's motion to proceed *in forma pauperis* (Dkt. No. 2) is **GRANTED;** [15] and it is further

[15]    Plaintiff should note that he will still be required to pay fees that he may incur in this action, including but not limited to copying and/or witness fees.

**ORDERED** that Plaintiff's motion for injunctive relief (Dkt. No. 3) is **DENIED;** and it is further

**ORDERED** that Plaintiff's motion for appointment of counsel (Dkt. No. 4) is **DENIED without prejudice;** and it is further

**ORDERED** that Plaintiff's claims of deliberate indifference against Defendants Bill, Carver and DeBroize are *sua sponte* **DISMISSED with prejudice** pursuant to 28 U.S.C. § 1915(e)(2) (B)(ii) and Fed.R.Civ.P. 12(b)(6); and it is further

**ORDERED** that Plaintiff's claims against Defendants Bill, Carver, DeBroize, Nowicki, Maxymillian, and Hogan arising from their alleged personal involvement in the August 8, 2011 incident are *sua sponte* **DISMISSED without prejudice and with leave to amend** in this action in accordance with Fed.R.Civ.P. 15 (as described above in Part III.B.3. of this Decision and Order), pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and Fed.R.Civ.P. 12(b)(6); and it is further

**ORDERED** that Defendant Sweet is *sua sponte* **DISMISSED without prejudice and with leave to be reinstated** as a Defendant in this action in accordance with Fed.R.Civ.P. 15, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and Fed.R.Civ.P. 12(b)(6); and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is otherwise accepted for filing (i.e., as to the claims against Defendants Davis, Sill, and Nicolette arising from the August 8, 2011 incident); and it is further

**ORDERED** that Plaintiff provide a summons, USM–285 form and a copy of the complaint for Defendant Davis, Sill and Nicollette for service, and upon receipt from Plaintiff of the documents required for service of process, the Clerk shall (1) issue summonses and forward them, along with copies of the Complaint to the United States Marshal for service upon the remaining Defendants, and (2) forward a copy of the summons and Complaint by mail to the Office of the New York State Attorney General, together with a copy of this Decision and Order; and it is further

**ORDERED** that, after service of process on Defendants, a response to the Complaint shall be filed by the Defendants or their counsel as provided for in the Federal Rules of Civil Procedure; and it is further

**ORDERED** that all pleadings, motions and other documents relating to this action be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261–7367. **Any paper sent by a party to the Court or the Clerk must be accompanied by a certificate showing that a true and correct copy of it was mailed to all opposing parties or their counsel. Any document received by the Clerk or the Court which does not include a certificate of service showing that a copy was served upon all opposing parties or their attorneys will be stricken from the docket .** Plaintiff must comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions. **Plaintiff is also required to promptly notify, in writing, the Clerk's Office and all parties or their counsel of any change in Plaintiff's address; his failure to so may result in the dismissal of this action.** All motions will be decided on submitted papers without oral argument unless otherwise ordered by the Court.

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 651919

---

**End of Document**

© 2018 Thomson Reuters. No claim to original U.S. Government Works.

2008 WL 857528
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Richard AUSTIN, Plaintiff,
v.
Brian PAPPAS, John Does, Yonkers
Police Commissioner Charles C. Coles,
Westchester County, Defendants.

No. 04-CV-7263 (KMK)(LMS).
|
March 31, 2008.

**Attorneys and Law Firms**

Mr. Richard Austin, Stormville, NY, pro se.

Rory Carleton McCormick, Esq., Corporation Counsel,
City of Yonkers, Yonkers, NY, for Defendants.

*ORDER ADOPTING REPORT
& RECOMMENDATION*

KENNETH M. KARAS, District Judge.

 **\*1** Richard Austin ("Plaintiff") filed this suit pursuant
to 42 U.S .C. § 1983 ("Section 1983") against Yonkers
Police Officer Brian Pappas ("Defendant Pappas"),
several John Doe Yonkers Police Officers ("John Doe
Defendants"), former Yonkers Police Commissioner
Charles C. Cola ("Defendant Cola") (whose name is
misspelled in Plaintiff's Complaint as Charles C. Coles),
and Westchester County (collectively, "Defendants"),
alleging violations of Plaintiff's civil rights under the
First, Fourth, Fifth, Eighth, and Fourteenth Amendments
of the United States Constitution, along with various
supplemental state law claims. [1] (Compl.¶¶ 17, 19.)
Plaintiff alleged that these violations occurred when
Defendants failed to protect Plaintiff from Franklyn
Kelley, a private individual who physically attacked
Plaintiff during the course of Plaintiff's May 16, 2003
arrest. (*Id.* ¶ 10.) Plaintiff alleged that Defendant Pappas
and the John Doe Defendants handcuffed him and pinned
him to the ground while Franklyn Kelley repeatedly
kicked and punched Plaintiff in the face. (*Id.* ("The officers
did nothing to protect the plaintiff from this vicious

assault, even though plaintiff was helpless and in their
custody [.]").) Defendants moved for summary judgment,
and this Motion was referred by Judge McMahon to Chief
Magistrate Judge Lisa M. Smith for review pursuant to 28
U.S.C. § 636(b)(1). On August 2, 2007, Magistrate Judge
Smith issued a thorough Report and Recommendation
("R & R"), concluding that this Court should grant
Defendants' Motion for Summary Judgment on the
ground that Plaintiff has failed to demonstrate that there
exists a genuine issue of material fact as to whether his
constitutional rights were violated. Plaintiff was advised
of his right to file objections to the R & R, but he did not
do so.

[1]     On August 8, 2005, Plaintiff's claim against
Westchester County was dismissed by the Honorable
Gerald E. Lynch, to whom this case was initially
assigned. On February 28, 2006, the case was
transferred to White Plains and reassigned to Judge
Colleen McMahon. The case was reassigned to the
undersigned on August 6, 2007.

A district court reviewing a report and recommendation
" 'may accept, reject, or modify, in whole or in part,
the findings or recommendations made by the magistrate
judge.' " *Donahue v. Global Home Loans & Fin., Inc.,* No.
05-CV-8362, 2007 WL 831816, at \*1 (S.D.N.Y. Mar. 15,
2007) (quoting 28 U.S.C. § 636(b)(1)(C)). Under 28 U.S.C.
§ 636(b)(1) and Rule 72(b) of the Federal Rules of Civil
Procedure, parties may submit objections to a magistrate
judge's report and recommendation. The objections must
be "specific" and "written," and must be made "within 10
days after being served with a copy of the recommended
disposition." Fed.R.Civ.P. 72(b)(2); *see also* 28 U.S.C. §
636(b)(1).

Where a party does not submit an objection, " 'a district
court need only satisfy itself that there is no clear error
on the face of the record.' " *Donahue,* 2007 WL 831816,
at \*1 (quoting *Nelson v. Smith,* 618 F.Supp. 1186, 1189
(S.D.N.Y.1985)). In addition, a party's failure to object
waives that party's right to challenge the report and
recommendation on appeal. *See Fed. Deposit Ins. Corp.
v. Hillcrest Assocs.,* 66 F.3d 566, 569 (2d Cir.1995) ("Our
rule is that 'failure to object timely to a magistrate's report
operates as a waiver of any further judicial review of the
magistrate's decision.' " (quoting *Small v. Sec'y of Health
and Human Servs.,* 892 F.2d 15, 16 (2d Cir.1989))).

**\*2** Here, Plaintiff has not filed objections to the R & R. Accordingly, the Court has reviewed the R & R for clear error only. In so doing, the Court adopts the conclusion reached in the R & R that Defendants' Motion for Summary Judgment should be granted, but the Court does so in part on different grounds than those relied on in the R & R.

First, the Court agrees with Magistrate Judge Smith that Defendants' noncompliance with Local Civil Rule 56.2 should be overlooked because any prejudice resulting from noncompliance was cured by the following: (i) Magistrate Judge Smith advised Plaintiff of the nature of summary judgment during a March 23, 2007 conference; and (ii) Magistrate Judge Smith annexed a Rule 56.2 notice to the R & R, a document to which Plaintiff was free to file objections. *See Narumanchi v. Foster,* No. 02-CV-6553, 2006 WL 2844184, at \*2 (E.D.N.Y. Sept. 29, 2006) (refusing to deny defendant's motion for summary judgment based on failure of defendant to comply with Local Civil Rule 56.2 because "[a]ny prejudice to *pro se* plaintiffs [was] cured" by court's actions).

As expressed in the R & R, though Plaintiff did not file any opposition to Defendants' Motion for Summary Judgment, Defendants were still required to meet their burden of demonstrating to the Court that "no material issue of fact remains for trial." *See Amaker v. Foley,* 274 F.3d 677, 681 (2d Cir.2001). The Court finds no clear error in Magistrate Judge Smith's determination that Defendants satisfied this burden.

With respect to Defendants Pappas and Cola, the Court finds that Plaintiff has failed to offer any evidence demonstrating that they were personally involved in the alleged violation of Plaintiff's constitutional rights. The " 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.' " *Back v. Hastings on Hudson Union Free Sch. Dist.,* 365 F.3d 107, 122 (2d Cir.2004) (quoting *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977)). For purposes of Section 1983 liability, personal involvement can be established by evidence that:

> '(1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong,

(3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference ... by failing to act on information indicating that unconstitutional acts were occurring.'

*Id.* at 127 (quoting *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995)); *accord Hayut v. State Univ. of N.Y.,* 352 F.3d 733, 753 (2d Cir.2003); *Schiller v. City of New York,* No. 04-CV-7922, 2008 WL 200021, at \*4 (S.D.N.Y. Jan. 23, 2008); *Fair v.. Weibur,* No. 02-CV-9218, 2006 WL 2801999, at \*4 (S.D.N.Y. Sept. 28, 2006). Further, a Section 1983 plaintiff must "allege a tangible connection between the acts of the defendant and the injuries suffered." *Bass v. Jackson,* 790 F.2d 260, 263 (2d Cir.1986); *see also Fair,* 2006 WL 2801999, at \*4 (citing *Bass* ).

**\*3** In support of their Motion for Summary Judgment, Defendants submitted evidence that Defendant Pappas did not directly participate in the arrest of Plaintiff, but he instead arrested Plaintiff's accomplice. For example, on April 8, 2004, at a hearing before the Honorable Richard A. Molea of the Westchester County Court, Defendant Pappas testified that he remained with Plaintiff's accomplice while other officers arrested Plaintiff. (Defs.' Affirmation in Supp., Ex. J, 50-51.) Further, in response to interrogatories served on him by Plaintiff, Defendant Pappas stated that he "did not observe what transpired during the course of plaintiff's arrest." (*Id.,* Ex. L.) Finally, Defendants offer a police report indicating that "Pappas was detaining [Plaintiff's accomplice] in the garage area, as additional units arrived and placed [Plaintiff] into custody." (*Id.,* Ex. C.)

Plaintiff has failed to offer any evidence refuting Defendant Pappas' version of events. In other words, Plaintiff has offered no evidence demonstrating that Defendant Pappas was actually one of the officers who arrested him and allegedly pinned him to the ground while Kelley assaulted him. In fact, during his deposition testimony, Plaintiff admitted that he was not sure whether Defendant Pappas was one of the police officers who

2008 WL 857528

arrested him, and that the reason Defendant Pappas was named as a defendant in the present suit was because Plaintiff had seen his name on Plaintiff's felony complaint. (*Id.,* Ex. G, 32-35.) As such, the unrefuted evidence before the Court demonstrates that Defendant Pappas was not one of the officers directly involved in Plaintiff's arrest. Plaintiff therefore has failed to satisfy a prerequisite to liability under Section 1983-namely that Defendant Pappas had personal involvement in the alleged violation of Plaintiff's constitutional rights. *See Back,* 365 F.3d at 122. Thus, Plaintiff's claim against Defendant Pappas must be dismissed.

Plaintiff alleged that Defendant Cola, Yonkers Police Commissioner at the time of Plaintiff's 2003 arrest, violated Plaintiff's constitutional rights by "authoriz[ing], tolerat[ing], as institutionalized practices, and ratif[ying] the misconduct [of Defendant Pappas and John Doe Defendants]." (Compl.¶ 14.) More specifically, Plaintiff charges Defendant Cola with failure to properly: (1) discipline subordinate officers; (2) take adequate precautions in hiring subordinate officers; (3) report criminal acts by police personnel to the Westchester County District Attorney; and (4) establish a system for dealing with complaints about police misconduct. (*Id.*) Plaintiff does not assert that Defendant Cola directly participated in the violation of his constitutional rights; instead, Plaintiff urges the Court to find Defendant Cola liable under Section 1983 based on his role as supervisor of Defendant Pappas and the John Doe Defendants.

"It is well settled, however, that the doctrine of respondeat superior standing alone does not suffice to impose liability for damages under section 1983 on a defendant acting in a supervisory capacity." *See Hayut,* 352 F.3d at 753 (citing *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 691 (1978)). Instead, it is necessary to establish a supervisory official's personal involvement in the alleged constitutional violation. *See id.; Fair,* 2006 WL 2801999, at *4.

**\*4** Plaintiff has failed to provide the Court with any evidence from which a reasonable jury could conclude that Defendant Cola was personally involved in the alleged violation of Plaintiff's constitutional rights. Plaintiff has offered no evidence demonstrating that Defendant Cola was aware of and failed to remedy constitutional violations by subordinate officers, or that he acted in a grossly negligent or deliberately indifferent manner

in supervising or training subordinate officers. There is also no evidence in the record to support a theory that Defendant Cola created a policy or custom that fostered and led to the alleged violation of Plaintiff's rights. *See Hayut,* 352 F.3d at 754 (finding as fatal to plaintiff's Section 1983 claim the fact that there existed "no evidence that, after becoming aware of the alleged harassment, any of the [supervisory officials] failed to respond or remedy the situation, that any of these [supervisory officials] created or allowed a policy to continue under which alleged harassment could occur, or that they were grossly negligent in monitoring [the alleged harasser's] conduct"); *Harris v. City of New York,* No. 01-CV-6927, 2003 WL 554745, at *6 (S.D.N.Y. Feb. 26, 2003) ("[P]laintiff has put forth no evidence pointing to defendant ['s] personal involvement in plaintiff's alleged deprivation of rights .... Plaintiff's conclusory allegations regarding defendant['s] alleged supervisory role, without more, cannot withstand summary judgment."). Further, nothing in the record, even drawing all inferences in Plaintiff's favor, suggests any tangible connection between Defendant Cola's training or supervision of subordinate officers and the alleged violation of Plaintiff's rights. In fact, the record contains no evidence with regard to Defendant Cola whatsoever. Without such evidence, no reasonable jury could conclude that Defendant Cola had personal involvement in the alleged violation of Plaintiff's constitutional rights, which means that Plaintiff has failed to satisfy a prerequisite to Section 1983 liability, and therefore that Defendant Cola is entitled to summary judgment in his favor. *See Davis v. Kelly,* 160 F.3d 917, 921 (2d Cir.1998) ("After an opportunity for discovery, undisputed allegations that [a] supervisor lacked personal involvement will ultimately suffice to dismiss that official from the case.").

In sum, the Court finds that Plaintiff has failed to establish the personal involvement of Defendants Pappas and Cola in the alleged violation of his rights. For reasons set forth more fully in the R & R, the Court also dismisses the Complaint as to the John Doe Defendants because Plaintiff's time limit to amend the Complaint in order to substitute in named defendants has lapsed. Therefore, the Court finds it unnecessary to reach the question of whether Plaintiff has adequately established an underlying violation of his constitutional rights. Finally, having determined that no cognizable federal claims exist, the Court will follow Magistrate

2008 WL 857528

Judge Smith's recommendation in declining to exercise jurisdiction over the state law claims.

**\*5**  Accordingly, it is hereby:

ORDERED that the Report and Recommendation dated August 2, 2007, is ADOPTED on the grounds set forth in this Order; and it is further

ORDERED that Defendants' Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56 is GRANTED.

The Clerk of Court is respectfully directed to enter judgment in favor of Defendants, to terminate Defendant's Motion (Dkt. No. 28), and to close this case.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2008 WL 857528

---

**End of Document**

© 2018 Thomson Reuters. No claim to original U.S. Government Works.

2016 WL 4570441
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

David Harrington, Plaintiff,
v.
Dr. Vadlamudi, et al., Defendants.

Civ. No. 9:13-CV-0795 (BKS/DJS)
|
Signed 08/09/2016

**Attorneys and Law Firms**

DAVID HARRINGTON, 79 Lamplighter Acres, Fort
Edward, New York 12828, Plaintiff, Pro Se.

HON. ERIC T. SCHNEIDERMAN, Attorney General
of the State of New York, The Capitol, OF COUNSEL:
KEITH J. STARLIN, ESQ., Assistant Attorney General,
Albany, New York 12224, Attorney for Defendants.

### REPORT-RECOMMENDATION and ORDER

DANIEL J. STEWART, United States Magistrate Judge

*\*1* *Pro se* Plaintiff David Harrington commenced this
action, pursuant to 42 U.S.C. § 1983, the Americans
with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, *et
seq.*, and Section 504 of the Rehabilitation Act of 1973
("Rehabilitation Act"), 29 U.S.C. § 794, *et seq.*, against
Defendants Dr. Krishna Vadlamudi, Sandra Martin
Smith, and Marcy Correctional Facility ("Marcy"). Dkt.
No. 45, 2d Am. Compl. Plaintiff asserts a claim for
deliberate medical indifference in violation of the Eighth
Amendment against Defendant Dr. Vadlamudi, a claim
for retaliation in violation of the First Amendment
against Defendant Smith, and claims for disability
discrimination in violation of the ADA and Rehabilitation
Act against Defendant Marcy. Presently before the Court
is Defendants' Motion for Summary Judgment. Dkt. No.
57, Defs.' Mot. Summ. J. Plaintiff has not filed a response.
For the reasons that follow, the Court recommends that
Defendants' Motion for Summary Judgment be **granted**.

## I. BACKGROUND

### A. Plaintiff's Failure to Respond

Defendants filed their Motion for Summary Judgment on
December 18, 2015, setting Plaintiff's response deadline
for January 19, 2016. Defs.' Mot. Summ. J. As required
by the local rules, Defendants advised Plaintiff of the
consequences of failing to respond to the Summary
Judgment Motion. *See id.* Plaintiff, however, failed to file
a response. *See* Docket.

Pursuant to this District's Local Rules, "[t]he Court shall
deem admitted any properly supported facts set forth in
the Statement of Material Facts that the opposing party
does not specifically controvert." N.D.N.Y.L.R. 7.1(a)
(3). Although a *pro se* litigant is entitled to a liberal
construction of his filings, *see Sykes v. Bank of America*,
723 F.3d 399, 403 (2d Cir. 2013), his *pro se* status does not
relieve him of his obligation to comply with the relevant
procedural rules, *see Edwards v. INS*, 59 F.3d 5, 8-9 (2d
Cir. 1995). However, the Second Circuit, acknowledging a
court's broad discretion to determine whether to overlook
a failure to comply with local rules, has held that the court
may in its discretion opt to conduct a review of the entire
record even where one of the parties has failed to file a
7.1 statement. *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d
62, 73 (2d Cir. 2001). Due to Plaintiff's *pro se* status, the
Court has opted to review the entire summary judgment
record to ascertain the undisputed material facts. The
Court will cite to the facts as set forth in Defendants'
Rule 7.1 Statement of Facts only when properly supported
by the record. Dkt. No. 57-1, Defs.' Rule 7.1. Statement
of Material Facts ("Defs.' SMF"); *see also GlobalRock
Networks, Inc. v. MCI Commc'ns Servs., Inc.*, 943 F. Supp.
2d 320, 329 (N.D.N.Y. 2013) ("Where the non-movant
either does not respond to the motion or fails to dispute
the movant's statement of material facts, the court may
not rely solely on the moving party's Rule 56.1 statement;
rather the court must be satisfied that the citations to
evidence in the record support the movant's assertions.")
(citing *Giannullo v. City of New York*, 322 F.3d 139, 143
n.5 (2d Cir. 2003)).

### B. Factual Background

**\*2** The relevant events of this action occurred when Plaintiff was incarcerated at Marcy while in the custody of the Department of Corrections and Community Supervision ("DOCCS"). Defs.' SMF at ¶ 12. Plaintiff was transferred to Marcy on November 3, 2011, *id.*, and was released on parole on February 7, 2014, *see* DOCCS Inmate Population Information Search, *available at* http://nysdoccslookup.doccs.ny.gov (Inmate David P. Harrington, DIN 01-A-4591) (last visited Aug. 8, 2016).

Plaintiff has a history of seizures, dating to childhood, and asserts that he suffers from epilepsy and is autistic. Dkt. No. 57-5, Keith J. Starlin Decl., dated Dec. 18, 2015, Ex. D, Pl.'s Dep., dated Apr. 4, 2014, ("Pl.'s Dep.") at pp. 10-12 & 86. Plaintiff has different types of seizures, including both petit mal and grand mal seizures. [1] *Id.* at p. 65; *see also* Starlin Decl., Ex. C, Ambulatory Health Record ("AHR") at p. 206. [2] Plaintiff's seizures have been treated with several different medications, and since 2009, he has taken Topamax 200mg, twice daily. AHR at p. 206. In the past, Plaintiff had taken Depakote and Keppra, but had serious side effects on both medications. *Id.* Plaintiff has continued to have seizures, even while on Topamax. *Id.* at p. 43.

[1]    According to Plaintiff, petit mal seizures involve "episodes of staring with fluttering eye lids and sometimes twitching facial muscles." 2d Am. Compl. at ¶ 61. A person suffering a petit mal seizure is "completely unaware of their surroundings." *Id.* These episodes may occur in succession or may last for several days. *Id.* Plaintiff describes a grand mal seizure as a seizure that "quickly spreads to both sides of the brain, causing the entire brain to malfunction." *Id.* at ¶ 64. Plaintiff claims that petit mal seizures can "build" into a grand mal seizure, and he will know beforehand when he will experience a grand mal seizure. Pl.'s Dep. at p. 61.

[2]    The AHR was filed separately with the Court. Dkt. No. 58. Citations to the AHR are to the pagination assigned by Defendants.

At Marcy, Defendant Dr. Vadlamudi was responsible for overseeing Plaintiff's medical care. Dkt. No. 57-9, Krishna Vadlamudi Decl., dated Dec. 17, 2015, at ¶ 4. Currently, and during all relevant events of this action, Dr. Vadlamudi is employed by DOCCS as a physician and Facility Health Director at Marcy. *Id.* at ¶ 1. On December 23, 2011, Plaintiff saw Dr. Vadlamudi for a five-year physical exam. AHR at p. 142. Plaintiff was

noted to be "doing OK" and was instructed to continue with Topamax 200mg, twice daily. *Id.* Plaintiff's seizures were tracked at follow-up appointments and lab work was periodically run to monitor the levels and effects of Topamax. Vadlamudi Decl. at ¶ 8. At appointments on February 8, June 3, and July 29, 2012, it was recorded that Plaintiff's last seizure had occurred in August 2011. AHR at pp. 133, 135, & 138.

At an appointment on June 7, 2012, Dr. Vadlamudi noted that Plaintiff's seizures began at age 13 and he had a history of head trauma and occasional leg spasms. AHR at p. 135. Dr. Vadlamudi also recorded that a CAT scan had been taken of Plaintiff's head on September 10, 2011, and was negative, as were neurological results. *Id.* Plaintiff asserts that he informed Dr. Vadlamudi at this appointment that his medication was not working and that he was having petit seizures. 2d Am. Compl. at ¶ 10. Plaintiff requested a referral to a neurologist. *Id.* at ¶ 11. Dr. Vadlamudi denied the request and instructed Plaintiff to continue on Topamax 200mg, twice daily. *Id.* at ¶¶ 12-13; AHR at p. 135.

**\*3** On July 30, 2012, Plaintiff again alerted Dr. Vadlamudi to "the unusual number of seizures that [he] had been experiencing" and requested a referral to a neurologist. 2d Am. Compl. at ¶ 14. Dr. Vadlamudi recorded that Plaintiff's seizures were under control and instructed Plaintiff to continue with Topamax. *Id.* at ¶ 15; AHR at p. 133. On August 3, 2012, Plaintiff reported to Dr. Vadlamudi that he had minor seizures for four days in a row. AHR at p. 133. Dr. Vadlamudi recorded that Plaintiff was "doing ok now" and stated that the seizures were stress-related. *Id.* He again denied Plaintiff's request for a referral to a neurologist and directed Plaintiff to continue on Topamax. *Id.*; 2d Am. Compl. at ¶¶ 17-19.

On September 23, 2012, Plaintiff had a grand mal seizure. AHR at p. 232. Plaintiff, who was unconscious and unable to recall the events, claims that he was told that he walked from his bed to the bathroom and then fell striking his back on a toilet. *Id.*; Pl.'s Dep. at p. 59. Plaintiff was brought to the infirmary on a stretcher. AHR at p. 132. Plaintiff had a red, bruised area and trauma to his right temple, and complained of pain in his back, although the examining nurse noted no redness or swelling. *Id.* Plaintiff has a history of lower back pain. *Id.* Marcy staff arranged for Plaintiff to be sent to Faxton-St. Lukes Hospital that evening. *Id.* at pp. 132 & 240. At St. Lukes, a CAT scan

and follow-up x-rays were taken that showed that Plaintiff had suffered an "acute compression fracture" of the T12 and L1 vertebra. *Id.* at pp. 230 & 236-37. The imaging also showed chronic spondylolisthesis at L5-S1. *Id.* at p. 232. Dr. Clifford Soults, who completed a neurosurgical consult, indicated that the fracture at T12 was "mild" and the L1 fracture was "slightly more pronounced." *Id.* at p. 232. Dr. Jamel Arastu, whom Plaintiff also saw for a neurology consultation, believed that this was a "breakthrough" seizure and recommended that Plaintiff's Topamax dosage be increased to 225mg, and possibly 250mg, twice daily. *Id.* at p. 235. When Plaintiff was discharged on September 26, 2012, it was ordered that he would use a Thoracolumber Sacral Orthosis ("TLSO") back brace "at all times unless completely flat in bed." *Id.* at p. 230. Plaintiff was also to take pain medication as needed and to have follow-up x-rays. *Id.* at pp. 230-31. The day before Plaintiff was discharged, September 25, 2012, Marcy staff contacted St. Lukes and were told that Plaintiff did not require surgery, and should have Dilaudid, twice daily, for pain relief and use a back brace. *Id.* at p. 130.

Upon being discharged from St. Lukes on September 26, Plaintiff was admitted to Mid-State Correctional Facility infirmary, where he was provided with a back brace, was ambulatory, and had his Topamax increased to 225mg, twice daily. *Id.* at p. 129. Plaintiff did not complain of pain or further seizure activity while at Mid-State, and on September 28, 2012, Plaintiff returned to Marcy. *Id.* at p. 127. Plaintiff was issued a permit to use a TLSO brace, a cane, and to be assigned to a bottom bunk. *Id.* at p. 267. In addition to the back brace that he had received at Mid-State, Plaintiff was also provided with a cane and was assigned to a single bed. Pl.'s Dep. at pp. 22 & 26-27. On October 2, 2012, Dr. Zaki, a physician at Marcy, signed a permit for Plaintiff to use a wheelchair, cane, upper body brace, and to be assigned to a lower bunk. AHR at p. 126. Dr. Zaki also prescribed Motrin 600mg, twice daily. *Id.* at p. 127. Plaintiff received a wheelchair that same day. Pl.'s Dep. at p. 22. Dr. Vadlamudi saw Plaintiff on October 26, 2012, and recorded that Plaintiff was using the back brace and that there was no need for Ultram. AHR at p. 124.

**\*4** On November 9, 2012, Plaintiff filed Grievance No. 1695-12, claiming that he was being deprived proper pain medication. Starlin Decl., Ex. B, ("Pl.'s CORC Appeals Records") at pp. 14-15.[3] Plaintiff stated that the prescribed pain medication, Motrin, was ineffective

and Dr. Vadlamudi had denied Plaintiff's requests for other pain medication. *Id.* at p. 15. The Inmate Grievance Resolution Committee ("IGRC") was deadlocked, but Plaintiff's appeals to the Superintendent of Marcy and the Central Office Review Commitee ("CORC") were denied. *Id.* at pp. 15, 17, & 19. On November 20, 2012, Plaintiff filed Grievance No. 16941-12, which complained that Dr. Vadlamudi had failed to properly treat his seizures. *Id.* at p. 54. Plaintiff asserted that timely intervention could have prevented the grand mal seizure he suffered on September 23. *Id.* The IGRC was deadlocked, but the Superintendent and CORC both denied Plaintiff's appeals. *Id.* at pp. 52-53.

3    Plaintiff's CORC Appeals Records were filed separately with the Court. *See* Dkt. No. 58-1. Citations are to the pagination assigned by Defendants.

On November 26, 2012, Plaintiff was evaluated for whether he had a continuing need for a wheel chair. *Id.* at p. 122. Nurse Coppola determined that there was no longer a medical need and issued a permit permitting Plaintiff to use a cane, upper body brace, and to be assigned to a lower bunk. *Id.* at p. 123. The permit was signed by Defendant Smith, Nurse Administrator at Marcy, who did not independently examine Plaintiff, but reviewed St. Lukes' discharge instructions and spoke to Nurse Coppola about her exam and evaluation of Plaintiff. Dkt. No. 57-7, Sandra Martin Smith Decl., dated Dec. 15, 2015, at ¶ 14. Smith states that part of the healing of a back fracture requires ambulating and strengthening the back muscles and that use of a wheelchair can impede that process. *Id.* The permit also switched the type of cane Plaintiff was allowed from a wooden cane to a quad cane. AHR at p. 123; Pl.'s Dep. at p. 23.

Plaintiff claims that Smith withdrew his wheelchair permit in retaliation for having filed grievances. 2d Am. Compl. at ¶ 14. Plaintiff claims that he was summoned to Smith's office and "chewed out" about his grievances and told that St. Lukes had never authorized the wheelchair. Pl.'s Dep. at pp. 24-25. Plaintiff asserts that Smith, more or less, told him that she was taking the wheelchair away because he had filed the Grievance, although he is unable to recall exactly what was said. *Id.* at p. 34. Plaintiff alleges that he had to walk significant distances across the facility to reach the mess hall and HIV awareness classes that he administered. *Id.* at p. 25; 2d Am. Compl. at ¶¶ 76-77.

Plaintiff saw Dr. Vadlamudi on November 27, 2012, and was referred to Dr. Soults for a follow-up on his back injury. AHR at p. 121. On November 29, 2012, Plaintiff was seen for his regular seizure tracking, was noted to be "doing ok," and was directed to continue taking Topamax 250mg, twice daily. *Id.* At the follow-up with Dr. Soults on December 8, 2012, Dr. Soults referred Plaintiff for further x-rays. *Id.* at p. 208. The x-rays were taken on January 10, 2013, and showed that Plaintiff's fractures were healing. *Id.* at p. 169. On December 7, 2012, Plaintiff filed Grievance No. 16961-12, requesting to see a neurologist and be put onto a different medication. Pl.'s CORC Appeals Records at p. 83. The IGRC was deadlocked, but the Superintendent and CORC both denied Plaintiff's appeals. *Id.* at p. 82.

On December 27, 2012, Plaintiff reported that he was feeling "seizurish," but denied having any seizures. AHR at p. 120. Plaintiff requested that his seizure medication be changed to Tegretol, which is an anticonvulsant. *Id.*; Vadlamudi Decl. at ¶ 29. Plaintiff also complained of back pain, but his ambulation was observed to be steady using the quad cane. AHR at p. 120. When Plaintiff was seen on January 22, 2013, he walked without difficulty and a steady gait. *Id.* Plaintiff reported seizure activity but was directed to continue on Topamax 250mg, twice daily. *Id.* At this time, Plaintiff was taking Ibuprofen 600mg, twice daily for his back pain. *Id.* On February 14, 2013, Plaintiff again reported petit seizures and requested different medication. *Id.* at p. 119. Plaintiff also renewed his complaints of back pain at this appointment, and his next appointment, on February 28. *Id.* at pp. 118-19. Plaintiff claimed that the Ibuprofen was ineffective and requested different medication. *Id.* at p. 118.

**\*5** At a March 7, 2013 follow-up, in response to Plaintiff's reports of continuing seizure activity, Dr. Vadlamudi prescribed Tegretol 100mg, twice daily, in addition to the Topamax. *Id.* at p. 117. Dr. Vadlamudi noted Plaintiff's continuing complaints of back pain, but did not change his medication and referred him for another follow-up with Dr. Soults. *Id.* Dr. Soults examined Plaintiff on March 25, 2013, and recorded that Plaintiff could begin physical therapy and discontinue using the brace. *Id.* at p. 202. On April 8, 2013, Dr. Vadlamudi referred Plaintiff for a physical therapy consult. *Id.* at p. 117. The physical therapy consult occurred on April 18, 2013, and it was recommended that Plaintiff attend physical therapy twice weekly, for four

weeks. *Id.* at pp. 200-01. Plaintiff subsequently attended physical therapy sessions during which he completed a number of exercises to strengthen and stabilize his back. Defs.' SMF at ¶ 127.

On March 26, 2013, Plaintiff filed a fourth Grievance, No. 17145-13, requesting to see a back specialist and have an MRI. Pl.'s CORC Appeals Records at p. 97. The IGRC was deadlocked, but the Superintendent and CORC both denied Plaintiff's appeals. *Id.* at pp. 95-96.

On May 9, 2013, Plaintiff was seen at the Marcy infirmary and was observed to ambulate with a cane with a slow and steady gait. AHR at p. 115. Lab work continued to be conducted, monitoring the levels and effects of Topamax. Defs.' SMF at ¶ 129. On May 23, 2013, Plaintiff visited the infirmary stating that he had a seizure two weeks earlier. *Id.* at p. 113. Plaintiff also reported that he had stopped taking Tegretol two weeks earlier because it had caused a rash, although the nurse did not observe a rash. *Id.* at p. 113. Plaintiff complained of back pain and requested different pain medication because the Ibuprofen was ineffective. *Id.*

Plaintiff commenced this action on July, 8, 2013. *See* Dkt. No. 1.

## II. STANDARD OF REVIEW

Pursuant to FED. R. CIV. P. 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial, and cannot rest merely on allegations or denials of the facts submitted by the movant. FED. R. CIV. P. 56(c); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set

2016 WL 4570441

out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard ... they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and ... interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), *accord*, *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**\*6** When a motion for summary judgment is unopposed, the court may "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." FED. R. CIV. P. 56(e)(3); *see also* N.D.N.Y.L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein, the non-moving party's failure to file or serve any papers ... shall be deemed as consent to the granting or denial of the motion."). "If the evidence adduced in support of the summary judgment motion does not meet [the movant's] burden [of production], 'summary judgment must be denied *even if no opposing evidentiary matter is presented.*' " *Amaker v. Foley*, 247 F.3d 677, 681 (2d Cir.

2001) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970)). "An unopposed summary judgment motion may also fail where the undisputed facts fail to 'show that the moving party is entitled to judgment as a matter of law.' " *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (quoting *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996)).

## III. DISCUSSION

Defendants seek summary judgment on the following grounds: (1) Defendants are entitled to judgment as a matter of law on Plaintiff's claims; (2) Plaintiff failed to exhaust administrative remedies on his First Amendment and ADA and Rehabilitation Act claims; (3) Defendants are entitled to qualified immunity; and (4) Plaintiff's ADA and Rehabilitation Act claims are barred by sovereign immunity. Dkt. No. 57-13, Defs.' Mem. of Law.

### A. Deliberate Medical Indifference Claim Against Defendant Dr. Vadlamudi

Plaintiff asserts an Eighth Amendment deliberate medical indifference claim against Defendant Dr. Vadlamudi based on the treatment for Plaintiff's (1) seizure condition and (2) back injury. 2d Am. Compl.

### 1. Legal Standard

To state an Eighth Amendment claim for denial of adequate medical care, a prisoner must demonstrate that prison officials acted with "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "[T]he plaintiff must allege conduct that is 'repugnant to the conscience of mankind' or 'incompatible with the evolving standards of decency that mark the progress of a maturing society.' " *Ross v. Kelly*, 784 F. Supp. 35, 44 (W.D.N.Y.), *aff'd*, 970 F.2d 896 (2d Cir. 1992) (quoting *Estelle v. Gamble*, 429 U.S. at 102, 105-06). To state a claim for denial of medical care, a prisoner must demonstrate (1) a serious medical condition and (2) deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 834-35 (1994); *Hathaway v. Coughlin ("Hathaway I")*, 37 F.3d 63, 66 (2d Cir. 1994).

The first prong is an objective standard and considers whether the medical condition is "sufficiently serious."

*Farmer v. Brennan*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). A court must consider two inquiries in determining whether a deprivation of care is sufficiently serious. *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006). First, the court must determine "whether the prisoner was actually deprived of adequate medical care." *Id.* Medical care is adequate where the care provided is a "reasonable" response to the inmate's medical condition. *Id.* The second inquiry is "whether the inadequacy in medical care is sufficiently serious." *Id.* at 280. In cases where there is a failure to provide any treatment, the court examines whether the inmate's medical condition is sufficiently serious. *Smith v. Carpenter*, 316 F.3d 178, 185-86 (2d Cir. 2003). The Second Circuit has stated that a medical need is serious if it presents "a condition of urgency that may result in degeneration or extreme pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks and citation omitted). Among the relevant factors to consider are "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Id.* (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992)). In cases where medical treatment is given, but is inadequate, "the seriousness inquiry is narrower." *Salahuddin v. Goord*, 467 F.3d at 280. "For example, if the prisoner is receiving on-going treatment and the offending conduct is an unreasonable delay or interruption in that treatment, the seriousness inquiry 'focus[es] on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone.' " *Id.* (quoting *Smith v. Carpenter*, 316 F.3d at 185).

**\*7** The second prong is a subjective standard requiring a plaintiff to demonstrate that the defendant acted with the requisite culpable mental state similar to that of criminal recklessness. *Wilson v. Seiter*, 501 U.S. at 301-03; *Hathaway I*, 37 F.3d at 66. A plaintiff must demonstrate that the defendant acted with reckless disregard to a known substantial risk of harm. *Farmer v. Brennan*, 511 U.S. at 836. This requires "something more than mere negligence ... [but] something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* at 835; *see also Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996) (citing *Farmer v. Brennan*, 511 U.S. at 835). Further, a showing of medical malpractice is insufficient to support

an Eighth Amendment claim unless "the malpractice involves culpable recklessness, i.e., an act or a failure to act by the prison doctor that evinces 'a conscious disregard of a substantial risk of serious harm.' " *Chance v. Armstrong*, 143 F.3d at 702 (quoting *Hathaway v. Coughlin ("Hathaway II")*, 99 F.3d 550, 553 (2d Cir. 1996)); *see also Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003) (citations omitted).

### 2. Analysis

#### a. Epilepsy

The specific grounds for Plaintiff's claim based on his seizure condition are that Dr. Vadlamudi refused to refer Plaintiff to a neurologist when Plaintiff reported seizure activity in June through August 2012, which resulted in Plaintiff suffering a grand mal seizure in September 2012. 2d Am. Compl. at ¶ 73. Plaintiff claims that his seizure activity in June through August indicated that his condition was not controlled by his medication and that a neurologist would have changed his medication. *Id.* Plaintiff also alleges that a neurologist could have implemented other courses of treatment to prevent his petit seizures from developing into a grand mal seizure. *Id.* For example, Plaintiff claims that a timely administered shot of Ativan may prevent a grand mal seizure as it develops. Pl.'s Dep. at p. 62.

#### i. Objective Standard

From his arrival at Marcy in November 2011, Plaintiff received on-going treatment for his seizure condition. Plaintiff's seizure condition had been treated with Topamax since 2009, and Plaintiff continued to take Topamax 200mg, twice daily at Marcy. AHR at p. 236. Plaintiff's last seizure, before he arrived at Marcy, occurred on August 11, 2011. *Id.* at p. 138. Plaintiff was regularly seen by Dr. Vadlamudi and other Marcy staff for monitoring of his seizure condition. *Id.* at pp. 110-43. Plaintiff also had regular lab work done to monitor the levels and effects of Topamax. Vadlamudi Decl. at ¶ 8.

Thus, this is not a case where Plaintiff was wholly denied medical treatment, but rather one where Plaintiff was receiving an on-going course of treatment and was

denied a requested change in treatment. The Court's objective inquiry therefore focuses on whether the treatment Plaintiff was denied—a referral to a neurologist and a change of medication—was "sufficiently serious." *Salahuddin v. Goord*, 467 F.3d at 279; *Smith v. Carpenter*, 316 F.3d at 185 (" '[I]t's the particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather than the severity of the prisoner's underlying medical condition, considered in the abstract, that is relevant for Eighth Amendment purposes."). "[T]he severity of the alleged denial of medical care should be analyzed with regard to all relevant facts and circumstances." *Smith v. Carpenter*, 316 F.3d at 187. "[I]n most cases, the actual medical consequences that flow from the alleged denial of care will be highly relevant to the question of whether the denial of treatment subjected the prisoner to a significant risk of serious harm." *Id.*

Construing the evidence in the light most favorable to Plaintiff, the Court finds that the refusal to refer Plaintiff to a neurologist created a sufficiently serious risk of harm. A seizure condition is a serious medical condition and a failure to respond to an inmate's complaints regarding the possible onset of a seizure may constitute a sufficiently serious deprivation of medical care. *See Youngblood v. Artus*, 2011 WL 6337774, at *8 (N.D.N.Y. Dec. 19, 2011); *see also Boomer v. Lanigan*, 2002 WL 31413804, at *7 (S.D.N.Y. Oct. 25, 2002) ("Ignoring requests for medical care made by a prisoner known to be an epileptic may constitute deliberate indifference to serious medical needs, particularly when it is undisputed that the inmate suffered a seizure after those requests."). Here, Plaintiff claims that the minor seizure activity he experienced in July through August 2012 indicated that his condition was not controlled by his medication and that he was at risk of suffering a grand mal seizure. Pl.'s Dep. at pp. 73-74. Plaintiff informed Dr. Vadlamudi, but his request to see a neurologist was denied. *Id.* at pp. 58 & 74. Plaintiff then suffered a grand mal seizure in September 2012, which caused him to fracture his back. Plaintiff's doctors found this incident a significant episode in Plaintiff's condition. Dr. Arastu, whom Plaintiff saw at St. Lukes, opined that "this was clearly a breakthrough seizure." AHR at p. 230. Plaintiff's Topamax levels were increased following this seizure. Vadlamudi Decl. at ¶ 17. Based on the record, a reasonable fact–finder could find that the failure to respond to Plaintiff's complaints that his seizure condition was not well-controlled exposed Plaintiff to a significant risk of serious harm.

### ii. Subjective Standard

**\*8** Plaintiff must also show that Defendant Dr. Vadlamudi acted with a mental state akin to criminal recklessness in refusing to refer him to a neurologist. *See Farmer v. Brennan*, 511 U.S. at 836-37. Here, the extensive treatment provided by Dr. Vadlamudi and Marcy staff to Plaintiff for his seizure condition does not support a finding of deliberate indifference.

As stated above, Plaintiff received an on-going course of treatment for his seizure condition at Marcy. Plaintiff continued on the medication with which his seizures had been treated since 2009 and the effects and level of that medication were monitored by regular lab work. AHR at p. 236; Vadlamudi Decl. at ¶ 8. Plaintiff was also seen for regular follow-ups at the infirmary to track his seizures. *See* AHR at pp. 121-22, 129, 133, 135, & 138. At appointments in June, July, and August 2012, Plaintiff complained of minor seizures and requested a referral to a neurologist. *Id.* at pp. 133 & 135. However, Dr. Vadlamudi determined that a referral to a neurologist was not then indicated and that Plaintiff's seizures were controlled on Topamax 200mg, twice daily. Vadlamudi Decl. at ¶ 11. On August 3, Dr. Vadlamudi noted that while Plaintiff had a series of "minor attacks," he was then "doing ok" and the seizures were stress related. AHR at p. 133. At the time of these appointments, Plaintiff's last previous seizure had been August 2011. *Id.* at p. 135. Plaintiff had also had a CAT scan on September 10, 2011, which was negative. *Id.*

Plaintiff's claim against Dr. Vadlamudi evidences disagreement with his medical judgment, which does not amount to deliberate indifference. Dr. Vadlamudi determined that referral to a neurologist was not required because any seizure activity Plaintiff was then experiencing was minor and stress related, and Plaintiff's condition was controlled on Topamax. AHR at p. 135. This was a medical judgment and Plaintiff's claim is, in essence, that that judgment was incorrect. "Disagreements over medications, diagnostic techniques, forms of treatment, the need of specialists, and the timing of their intervention implicate medical judgments and not the Eighth Amendment." *Wright v. Genovese*, 694 F. Supp. 2d 137, 155 (N.D.N.Y. 2010) (citing *Sonds v. St. Baranabas Hosp. Corr. Health Servs.*, 151

F. Supp. 2d 303, 312 (S.D.N.Y. 2001)). Therefore, Plaintiff's disagreement with Dr. Vadlamudi's judgment that his condition was controlled is insufficient to establish deliberate indifference.

Furthermore, even crediting Plaintiff's assertion that referral to a neurologist and a change in medication might have prevented the grand mal seizure, Plaintiff has not produced any evidence to suggest anything more than negligence. Dr. Vadlamudi's determination that Topamax continued to be indicated for Plaintiff's condition in spite of minor seizure activity in June, July, and August 2012 was consistent with previous and subsequent treatment of Plaintiff's condition. Plaintiff has had seizure activity on other medications and while Plaintiff's medication has been adjusted or changed on several occasions, Pl.'s Dep. at pp. 51-52, the failure to do so at this time does not evidence a "conscious disregard of a substantial risk of serious harm." *Chance v. Armstrong*, 143 F.3d at 702.

Accordingly, the Court recommends that Defendants be **GRANTED** summary judgment on Plaintiff's deliberate indifference claim based on his seizure condition.

### b. Back Injury

**\*9** The basis of Plaintiff's deliberate indifference claim based on his back injury is that Dr. Vadlamudi did not provide effective pain medication and did not follow the recommendations of Plaintiff's outside specialist, which Plaintiff alleges included surgery and an MRI. *See* 2d Am. Compl. at ¶¶ 41, 52, & 93.

Here, as to the objective prong, Plaintiff has not shown that an issue of fact exists regarding a deprivation of adequate medical care with respect to his back injury. Immediately following the injury, Plaintiff was sent to St. Lukes where a CAT scan and x-rays were taken. AHR at pp. 230-37. At Marcy, Plaintiff was frequently seen in the infirmary and by Dr. Vadlamudi regarding the injury and progress notes were kept on Plaintiff's ambulation. *Id.* at pp. 115-22, 124, & 127. Throughout his recovery, Plaintiff used a back brace and cane, and also used a wheelchair, until it was no longer necessary. *Id.* at pp. 123, 126, & 267. For pain relief, Plaintiff was prescribed Ibuprofen 600mg, twice daily. *Id.* at pp. 113-20 & 124. Plaintiff was referred twice to Dr. Soults, a neurosurgical specialist whom Plaintiff saw at St. Lukes. *Id.* at pp. 202-03 &

208-09. In January 2013, another set of x-rays were taken that showed that Plaintiff's fractures were healing. *Id.* at p. 169. In May 2013, Plaintiff began attending physical therapy. *Id.* at pp. 190-97.

Plaintiff's claims that Dr. Vadlamudi ignored his specialist's recommendations are unsupported by the record. Surgery was not recommended upon Plaintiff's discharge from St. Lukes, nor did Dr. Soults in subsequent follow-ups indicate that surgery was appropriate. *See id.* at pp. 130, 202-03, & 208-09. The records also do not indicate that Dr. Soults ordered an MRI. *See id.* at pp. 202-03 & 208-09. As to Plaintiff's claim that he was denied adequate pain medication, Plaintiff was provided with Ibuprofen 600mg, twice daily, which Dr. Vadlamudi determined was proper for Plaintiff's injury. Vadlamudi Decl. at ¶¶ 29 & 33. While Plaintiff claims that Ibuprofen was ineffective at treating his pain, he also states that many pain medications cause him to have seizures and he has to be "very careful" what he takes. Pl.'s Dep. at p. 80.

Moreover, even if Dr. Vadlamudi's prescription of a weaker pain medication constituted a denial of adequate care, it is insufficient to establish deliberate indifference at the subjective prong. "Differences in opinion between a doctor and an inmate patient as to the appropriate pain medication clearly do not support a claim that the doctor was deliberately indifferent to the inmate's serious medical needs." *Wright v. Genovese*, 694 F. Supp. 2d at 160; *see also Vail v. Lashway*, 2014 WL 4626490, at \*14 (N.D.N.Y. Sept. 15, 2014) ("[T]he decision to choose one form of pain medication over another, even if the medication causes side effects, is not indicative of deliberate indifference."); *Scott v. Perio*, 2005 WL 711884, at \*6 (W.D.N.Y. Mar. 25, 2005) ("It is not for the Court to second guess plaintiff's medical providers as to what medicine or what dosage should have been prescribed to treat the plaintiff."). Therefore, Dr. Vadlamudi's decision to prescribe Plaintiff Ibuprofen rather than a stronger pain medication does not evidence deliberate indifference.

Accordingly, the Court recommends that summary judgment be **GRANTED** with respect to Plaintiff's deliberate indifference claims based on his back injury.

### B. Failure to Exhaust

Case 9:16-cv-00027-GLS-TWD    Document 85    Filed 08/13/18    Page 50 of 114

**\*10** Defendants next argue that Plaintiff failed to exhaust administrative remedies on his First Amendment retaliation claim against Defendant Smith and his ADA and Rehabilitation Act claims against Defendant Marcy. Defs.' Mem. of Law at pp. 26-30.

The Prison Litigation Reform Act ("PLRA") provides, in pertinent part, that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (citation omitted). Exhaustion in prisoner cases covered by § 1997e(a) is mandatory. *Id.* at 524; *Ross v. Blake*, ___ S. Ct. ___, 2016 WL 3128839, at \*5 (2106) (mandatory language of § 1997e(a) forecloses judicial discretion to craft exceptions to the requirement). The defendant bears the burden of proving that the administrative remedies available to Plaintiff were not exhausted prior to the initiation of this civil action. *Howard v. Goord*, 1999 WL 1288679, at \*3 (E.D.N.Y. Dec. 28, 1999). [4]

[4]   Exhaustion of administrative remedies is an affirmative defense which must be raised by the defendant. *See Jenkins v. Haubert*, 179 F.3d 19, 28-29 (2d Cir. 1999). Defendants properly raised the defense in their Answer. *See* Dkt. No. 50, Answer at ¶ 50.

In New York State, the administrative remedies consist of a three-step review process. First, a grievance is submitted to the Inmate Grievance Resolution Committee ("IGRC"), a committee comprised of both inmates and facility employees. N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5(b). The IGRC reviews and investigates the formal complaints and then issues a written determination. *Id.* Second, upon appeal of the IGRC decision, the superintendent of the facility reviews the IGRC's determination and issues a decision. *Id.* at § 701.5(c). Finally, upon appeal of the superintendent's decision, the Cental Office Review Committee ("CORC") makes the final administrative determination. *Id.* at § 701.5(d). Only upon exhaustion of these three levels of review may a prisoner seek relief in federal court. *Bridgeforth v. Bartlett*, 686 F. Supp. 2d 238, 239

(W.D.N.Y. 2010) (citing, *inter alia*, *Porter v. Nussle*, 534 U.S. at 524); *see also Neal v. Goord*, 267 F.3d 116, 121 (2d Cir. 2001), *overruled on other grounds by Porter v. Nussle*, 534 U.S. 516.

In this case, there is no record at Marcy of a grievance filed by Plaintiff relative to retaliation by Smith or disability discrimination by Marcy. Dkt. No. 57-10, Erin Pfendler Decl., dated Dec. 17, 2015, at ¶¶ 7-8. Furthermore, Plaintiff never appealed any grievance to CORC regarding such claims. Dkt. No. 57-11, Jeffery Hale Decl., dated Oct. 8, 2015, at ¶ 12. The Court has reviewed the four grievances [5] Plaintiff appealed to CORC with respect to the events that are the subject of this action and finds that Plaintiff did not exhaust administrative remedies on his retaliation and disability discrimination claims prior to bringing this action. *See* Pl.'s CORC Appeals Records.

[5]   Plaintiff only exhausted administrative remedies on a fifth grievance, MCY-17569-13, after he commenced this action. Hale Decl., Ex. A.

**\*11** Plaintiff's obligation to exhaust administrative remedies may be nonetheless be excused if remedies were unavailable. *Ross v. Blake*, ___ S. Ct. ___, 2016 WL 3128839, at \*7 (2016). As the Supreme Court recently clarified, administrative remedies may be unavailable in three potential circumstances: (1) where the administrative procedure technically exists but operates as a "dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) where the administrative scheme is "so opaque that it becomes, practically speaking, incapable of use"; and (3) where prison administrators "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at \*7-8. [6]

[6]   The Second Circuit previously set forth three circumstances when a failure to exhaust may be excused: "(1) administrative remedies are not available to the prisoner; (2) defendants have either wived the defense of failure to exhaust or acted in such a way as to estop them from raising the defense; or (3) special circumstances, such as a reasonable misunderstanding of the grievance procedures, justify the prisoner's failure to comply with the exhaustion requirement." *Ruggiero v. Cty. of Orange*, 467 F.3d 170, 175 (2d Cir. 2006) (citing *Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004)). The Second Circuit has stated that "*Ross* largely supplants our

*Hemphill* inquiry by framing the exception issue entirely within the context of whether administrative remedies were actually available to the aggrieved inmate." *Williams v. Corr. Officer Priatno*, ___ F.3d ____, 2016 WL 3729383, at *4 (2d Cir. July 12, 2016). The Court therefore will analyze whether administrative remedies were available to Plaintiff.

In this case, there is no evidence that administrative remedies were unavailable to Plaintiff. It is undisputed that there was a grievance program in place at Marcy, of which all inmates were informed at orientation. Pfendler Decl. at ¶ 2. Plaintiff does not claim that he was unaware of Marcy's grievance procedures, and filed at least five grievances while he was at the facility. *See* Hale Decl., Ex. A. Plaintiff alleges an incident where he was "chewed out" and retaliated against by Defendant Smith for filing grievances. Pl.'s Dep. at pp. 24 & 33-35. Intimidation and threats may render administrative remedies unavailable where they would deter a prisoner of "ordinary fitness" from filing a grievance. *Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004). However, Plaintiff does not allege that Smith threatened him with retaliation if he filed further grievances or that this incident deterred him from continuing to file grievances. Indeed, Plaintiff filed at least three grievances after the alleged retaliation incident. *See* Hale Decl., Ex. A. Furthermore, Plaintiff's allegation that Smith retaliated against him is unsupported and conclusory. *See* Pl.'s Dep. at pp. 33-35. Thus, Plaintiff has not shown an issue of fact that Smith's statements inhibited him from filing grievances such that administrative remedies were unavailable to him. *See Snyder v. Whittier*, 428 Fed.Appx. 89, 92 (2d Cir. 2011).

Accordingly, the Court recommends that summary judgment be **GRANTED** as to Plaintiff's retaliation and disability discrimination claims due to his failure to exhaust administrative remedies. [7]

[7]    The Court therefore does not reach Defendants' arguments that Plaintiff's retaliation and disability discrimination claims are unsupported by the record, that Defendants are entitled to qualified immunity, and that Plaintiff's disability discrimination claims are barred by sovereign immunity.

## IV. CONCLUSION

**\*12**  For the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendants' Motion for Summary Judgment (Dkt. No. 57) be **GRANTED** and this action **DISMISSED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Date: August 9, 2016.

**All Citations**

Not Reported in F.Supp.3d, 2016 WL 4570441

---

**End of Document**                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

2006 WL 1174309
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Donald Mack BENNETT, Plaintiff,

v.

T. HUNTER, Administrative Director of Medical,
Riverview Correctional Facility, Defendant.

No. 9:02-CV-1365 (FJS/GHL).
|
March 31, 2006.
|
May 1, 2006.

**Attorneys and Law Firms**

Donald Mack Bennett, White Plains, NY, for Plaintiff,
pro se.

Hon. Eliot Spitzer, Attorney General for the State of New
York, Nelson Sheingold, Assistant Attorney General, of
counsel, Albany, NY, for Respondent Department of
Law.

## ORDER

FREDERICK J. SCULLIN, JR., S.D.J.

 **\*1** The above-captioned matter having been presented
to me by the Report-Recommendation of Magistrate
Judge George H. Lowe filed March 31, 2006, and the
Court having reviewed the Report-Recommendation and
the entire file in this matter; and Judge Lowe's Report-
Recommendation which was mailed to plaintiff's last
known address, but was returned to the Clerk's office
marked "Return to Sender". Under Local Rule 41.2(b),
failure to notify the Court of a change of address as
required by Local Rule 10.1(b) may result in dismissal of
the action. Therefore, in light of Plaintiff's failure to notify
the Court of his change of address, it is hereby

**ORDERED,** that the Report-Recommendation filed by
Magistrate Judge George H. Lowe filed on March 31,
2006, is, for the reasons stated therein, **ACCEPTED** in its
entirety; and it is further

**ORDERED,** that Defendant's motion for summary
judgment is **GRANTED,** and it is further

**ORDERED,** that the Clerk of the Court is to enter
judgment in favor of Defendant and **CLOSE** this case.

**IT IS SO ORDERED.**

GEORGE H. LOWE, United States Magistrate Judge.

## REPORT-RECOMMENDATION

This matter has been referred to me for Report and
Recommendation by the Honorable Frederick J. Scullin,
Senior U.S. District Judge, pursuant to 28 U.S.C. § 636(b)
and Local Rule N.D.N.Y. 72.3(c). Generally, in this
*pro se* civil rights complaint brought under 42 U.S.C. §
1983, Donald Mack Bennett ("Plaintiff"), formerly an
inmate at the Riverview Correctional Facility ("Riverview
C.F."), alleges that the Administrative Director of the
Medical Department at Riverview C.F., Thomas B.
Hunter ("Defendant"), violated Plaintiff's rights under the
First, Eighth and Fourteenth Amendments to the United
States Constitution when, between July and December of
2000, he was deliberately indifferent to Plaintiff's serious
medical needs (which included a heart condition known
as "atrial fibrillation," a seizure disorder, a disc problem
in his back known as "spondylolisthesis," and a pinched
nerve in his right wrist). (Dkt. No. 29 [Plf.'s Second Am.
Compl.].)

Currently before the Court is Defendant's motion for
summary judgment pursuant to Fed.R.Civ.P. 56. (Dkt.
No. 59.) Generally, Defendant's motion raises three issues:
(1) whether Plaintiff has failed to establish the elements for
a claim of deliberate indifference to a serious medical need;
(2) whether Plaintiff has failed to establish any personal
involvement by Defendant in the alleged constitutional
deprivations, and (3) whether Defendant is protected by
qualified immunity. (Dkt. No. 59 [Def.'s Mem. of Law].)
For the reasons discussed below, I answer each of these
questions in the affirmative. As a result, I recommend that
Defendant's motion be granted.

## I. SUMMARY JUDGMENT STANDARD

Under Fed.R.Civ.P. 56(c), summary judgment is
warranted if "the pleadings, depositions, answers to
interrogatories, and admissions on file, together with the

2006 WL 1174309

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In determining whether a genuine issue of material [1] fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Schwapp v. Town of Avon,* 118 F.3d 106, 110 (2d Cir.1997) (citation omitted); *Thompson v. Gjivoje,* 896 F.2d 716, 720 (2d Cir.1990) (citation omitted). However, when the moving party has met its initial burden of establishing the absence of any genuine issue of material fact, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *see also Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 585-87 (1986).

[1]    A fact is "material" only if it would have some effect on the outcome of the suit. *Anderson v. Liberty Lobby,* 477 U.S. 242, 248 (1986).

**\*2** To "specifically controvert[ ]" each of the statements of material fact in a defendant's Rule 7.1(a)(3) Statement of Material Facts, a plaintiff must file a *response* to the Statement of Material Facts that "mirror[s] the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs" *and* that "set[s] forth a specific citation to the record where the factual issue arises." [2]

[2]    N.D.N.Y. L.R. 7.1(a)(3); *see, e.g., Jones v. Smithkline Beecham Corp.,* 309 F.Supp.2d 343, 346 (N.D.N.Y.2004) (McAvoy, J.) ("[W]here Plaintiff has failed to provide specific references to the record in support of her denials or has otherwise failed to completely deny Defendant's assertions of fact, those assertions will be taken as true."); *Lee v. Alfonso,* 97-CV-1741, 2004 U.S. Dist. LEXIS 20746, at *15 (N.D.N.Y. Feb. 10, 2004) (Scullin, C.J.) ("Plaintiff does not offer any facts to support his claims that would raise an issue of fact. Nor has he overcome his failure to respond to Defendants' Rule 7.1(a) (3) Statement. Therefore, Defendants' version of the facts remains uncontroverted."); *Margan v. Niles,* 250 F.Supp.2d 63, 67 (N.D.N.Y.2003) (Hurd, J.) ("Plaintiff's Rule 7.1(a)(3) statement, which contains numerous denials, does not contain a single citation to the record. Because plaintiff's response Rule 7.1(a) (3) statement does not comply with the local rules, it has not been considered."); *Mehlenbacher v. Slafrad,* 99-CV-2127, 2003 U.S. Dist. LEXIS 9248, at *4 (N.D.N.Y. June 4, 2003) (Sharpe, M.J.) ("Since [the

plaintiff] has failed to respond to the defendant's statements of material fact, the facts as set forth in the defendants' Rule 7.1 Statement ... are accepted as true."); *Adams v. N.Y. State Thruway Auth.,* 97-CV-1909, 2001 U.S. Dist. LEXIS 3206, at *2, n. 1 (N.D.N.Y. March 22, 2001) (Mordue, J.) ("[T]o the extent plaintiff's responses violate Local Rule 7. 1, and are not properly admitted or denied, the Court will deem defendant's statement of fact admitted by plaintiff."); *see also Holtz v. Rockefeller,* 258 F.3d 62, 74 (2d Cir.2001) ("[A] Local Rule 56.1 statement is not itself a vehicle for making factual assertions that are otherwise unsupported in the record.").

"If the adverse party does not so respond, summary judgment, *if appropriate,* shall be entered against the adverse party." Fed.R.Civ.P. 56(e) (emphasis added). "The fact that there has been no response to a summary judgment motion does not, of course, mean that the motion is to be granted automatically." *Champion v.. Artuz,* 76 F.3d 483, 486 (2d Cir.1996). "Such a motion may properly be granted only if the facts as to which there is no genuine dispute 'show that ... the moving party is entitled to a judgment as a matter of law.' " *Champion,* 76 F.3d at 486 (quoting Fed.R.Civ.P. 56[c] ). [3] Therefore, the Court must review the merits of the motion. *Allen v. Comprehensive Analytical Group, Inc.,* 140 F.Supp.2d 229, 232 (N.D.N.Y.2001).

[3]    Local Rule 7.1(b)(3) recognizes this requirement (that the motion have merit) when it provides that "the non-moving party's failure to file or serve ... [opposition] papers ... shall be deemed as consent to the granting ... of the motion ... unless good cause is shown," only where the motion has been "properly filed" and "the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein." N.D.N.Y. L.R. 7.1(b) (3).

Where a plaintiff has failed to respond to a defendant's Rule 7.1 Statement of Material Fact, the facts as set forth in that Rule 7.1 Statement are accepted as true to the extent those facts are supported by the record. [4] A district court has no duty to perform an independent review of the record to find proof of a factual dispute. [5] In the event the district court chooses to conduct such an independent review of the record, any verified complaint filed by the plaintiff should be treated as an affidavit. [6] I note that, here, while Plaintiff's Second Amended Complaint ("Complaint") is *not* verified, he has submitted what

purports to be an "affidavit" in opposition to Defendant's motion. (Dkt.Nos.29, 72.)

4    *See* N.D.N.Y. L.R. 7.1(a)(3) ("*Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party.*") [emphasis in original]; *Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.,* 373 F.3d 241, 243-245 (2d Cir.2004) ("If the evidence submitted in support of the motion for summary judgment motion does not meet the movant's burden of production, then summary judgment must be denied even if no opposing evidentiary matter is presented.... [I]n determining whether the moving party has met this burden ..., the district court may not rely solely on the statement of undisputed material facts contained in the moving party's Rule 56.1 statement. It must be satisfied that the citation to evidence in the record supports the assertion.") [citation omitted]; *see, e.g .,* *Govan v. Campbell,* 289 F.Supp.2d 289, 295 (N.D.N.Y. Oct. 29, 2003) (Sharpe, M.J.) ("In this case, [the plaintiff] did not file a statement of undisputed facts in compliance with Local Rule 7.1(a)(3). Consequently, the court will accept the *properly supported* facts contained in the defendants' 7.1 statement.") [emphasis added].

5    *See* *Amnesty Am. v. Town of West Hartford,* 288 F.3d 467, 470 (2d Cir.2002) ("We agree with those circuits that have held that Fed.R.Civ.P. 56 does not impose an obligation on a district court to perform an independent review of the record to find proof of a factual dispute.") (citations omitted); *accord, Lee v. Alfonso,* No. 04-1921, 2004 U.S.App. LEXIS 21432 (2d Cir. Oct. 14, 2004), *aff'g,* 97-CV-1741, 2004 U.S. Dist. LEXIS 20746, at *12-13 (N.D.N .Y. Feb. 10, 2004) (Scullin, J.) (granting motion for summary judgment); *Fox v. Amtrak,* 04-CV-1144, 2006 U.S. Dist. LEXIS 9147, at *1-4 (N.D.N.Y. Feb. 16, 2006) (McAvoy, J.) (granting motion for summary judgment; *Govan v. Campbell,* 289 F.Supp.2d 289, 295 (N.D.N.Y. Oct. 29, 2003) (Sharpe, M.J.) (granting motion for summary judgment; *Prestopnik v. Whelan,* 253 F.Supp.2d 369, 371-372 (N.D.N.Y.2003) (Hurd, J.).

6    *See* *Patterson v. County of Oneida,* 375 F.2d 206, 219 (2d. Cir.2004) ("[A] verified pleading ... has the effect of an affidavit and may be relied upon to oppose summary judgment."); *Fitzgerald v. Henderson,* 251 F.3d 345, 361 (2d Cir.2001) (holding that plaintiff "was entitled to rely upon [his verified amended complaint] in opposing summary judgment"), *cert.*

*denied,* 536 U.S. 922 (2002); *Colon v. Coughlin,* 58 F.3d 865, 872 (2d Cir.1993) ("A verified complaint is to be treated as an affidavit for summary judgment purposes.") [citations omitted]; Fed.R.Civ.P. 56(c) ("The judgment sought shall be rendered forthwith if the ... affidavits ... show that there is no genuine issue as to any material fact....").

However, to be sufficient to create a factual issue, an affidavit (or verified complaint) must, among other things, be based "on personal knowledge." [7] An affidavit (or verified complaint) is not based on personal knowledge if, for example, it is based on mere "information and belief" or hearsay. [8] In addition, such an affidavit (or verified complaint) must not be conclusory. [9] An affidavit (or verified complaint) is conclusory if, for example, its assertions lack any supporting evidence or are too general. [10] Moreover, "[a]n affidavit must not present legal arguments." [11]

7    Fed.R.Civ.P. 56(e) ("Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to the matters stated therein."); *see also* *U.S. v. Private Sanitation Indus. Ass'n of Nassau/Suffolk, Inc.,* 44 F.3d 1082, 1084 (2d Cir.1995) [citations omitted], *cert. denied sub nom, Ferrante v. U.S.,* 516 U.S. 806 (1995).

8    *See* *Patterson,* 375 F.3d at 219 ("[Rule 56(e)'s] requirement that affidavits be made on personal knowledge is not satisfied by assertions made 'on information and belief.'... [Furthermore, the Rule's] requirement that the affiant have personal knowledge and be competent to testify to the matters asserted in the affidavits also means that the affidavit's hearsay assertion that would not be admissible at trial if testified to by the affiant is insufficient to create a genuine issue for trial."); *Sellers v. M .C. Floor Crafters, Inc.,* 842 F.2d 639, 643 (2d Cir.1988) ("[Defendant's] affidavit states that it is based on personal knowledge *or* upon information and belief.... Because there is no way to ascertain which portions of [Defendant's] affidavit were based on personal knowledge, as opposed to information and belief, the affidavit is insufficient under Rule 56 to support the motion for summary judgment."); *Applegate v. Top Assoc., Inc.,* 425 F.2d 92, 97 (2d Cir.1970) (rejecting affidavit made on "suspicion ... rumor and hearsay"); *Spence v. Maryland Cas. Co.,* 803 F.Supp.

Case 9:16-cv-00027-GLS-TWD    Document 85    Filed 08/13/18    Page 55 of 114
Bennett v. Hunter, Not Reported in F.Supp.2d (2006)
2006 WL 1174309

649, 664 (W.D.N.Y.1992) (rejecting affidavit made on "secondhand information and hearsay"), *aff'd,* 995 F.2d 1147 (2d Cir.1993).

9      *See* Fed.R.Civ.P. 56(e) (requiring that non-movant "set forth specific facts showing that there is a genuine issue for trial"); *Patterson,* 375 F.3d at 219 (2d. Cir.2004) ("Nor is a genuine issue created merely by the presentation of assertions [in an affidavit] that are conclusory.") [citations omitted]; *Applegate,* 425 F.2d at 97 (stating that the purpose of Rule 56[e] is to "prevent the exchange of affidavits on a motion for summary judgment from degenerating into mere elaboration of conclusory pleadings").

10     *See, e.g., Bickerstaff v. Vassar Oil,* 196 F.3d 435, 452 (2d Cir.1998) (McAvoy, C.J., sitting by designation) ("Statements [for example, those made in affidavits, deposition testimony or trial testimony] that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment.") [citations omitted]; *West-Fair Elec. Contractors v. Aetna Cas. & Sur.,* 78 F.3d 61, 63 (2d Cir.1996) (rejecting affidavit's conclusory statements that, in essence, asserted merely that there was a dispute between the parties over the amount owed to the plaintiff under a contract); *Meiri v. Dacon,* 759 F.2d 989, 997 (2d Cir.1985) (plaintiff's allegation that she "heard disparaging remarks about Jews, but, of course, don't ask me to pinpoint people, times or places.... It's all around us" was conclusory and thus insufficient to satisfy the requirements of Rule 56[e]), *cert. denied,* 474 U.S. 829 (1985); *Applegate,* 425 F.2d at 97 ("[Plaintiff] has provided the court [through his affidavit] with the characters and plot line for a novel of intrigue rather than the concrete particulars which would entitle him to a trial.").

11     N.D.N.Y. L.R. 7.1(a)(2).

Finally, even where an affidavit (or verified complaint) is based on personal knowledge and is nonconclusory, it may be insufficient to create a factual issue where it is (1) "largely unsubstantiated by any other direct evidence" and (2) "so replete with inconsistencies and improbabilities that no reasonable juror would undertake the suspension of disbelief necessary to credit the allegations made in the complaint." 12

12     *See, e.g., Jeffreys v. City of New York,* 426 F.3d 549, 554-555 (2d Cir.2005) (affirming grant of summary judgment to defendants in part because plaintiff's

testimony about an alleged assault by police officers was "largely unsubstantiated by any other direct evidence" and was "so replete with inconsistencies and improbabilities that no reasonable juror would undertake the suspension of disbelief necessary to credit the allegations made in the complaint") [citations and internal quotations omitted]; *Argus, Inc. v. Eastman Kodak Co.,* 801 F.2d 38, 45 (2d Cir.1986) (affirming grant of summary judgment to defendants in part because plaintiffs' deposition testimony regarding an alleged defect in a camera product line was, although specific, "unsupported by documentary or other concrete evidence" and thus "simply not enough to create a genuine issue of fact in light of the evidence to the contrary"); *Allah v. Greiner,* 03-CV-3789, 2006 WL 357824, at \*3-4 & n. 7, 14, 16, 21 (S.D.N.Y. Feb. 15, 2006) (prisoner's verified complaint, which recounted specific statements by defendants that they were violating his rights, was conclusory and discredited by the evidence, and therefore insufficient to create issue of fact with regard to all but one of prisoner's claims, although verified complaint was sufficient to create issue of fact with regard to prisoner's claim of retaliation against one defendant because retaliatory act occurred on same day as plaintiff's grievance against that defendant, whose testimony was internally inconsistent and in conflict with other evidence); *Olle v. Columbia Univ.,* 332 F.Supp.2d 599, 612 (S.D.N.Y.2004) (plaintiff's deposition testimony was insufficient evidence to oppose defendants' motion for summary judgment where that testimony recounted specific allegedly sexist remarks that "were either unsupported by admissible evidence or benign"), *aff'd,* 136 Fed. Appx. 383 (2d Cir.2005) (unreported decision).

## II. ANALYSIS

**\*3** Before I analyze each of the three issues presented by Defendant in his motion, I would like to make a general observation. In support of each of his arguments, Defendant relies on certain record citations and legal citations. I find that these citations indeed support Defendant's arguments. My resulting conclusion that Defendant's motion has merit is not rebutted by Plaintiff's opposition papers. His papers are woefully deficient, despite the fact that he was twice warned of the potential consequences of failing to properly respond to Defendant's motion, and was granted numerous extensions of time in which to do so. 13

2006 WL 1174309

13    (Dkt.Nos.59, 63, 67, 70.)

Specifically, because Plaintiff fails to include in his opposition papers a Rule 7.1 Response which specifically controverts Defendant's factual assertions in matching numbered paragraphs with specific citations to the record, Defendant's factual assertions in his Rule 7.1 Statement are deemed admitted by Plaintiff. [14] In addition, because in his opposition papers Plaintiff fails to address the legal arguments advanced by Defendant, Plaintiff is deemed to have consented to the granting of Defendant's motion based on those legal arguments. [15]

14    N.D.N.Y. L.R. 7.1(a)(3).

15    N.D.N.Y. L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein, the non-moving party's failure to file or serve any papers as this Rule requires shall be deemed as consent to the granting or denial of the motion, as the case may be, unless good cause is shown."); N .D.N.Y. L.R. 7.1(a) (requiring opposition to motion for summary judgment to contain, *inter alia,* a memorandum of law); *Beers v.. GMC,* 97-CV-0482, 1999 U.S. Dist. LEXIS 12285, at *27-31 (N.D.N.Y. March 17, 1999) (McCurn, J.) (deeming plaintiff's failure, in his opposition papers, to oppose several arguments by defendants in their motion for summary judgment as consent by plaintiff to the granting of summary judgment for defendants with regard to the claims that the arguments regarded, under Local Rule 7.1[b][3] ); *cf.* Fed.R.Civ.P. 56(e) ("When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's *response ...* must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so *respond,* summary judgment, if appropriate, shall be entered against the adverse party.") [emphasis added].

**A. Whether Plaintiff Has Failed to Establish the Elements for a Claim of Deliberate Indifference to a Serious Medical Need**

Defendant recites the correct legal standard that governs Plaintiff's claim of inadequate medical care under the Eighth Amendment. (Dkt. No. 59, Mem. of Law at 9-12.) Generally, to prevail on such a claim, Plaintiff must show two things: (1) that Plaintiff had a sufficiently serious

medical need; and (2) that Defendant was deliberately indifferent to that serious medical need. *Estelle v. Gamble,* 429 U.S. 97, 104 (1976); *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998).

**1. Serious Medical Need**

Defendant acknowledges, and the record establishes, that, during some or all of the time in question, Plaintiff had a heart condition (atrial fibrillation), [16] a seizure disorder, [17] a disc problem in his lower back (spondylolysis), [18] a pinched nerve in his right wrist, [19] and calluses on his feet. [20] However, Defendant argues that, while some of these health conditions may have constituted "serious medical needs" (e.g., Plaintiff's heart condition, his seizure disorder, etc.), other of these health conditions did not constitute "serious medical needs" (e.g., any calluses on his foot, etc.). [21]

16    (*See, e.g.,* Dkt. No. 59, Def.'s Rule 7.1 Statement, ¶ 4; Dkt. No. 59, Appendix to Def.'s Rule 7.1 Statement, Ex. D-2 at 589, 590-594, 639-642, 653, 678-679, 683.)

17    (*See, e.g.,* Dkt. No. 59, Def.'s Rule 7.1 Statement, ¶ 4; Dkt. No. 59, Appendix to Def.'s Rule 7.1 Statement, Ex. D-2 at 591, 594, 639.)

18    (*See, e.g.,* Dkt. No. 59, Def.'s Rule 7.1 Statement, ¶ 5; Dkt. No. 59, Appendix to Def.'s Rule 7.1 Statement, Ex. D-2 at 95, 536.)

19    (*See, e.g.,* Dkt. No. 59, Def.'s Rule 7.1 Statement, ¶ 6; Dkt. No. 59, Appendix to Def.'s Rule 7.1 Statement, Ex. D-2 at Dkt. 536.)

20    (*See, e.g.,* Dkt. No. 59, Def.'s Rule 7.1 Statement, ¶ 12; Dkt. No. 59, Appendix to Def.'s Rule 7.1 Statement, Ex. D-2 at 6 .)

21    (Dkt. No. 59, Mem. of Law at 9-10.)

Setting aside the fact that I can find no reference to any foot calluses in Plaintiff's Amended Complaint, [22] I am persuaded by Defendant's argument. Depending on the precise nature of the disease, generally a heart condition, a seizure disorder, and a disc problem in one's back are "serious medical needs," [23] while a pinched nerve in one's wrist, and calluses on one's feet are not "serious medical needs." [24]

22    Rather, Plaintiff's claim that he had foot calloused that constituted a "serious medical condition" appears to have been asserted in an administrative grievance filed by Plaintiff on January 2, 2001. (*Compare* Dkt. No. 29 *with* Dkt. No. 59, Appendix to Def.'s Rule 7.1 Statement, Ex. D-2.)

23    *See Mejia v. Goord,* 03-CV-0124, 2005 WL 2179422, at *7 (N.D.N.Y. Aug. 16, 2005) (Peebles, M.J.) ("The record in this case is strongly suggestive of a coronary condition which, though medically unspecified, could qualify as a serious medical need."); *Boomer v. Lanigan,* 00-CV-5540, 2001 WL 1646725, at *3 (S.D.N.Y. March 31, 1999) ("Epilepsy, or an epileptic seizure, is a serious medical injury."); *Williams v. M.C.C. Institution,* 97-CV-5352, 1999 WL 179604, at *10 (S.D.N.Y. March 31, 1999) ("There can be no question that epilepsy, and in particular an epileptic fit that runs unchecked, is a serious medical condition, even if for a half-hour.") [citation omitted]; *Veloz v. State of New York,* 339 F.Supp.2d 505, 522-524 (S.D.N.Y.2004) (spinal condition that included spondylosis was a serious medical need); *Faraday v. Lantz,* 03-CV-1520, 2005 WL 3465846, at *5 (D.Conn. Dec. 12, 2005) ("persistent [ ] ... back pain caused by herniated, migrating discs [and] sciatica" was a serious medical need).

24    *See Dixon v. Nusholtz,* No. 98-1637, 1999 U.S.App. LEXIS 13318, at *1, 5 (6th Cir.1999) (foot calloused that required orthopedic shoes were not a "grave medical need"); *Jackson v. O'Leary,* 89-CV-7139, 1990 U.S. Dist. LEXIS 17249, at *2, 4 (1990) (N.D.Ill.Dec. 17, 1990) ("[Plaintiff's] medical problem [of having calloused on his feet which allegedly required him to be able to wear gym shoes] is not one of especially grave concern."); *Green v. Senkowski,* 99-CV-1523, Decision & Order at 6-7 (N.D.N.Y. Aug. 5, 2003) (Hood, J.) (granting defendants' motion for summary judgment because, in part, plaintiff's wrist pain was not a "serious medical need"), *aff'd,* No. 03-250, 2004 U.S.App. LEXIS 11454 (2d Cir. June 10, 2004) (unpublished opinion); *Warren v. Purcell,* 03-CV-8736, 2004 U.S. Dist. LEXIS 17792, at *26 (S.D.N.Y. Sept. 3, 2004) ("[I]t appears highly unlikely that the injuries plaintiff alleges to have suffered ... namely pain in his wrists and pain, numbness and swelling in his foot and ankle, would be considered sufficiently serious to rise to the level of an Eighth Amendment violation.").

As a result, for purposes of summary judgment, I find that Plaintiff has established a serious medical need only with regard to his heart condition, seizure disorder, and back problem (but not with regard to his wrist pain and calloused feet). However, I note that, even if I were to consider all of Plaintiff's health problems *together* as constituting one "serious medical need" over the entire relevant time period, it would not change my ultimate recommendation in this report, for the reasons stated below

**2. Deliberate Indifference**

**\*4** Defendant asserts, and the record establishes, that Riverview C.F. provided a considerable amount of medical care to Plaintiff during his incarceration there. [25] Generally, Riverview C.F. (1) responded to Plaintiff's medical requests by examining and treating him (e.g., through the prescription of more than six medications, and the administration of "foot soaks," etc.), (2) investigated his complaints, and (3) kept comprehensive and detailed records regarding Plaintiff's various health problems and complaints.

25    (Dkt. No. 59, Def.'s Rule 7.1 Statement, ¶¶ 4, 5, 6, 12, 13, 14, 15, 16, 17, 20, 21, 23, 24, 25, 26, 27, 28, 29, 30; *see generally* Dkt. No. 59, Appendix to Def.'s Rule 7.1 Statement.)

Based on this evidence, Defendant argues that (1) Plaintiff was receiving more than adequate care for his various health problems at Riverview C.F., and (2) even if he was not receiving adequate care for some of those health problems, absolutely no evidence exists suggesting that Defendant was deliberately indifferent to those health problems (whether they constituted "serious medical needs" or not). [26]

26    (Dkt. No. 59, Mem. of Law, at 10-12.)

I agree with Defendant, for the reasons stated in his Memorandum of Law. Simply stated, there is no evidence that Defendant's state of mind was equivalent to the sort of *criminal recklessness* necessary for liability under the Eighth Amendment. [27] At most, the evidence indicates there may have been a difference of opinion between the medical staff at Riverview C.F. and Plaintiff, or *conceivably* a hint of negligence on the part of someone on the medical staff at Riverview C.F. However, even if true, neither of those facts implicate Defendant or (if they did implicate Defendant) would be enough to make Defendant liable to Plaintiff under the Eighth Amendment. [28]

27    *See Hemmings v. Gorczyk,* 134 F.3d 104, 108 (2d Cir.1998) ( "The required state of mind [under the Eighth Amendment is] equivalent to criminal recklessness....").

28    *See Estelle v. Gamble,* 429 U.S. 97, 106 (1976) ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *Chance v. Armstrong,* 143 F.3d 698, 703 (2d Cir.1998) ("It is well-established that mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation."); *see, e.g., Veloz v. New York,* 339 F.Supp.2d 505, 522-24 (S.D.N.Y.2004) (granting defendants' motion for summary judgment on plaintiff's claim for deliberate indifference because defendants denied plaintiff's request for a stronger pain medication to treat his back condition based on a mere disagreement as to treatment, and medical malpractice is not actionable under the Eighth Amendment); *Connors v. Heywright,* 02-CV-9988, 2003 WL 21087886, at *3 (S.D.N.Y. May 12, 2002) (granting defendants' motion to dismiss because plaintiff's allegations that defendants forgot to give him his medications, altered his medications, and did not give him his monthly examinations, despite his epileptic seizures, failed to state a claim for deliberate indifference but stated a claim only for negligence).

As a result, I find that Plaintiff has not established that Defendant acted with deliberate indifference to any of Plaintiff's various health conditions, including his heart condition, seizure disorder, and back problem.

**B. Whether Plaintiff Has Failed to Establish any Personal Involvement by Defendant in the Alleged Constitutional Deprivation**

A defendant's personal involvement in the alleged unlawful conduct is a prerequisite for a finding of liability in an action under 42 U.S.C. § 1983. *See Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (citation omitted); *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977), *cert. denied,* 434 U.S. 1087 (1978). To prevail on a cause of action under 42 U.S.C. § 1983 against an individual, a plaintiff must show some tangible connection between the alleged unlawful conduct and the defendant. *See Bass v. Jackson,* 790 F.2d 260, 263 (2d Cir.1986). If the defendant is a supervisory official a mere "linkage" to the unlawful conduct through "the prison chain of command" (i.e., under the doctrine of *respondeat superior* ) is insufficient to show his or her personal involvement in that unlawful conduct. *Richardson v. Goord,* 347 F .3d 431, 435 (2d Cir.2003); *Wright,* 21 F.3d at 501; *Ayers v. Coughlin,* 780 F.2d 205, 210 (2d Cir.1985).

Rather, for a supervisory official to be personally involved in unlawful conduct, he or she must have (1) directly participated in that violation, (2) failed to remedy that violation after learning of it through a report or appeal, (3) created, or allowed to continue, a policy or custom under which the violation occurred, (4) been grossly negligent in managing subordinates who caused the violation, or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring. *Richardson,* 347 F.3d at 435; *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995); *Wright,* 21 F.3d at 501; *Williams v. Smith,* 781 F.2d 319, 323-24 (2d Cir.1986).

**\*5** Here, even after conducting an independent review of the record, I can find no evidence of any such personal involvement by Defendant in the alleged unlawful conduct (which primarily consisted of Nurse Holden's dispensing the wrong medication to Plaintiff). Plaintiff has not established (or even alleged) that Defendant directly participated in Nurse Holden's (alleged) misconduct. [29] Nor has Plaintiff established (or even alleged) the existence of a policy or custom under which Nurse Holden's (alleged) misconduct occurred.

29    For example, in his opposition papers, Plaintiff acknowledges that "Defendant Hunter was not present for the pill incident." (Dkt. No. 72, ¶ 6.)

Rather, liberally construed, Plaintiff's sole theories of personal involvement appear to be that (1) Defendant knew of various of Plaintiff's complaints about Nurse Holden before and during the misconduct, but negligently failed to act on those complaints, and (2) Defendant failed to remedy Nurse Holden's misconduct (and indeed sought to cover it up) after learning of it through Plaintiff's complaints. (Dkt. No. 29, ¶¶ VII, VIII, IX.) The problem with these theories of personal involvement is that they are completely devoid of any evidentiary support in the record.

Case 9:16-cv-00027-GLS-TWD    Document 85    Filed 08/13/18    Page 59 of 114
Bennett v. Hunter, Not Reported in F.Supp.2d (2006)

2006 WL 1174309

At most, the record shows that Defendant supervised Nurse Holden (a part-time employee), and dutifully investigated Plaintiff's *sole* complaint about Nurse Holden, which was contained in Grievance No. RV-5422-01 (filed on January 2, 2001). In pertinent part, Plaintiff's grievance alleged that (1) on December 25, 2000, Nurse Holden gave Plaintiff the wrong liquid in which to soak his feet, making his calloused feet uncomfortable, and (2) on August 27, 2000, Nurse Holden failed to give Plaintiff a new pill after dropping that pill on the floor, and improperly took his pulse.

I can find no evidence in the record that Plaintiff made any complaints to Defendant about Nurse Holden before August 27, 2000, or even before December 25, 2000 (such that Defendant could possibly be said to have been "grossly negligent" or "deliberately indifferent" for failing to act on those complaints before the dates of the alleged misconduct in question). Indeed, he had arrived at Riverview C.F. only in July of 2000. Nor do I have any reason to believe that, if there existed any such complaints, they would have been sufficient to put Defendant on notice of the potential for misconduct by Nurse Holden, given Plaintiff's prolix and confusing use of language. [30]

[30]    (*See, e.g.,* Dkt. No. 29; Dkt. No. 59, Appendix to Def.'s Rule 7.1 Statement, Ex. D-2 [attaching Plaintiff's Grievance No. RV-5422-01.)

The crux of Plaintiff's theory of personal involvement appears to be that Defendant failed to *remedy* Nurse Holden's misconduct during the "foot soak," dropped pill, and pulse reading. Setting aside the issue of whether any discipline of Nurse Holden would even be warranted for such "misconduct," the fact remains that Plaintiff wanted a remedy other than discipline of Nurse Holden. [31] Rather, Plaintiff wanted Defendant to somehow undo the (alleged) results of Nurse Holden's misconduct, namely the worsening of Plaintiff's medical conditions, which (allegedly) included having his heart condition, seizure disorder and back problem "upgraded." I do not understand this extraordinary feat of medicine (bordering on a supernatural act) to be the sort of "remedy" referred to in the above-described personal involvement test for supervisors.

[31]    (*See* Dkt. No. 29, ¶ IX [complaining that Defendant merely informed Plaintiff that Nurse Holden "will either be suspended or fired"].)

**\*6** All that was required of Defendant, under the circumstances, was what he did. He investigated Plaintiff's grievance (reviewing his medical records, and talking to both Plaintiff and Nurse Holden), and determined Plaintiff's complaints about Nurse Holden to be without merit. Even if Defendant's determination had been incorrect, there is no evidence that Nurse Holden's misconduct (if it indeed occurred) constituted a violation of Plaintiff's constitutional rights (i.e., that it occurred during the treatment of a serious medical need, and that it resulted from anything more than negligence by Nurse Holden). This absence of evidence is especially noteworthy, considering that Plaintiff was provided the opportunity to obtain such evidence during this action's discovery period, which closed long ago. [32] Under analogous circumstances, other district courts within the Second Circuit have refused to find personal involvement by a nurse supervisor. [33]

[32]    (*See* Dkt. No. 39 at 1 [Scheduled Order of 6/22/04, setting discovery deadline as 10/30/04].)

[33]    *See, e.g., Gates v. Goord,* 99-CV-1378, 2004 U.S. Dist. LEXIS 12299, at *32-35 (S.D.N.Y. July 1, 2004) (granting summary judgment to nurse supervisor, because-despite inmate's conclusory allegations that nurse supervisor was "repeatedly notified" of inmate's allegedly inadequate medical care but refused to take appropriate action-inmate had offered no facts showing personal involvement by nurse supervisor in any constitutional violation, and discovery was closed); *Patterson v. Lilley,* 02-CV-6056, 2003 U.S. Dist. LEXIS 11097, at *19-22 (S.D.N.Y. June 30, 2003) (granting motion to dismiss filed by nurse administrator, because fact that inmate sent complaint letter to nurse administrator about subordinate nurse's allegedly inadequate medical care was not sufficient to personally involve nurse administrator in alleged misconduct, especially where no facts indicated any constitutional deprivation); *Gadson v. Goord,* 96-CV-7544, 2000 U.S. Dist. LEXIS 3944, at *20-21 (S.D.N.Y. March 28, 2000) (granting summary judgment to nurse supervisor, because no evidence existed showing he was personally involved in physical therapist's alleged denial of adequate wheel chair, even though he attended meetings at which

issue of wheel chair was discussed, and because no evidence existed that alleged misconduct constituted a constitutional deprivation); *Rosales v. Coughlin,* 10 F.Supp.2d 261, 267 (W.D.N.Y.1998) (granting summary judgment to nurse supervisor because of lack of personal involvement, where record did not include any evidence that nurse supervisor failed to take appropriate action in response to inmate's complaints of inadequate medical care); *Muhammad v. Francis,* 94-CV-2244, 1996 U.S. Dist. LEXIS 16785, at *25 (S.D.N.Y. Nov. 13, 1996) (granting summary judgment to nurse supervisor because of lack of personal involvement, where evidence showed merely that nurse supervisor had been contacted during investigation of inmate's grievance complaint regarding his medical care); *Holmes v. Fell,* 856 F.Supp. 181, 183-184 (S.D.N.Y.1994) (granting summary judgment to nurse supervisor because of lack of personal involvement in subordinate nurse's allegedly inadequate medical care of inmate, and because of lack of any evidence that the allegedly inadequate medical care constituted a constitutional violation).

As a result, I find that, even if Plaintiff had established the elements of a claim for deliberate indifference to a serious medical need, Plaintiff has not established that Defendant was personally involved in any constitutional deprivation.

### C. Whether Defendant Is Protected by Qualified Immunity

Finally, Defendant argues that he is entitled to dismissal because he is protected by qualified immunity. Regardless of the merits of this defense, I have already concluded that Plaintiff's Amended Complaint should be dismissed on two alternative grounds (failure to establish the elements of an Eighth Amendment claim, and failure to establish the personal involvement of Defendant in any constitutional deprivation). As I result, I need not address

this issue. However, in the interest of thoroughness, I will do so briefly.

Defendant recites the correct legal standard with regard to the qualified immunity defense. (Dkt. No. 59, Mem. of Law at 14-16.) Generally, Defendant has established facts showing that (1) his investigation of Plaintiff's January 2, 2001, grievance was reasonably conducted, and (2) as a result of that investigation, he found no evidence that Nurse Holden had been deliberately indifferent to any of Plaintiff's medical needs (whether those needs were serious or not). Under the circumstances, I can find no violation of a "clearly established" right, much less a right of which a reasonable person would have known.

As a result, I find that Defendant is entitled to qualified immunity.

**ACCORDINGLY,** it is

**RECOMMENDED** that Defendant's motion for summary judgment (Dkt. No. 59) be ***GRANTED.***

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Sec'y of Health and Human Svcs.,* 892 F.2d 15 [2d Cir.1989] ); 28 U.S.C. § 636(b); Fed.R.Civ.P. 6(a), 6(e), 72.

**All Citations**

Not Reported in F.Supp.2d, 2006 WL 1174309

---

**End of Document**                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

2016 WL 6604129
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Johnathan Johnson, Plaintiff,
v.
Richard Adams, et al., Defendants.

Civil Action No. 9:14-CV-0811 (GLS/DEP)
|
Signed 07/25/2016

**Attorneys and Law Firms**

FOR PLAINTIFF: JOHNATHAN JOHNSON, Pro se,
89-A-1042, Upstate Correctional Facility, P.O. Box 2001,
Malone, NY 12953.

FOR DEFENDANTS: HON. ERIC T.
SCHNEIDERMAN, New York State Attorney General,
The Capitol, OF COUNSEL: DAVID J. SLEIGHT,
ESQ., Assistant Attorney General, Albany, NY 12224.

REPORT AND RECOMMENDATION

David E. Peebles, U.S. Magistrate Judge

 **\*1** Plaintiff Johnathan Johnson, a New York State
prison inmate and experienced *pro se* litigant, has
commenced this action against various individuals
employed by the New York State Department of
Corrections and Community Supervision ("DOCCS"),
pursuant to 42 U.S.C. § 1983, alleging that the defendants
have deprived him of his civil rights. [1] Plaintiff's claims
center upon the alleged inadequacy of medical treatment
provided to him by medical personnel at the facility in
which he was confined at the relevant times.

[1]     As a result of his persistent filing of baseless
        actions, plaintiff became subject to the "three strikes"
        provision of 28 U.S.C. § 1915(g), disqualifying him
        from being granted *in forma pauperis* status absent
        a showing of imminent danger of serious physical
        injury, as early as seven years ago. *See Johnson
        v. Connolly*, No. 9:07-CV-0158, 2008 WL 724167
        (N.D.N.Y. Mar. 17, 2008).

Currently pending before the court are two motions
brought by the three defendants who remain in the
action, following earlier court rulings, seeking the entry
of summary judgment dismissing plaintiff's claims against
them. In their motions, those defendants argue that the
record is devoid of evidence from which a reasonable
factfinder could conclude that any of them denied
plaintiff adequate medical care or otherwise violated his
constitutional rights. For the reasons set forth below, I
recommend that the pending motions be granted.

I. BACKGROUND [2]

[2]     In light of the procedural posture of the case, the
        following recitation is derived from the record now
        before the court, with all inferences drawn and
        ambiguities resolved in plaintiff's favor. *Terry v.
        Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003).

Plaintiff is a New York State prison inmate currently
being held in the custody of the DOCCS. *See generally*
Dkt. No. 4. At the times relevant to his claims in this
action, he was confined in the Upstate Correctional
Facility ("Upstate"), located in Malone, New York. [3] *Id.*

[3]     Upstate is a maximum security prison comprised
        exclusively of special housing unit ("SHU") cells in
        which inmates are confined for twenty-three hours
        each day, primarily for disciplinary reasons. *Samuels
        v. Selsky*, No. 01-CV-8235, 2002 WL 31040370, at *4
        n.11 (S.D.N.Y. Sept. 12, 2002).

Plaintiff suffers from several diagnosed medical ailments,
including a sinus condition caused by a broken nose, dry
skin, allergies, and cardio obstructive pulmonary disease
("COPD"). Dkt. No. 22-5 at 19-20; *see also* Dkt. No. 4
at 2. Medical personnel at Upstate have provided plaintiff
with regular medical treatment for these conditions,
including by providing ointments for his skin condition,
a Proventil inhaler for his COPD, gas relief medications,
and other medications as needed. Dkt. No. 21-1 at 5,
30, 50, 51, 70. Plaintiff alleges that defendants Richard
Adams and Patrick Johnston, a medical doctor and
physician's assistant employed at the facility, respectively,
improperly directed prison medical personnel to stop
providing these medications in April and June 2010, and
continued to deny him medication through August 2012. [4]
Dkt. No. 4 at 2-4. Plaintiff also contends that defendant
David Rock, the superintendent at Upstate, is subject to

supervisory liability for the conduct of defendants Adams and Johnston. *Id.* at 3-4.

[4]   As a result of earlier decisions in the action, the relevant period at issue has been narrowed to February 2011 through August 2012. *See* Dkt. No. 39 at 31; Dkt. No. 42 at 10.

**\*2** According to Nancy Smith, a nurse administrator stationed at Upstate and a former defendant in this case, prison nurses administer medication to inmates at the facility seven days per week, three times daily, or as otherwise prescribed by the inmate's provider. Dkt. No. 21 at 2. When the on-duty nurse arrives at a housing unit, an announcement is made that medication rounds are beginning, and inmates who wish to receive treatment are directed to be at their cell doors with the lights on. *Id.* at 3. Any inmate not at his door with the lights on is deemed to have declined medication. *Id.* If an inmate is at his door, the nurse administering the medication is required to ask the inmate for his name and department identification number ("DIN") to ensure that the proper medication goes to the correct inmate. *Id.* at 2; Dkt. No. 48-3 at 2-3. If an inmate does not comply with these requirements, medications are not dispensed to him. *Id.*

Pursuant to the policy at Upstate, certain medications may not be prescribed without periodic evaluation as to the medical necessity for continuing the medication. Dkt. No. 21 at 3; Dkt. No. 48-3 at 3. Accordingly, an inmate receiving these medications is regularly required to submit to a medical examination by a doctor or nurse practitioner in order to determine the continued need for medication. *Id.* If an inmate refuses to cooperate, his medications are discontinued. *Id.*

During the course of a deposition conducted in connection with a lawsuit earlier filed by Johnson, he acknowledged his awareness of the established procedures for receiving medication. Dkt. No. 22-5 at 46-47, 64-67. He further admitted to refusing to provide his name and DIN "every day," stating that he "would rather go through the pain" than give prison medical personnel his name. *Id.* at 46, 57-58. Plaintiff's medical records confirm this, demonstrating that, between February, 2011 and August, 2012, Johnson refused to comply with nurses' requests for his name and DIN in 258 instances. [5] Dkt. Nos. 48-4, 48-5, 48-6. As a result of his non-compliance, prison staff did not dispense medications to plaintiff on those occasions. *Id.*

[5]   In their motion papers, defendants have included a declaration from Dr. Vijaykumar Mandalaywala, a physician employed at Upstate. Dkt. No. 48-3. Attached as Exhibit A to the declaration of Dr. Mandalaywala are plaintiff's health records from February 1, 2011 through August 2012. Dkt. Nos. 48-4 and 48-5. Attached as Exhibit B to that declaration is a detailed chart reflecting each of plaintiff's encounters with medical personnel during that period, as reflected in plaintiff's health records. Dkt. No. 48-6. Dr. Mandalaywala states that he reviewed plaintiff's health records and that "on the 258 occasions that [plaintiff] was not seen and/or medication was not distributed it was because of plaintiff's refusal to follow the Upstate Medical Department's procedures regarding nurse sick call and the prescribing and distributing of medications." Dkt. No. 48-3 at 2.

Plaintiff contends that he is "exempt" from the requirement that he state his name and DIN because he has been the only resident of his cell since he came to Upstate, and the medical personnel know who he is. Dkt. No. 22-5 at 46-47, 58, 62-63. He also argues that, because he has been diagnosed with COPD, a chronic condition that he alleges will not change, he should not be required to submit to an examination to verify the continuing need for any medications because "the medication speaks for itself." *Id.* at 37.

## II. PROCEDURAL HISTORY

Plaintiff commenced this action on or about January 28, 2013 in New York State Supreme Court, Franklin County. Dkt. No. 4 at 5. Plaintiff's complaint named as defendants the following seven Upstate employees or former employees: (1) Dr. Richard Adams, a physician; (2) Patrick Johnston, a physician's assistant; (3) David Rock, the superintendent of Upstate; (4) Nancy Smith, a nurse administrator; (5) George Waterson, a registered nurse; (6) Lester Wright, the DOCCS Deputy Commissioner and Chief Medical Officer; and (7) Heath Baker, a registered nurse. *Id.* at 1.

**\*3** Relying on federal question jurisdiction, defendants Adams, Johnston, Baker, Wright, Waterson, and Smith removed the action to this court on July 3, 2014. [6] Dkt. No. 1. A subsequent motion brought by the plaintiff seeking an order remanding the action to state court, Dkt. No. 2, was denied by District Judge Gary L. Sharpe on

December 15, 2014. Dkt. No. 14. In his decision, Judge Sharpe construed plaintiff's complaint as asserting (1) a deliberate indifference claim against defendants Adams and Johnston; (2) a retaliation claim against defendants Waterson, Baker and Smith; and (3) supervisory liability claims against defendants Wright and Smith. *Id.* at 2.

<sup>6</sup> Defendant Rock did not join in the removal notice.

Following the close of discovery, defendants Adams, Johnston, Baker, Wright, Waterson, and Smith filed a motion for summary judgment dismissing plaintiff's claims, arguing that the record evidence does not give rise to a genuine dispute of material fact regarding whether (1) defendants Adams and Johnston were deliberately indifferent to plaintiff's serious medical needs; (2) defendants Waterson, Baker, and Smith retaliated against plaintiff; or (3) defendants Wright and Smith were personally involved in the constitutional violations alleged. <sup>7</sup> *See generally* Dkt. No. 24. On February 24, 2016, I issued a report recommending that defendants' motion for summary judgment be denied with respect to plaintiff's deliberate medical indifference claims, asserted against defendants Adams and Johnston, regarding the medical treatment plaintiff received between February 2011 and August 2012, and with respect to plaintiff's supervisory claims asserted against defendant Rock. I further recommended that defendants' motion otherwise be granted, and that defendants Adams, Johnston, and Rock be permitted to file motions for summary judgment addressing the remaining claims asserted against them. Dkt. No. 39. On March 23, 2016, Judge Sharpe issued a decision and order adopting my recommendation in its entirety. Dkt. No. 42.

<sup>7</sup> Defendant Rock did not join in that motion for summary judgment.

Defendants Adams, Johnston and Rock have now moved for summary judgment dismissing plaintiff's remaining claims. Dkt. Nos. 43, 48. Those motions, which are now fully briefed, have been referred to me for the issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). *See* Fed. R. Civ. P. 72(b).

## III. DISCUSSION

### A. Summary Judgment Standard

Summary judgment motions are governed by Rule 56 of the Federal Rules of Civil Procedure. Under that provision, the entry of summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 82-83 (2d Cir. 2004). A fact is "material" for purposes of this inquiry if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248; *see also Jeffreys v. City of N.Y.*, 426 F.3d 549, 553 (2d Cir. 2005). A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

A party moving for summary judgment bears an initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue; the failure to meet this burden warrants denial of the motion. *Anderson*, 477 U.S. at 250 n.4; *Sec. Ins. Co.*, 391 F.3d at 83. In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material dispute of fact for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 250.

**\*4** When deciding a summary judgment motion, a court must resolve any ambiguities, and draw all inferences, in a light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255; *Jeffreys*, 426 F.3d at 553; *Wright v. Coughlin*, 132 F.3d 133, 137-38 (2d Cir. 1998). The entry of summary judgment is justified only in the event of a finding that no reasonable trier of fact could rule in favor of the non-moving party. *Bldg. Trades Employers' Educ. Ass'n v. McGowan*, 311 F.3d 501, 507-08 (2d Cir. 2002); *see also Anderson,* 477 U.S. at 250 (finding summary judgment appropriate only when "there can be but one reasonable conclusion as to the verdict").

### B. Supervisory Liability Claim Against Defendant Rock

In his third cause of action, plaintiff alleges that as the superintendent at Upstate, defendant Rock bears responsibility for failing to remediate the denial by medical personnel at the facility of proper medical treatment for Johnson. Dkt. No. 4 at 3-4. In his motion, defendant Rock seeks dismissal of that claim against him

based upon lack of personal involvement. Dkt. No. 43. Plaintiff responds by arguing that, by receiving plaintiff's grievances that placed him on notice of the claimed medical indifference and not taking action to address his complaints, defendant Rock is subject to supervisory liability for the medical staff's deliberate indifference to Johnson's serious medical needs. Dkt. No. 47 at 5.

### 1. Standard Governing Supervisory Liability

"Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [section] 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citing *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991); *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1997)). In order to prevail on a section 1983 cause of action against an individual, a plaintiff must show "a tangible connection between the acts of a defendant and the injuries suffered." *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). It is well established that a supervisor cannot be liable under section 1983 solely by virtue of being a supervisor, "and [liability] cannot rest on *respondeat superior.*" *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003); *Wright*, 21 F.3d at 501. To establish responsibility on the part of a supervisory official for a civil rights violation, a plaintiff must demonstrate that the individual (1) directly participated in the challenged conduct; (2) after learning of the violation through a report or appeal, failed to remedy the wrong; (3) created or allowed to continue a policy or custom under which unconstitutional practices occurred; (4) was grossly negligent in managing the subordinates who caused the unlawful event; or (5) failed to act on information indicating that unconstitutional acts were occurring. *Iqbal v. Hasty*, 490 F.3d 143, 152-53 (2d Cir. 2007), *rev'd on other grounds sub nom. Ashcroft v. Iqbal*, 556 U.S. 554 (2009); *see also Richardson*, 347 F.3d at 435; *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995); *Wright*, 21 F.3d at 501.

### 2. Analysis

In his complaint, plaintiff alleges that despite being notified of the failure of medical personnel at Upstate to provide him with adequate medical treatment through the filing of grievances, defendant Rock failed to intervene, and specifically permitted the continued use of the medical protocol that required plaintiff to recite his name and DIN before receiving medical treatment. Dkt. No. 4 at 4. Plaintiff makes no attempt to provide evidentiary support for his claim that defendant Rock is liable for failing to rectify the alleged harm arising from plaintiff not receiving his medication based on his refusal to follow protocol. Instead, he relies solely on unsupported statements that because he filed grievances while defendant Rock was the superintendent at Upstate, defendant Rock knew or should have known that plaintiff's constitutional rights were being violated, and defendant Rock's failure to act effectively ratified the continued use of the medical protocols in place at the facility.

**\*5** It is well-established that a supervisory official's receipt of grievances or letters, coupled with a failure to respond, without more, is insufficient to establish his personal involvement in the constituted deprivations alleged under section 1983. *See Parks v. Smith*, No. 9:08-CV-0586, 2011 WL 4055415, at \*14 (N.D.N.Y. Mar. 29, 2011) (McAvoy, J. *adopting report and recommendation by* Lowe, M.J.) (citing *Rivera v. Goord*, 119 F. Supp. 2d 327, 344-45 (S.D.N.Y. 2000) ("A prisoner's allegation that a supervisory official failed to respond to a grievance is insufficient to establish that official's personal involvement")). [8] Because plaintiff has not offered any record evidence showing anything more than that defendant Rock could have received grievances related to complaints about Johnson's medical treatment, no reasonable factfinder could conclude that defendant Rock was personally involved in any of the allegations giving rise to plaintiff's claims in this action. [9]

---

[8]    Copies of all unreported decisions cited in this document have been appended for the convenience of the *pro se* plaintiff.

[9]    I note, parenthetically, that plaintiff has failed to establish that the protocols in place at Upstate, including those related to sick call and dispensing of medications, are unconstitutional as applied to inmates, including Johnson.

### C. Plaintiff's Deliberate Medical Indifference Claim

In his complaint, plaintiff asserts a deliberate medical indifference claim against defendants Adams and Johnston arising from allegations that they discontinued his ointment, inhaler, soap, and stomach medication

2016 WL 6604129

during the period of February 2011 to August 2012.[10] Dkt. No. 4 at 3-4.

[10] As was previously noted, plaintiff's deliberate medical indifference claim regarding medical treatment received through January 2011 was previously dismissed by the court. *See* Dkt. No. 42.

### 1. Legal Standard Governing Deliberate Medical Indifference Claims

The Eighth Amendment prohibits punishment that is "incompatible with the evolving standards of decency that mark the progress of a maturing society [,] or which involve the unnecessary and wanton infliction of pain [.]" *Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976) (quotation marks and citations omitted). While the Eighth Amendment "does not mandate comfortable prisons, ... neither does it permit inhumane ones[.]" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quotation marks and citation omitted). "These elementary principles establish the government's obligation to provide medical care for those whom it is punishing by incarceration." *Estelle*, 429 U.S. at 103. Failure to provide inmates with medical care, "[i]n the worst cases, ... may actually produce physical torture or lingering death, [and] ... [i]n less serious cases, ... may result in pain and suffering which no one suggests would serve any penological purpose." *Id.* (quotation marks and citations omitted).

A claim alleging that prison officials have violated an inmate's Eighth Amendment rights through their deliberate indifference to his serious medical needs must satisfy both objective and subjective requirements. *Wright v. Goord*, 554 F.3d 255, 268 (2d Cir. 2009); *Price v. Reilly*, 697 F. Supp. 2d 344, 356 (E.D.N.Y. 2010). To meet the objective requirement, the alleged deprivation must be "sufficiently serious." *Farmer*, 511 U.S. at 844; *see also Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006) ("[T]he objective test asks whether the inadequacy in medical care is sufficiently serious."). Factors informing this inquiry include "whether a reasonable doctor or patient would find it important and worthy of comment, whether the condition significantly affects an individual's daily activities, and whether it causes chronic and substantial pain." *Salahuddin*, 467 F.3d at 280 (quotation marks and alterations omitted). Determining whether a deprivation is sufficiently serious requires a court to

examine the seriousness of the deprivation, and whether the deprivation represents "a condition of urgency, one that may produce death, degeneration, or extreme pain[.]" *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (quotation marks omitted). Importantly, it is "the particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather than the severity of the prisoner's underlying medical condition, considered in the abstract, that is relevant for Eighth Amendment purposes." *Smith v. Carpenter*, 316 F.3d 178, 186 (2d Cir. 2003).

**\*6** To satisfy the subjective requirement, a plaintiff must demonstrate that the defendant had "the necessary level of culpability, shown by actions characterized by 'wantonness.' " *Blyden v. Mancusi*, 186 F.3d 252, 262 (2d Cir. 1999). "In medical-treatment cases ..., the official's state of mind need not reach the level of knowing and purposeful infliction of harm; it suffices if the plaintiff proves that the official acted with deliberate indifference to inmate health." *Salahuddin*, 467 F.3d at 280. "Deliberate indifference," in a constitutional sense, "requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result." *Id.*; *see also Farmer*, 511 U.S. at 837 ("[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."). "Deliberate indifference is a mental state equivalent to subjective recklessness, as the term is used in criminal law." *Salahuddin*, 467 F.3d at 280 (citing *Farmer*, 511 U.S. at 839-40).

### 2. Analysis

Turning first to the objective element of plaintiff's medical indifference claim, plaintiff alleges that he suffers from dry skin, sinus issues, and COPD. Dkt. No. 4 at 2. Plaintiff contends that these conditions constitute serious medical needs, and require medication for treatment. Dkt. No. 53-2 at 4-5; Dkt. No. 22-5 at 29; Dkt. No. 28 at 6. Plaintiff further alleges that defendants Adams and Johnston were deliberately indifferent to those serious medical needs between February 2011 and August 2012 because they abided by the terms of the prison policy that requires each inmate seeking medication to first provide his name and DIN to the administering nurse, and, in doing so,

WESTLAW © 2018 Thomson Reuters. No claim to original U.S. Government Works.

wrongfully caused him to be denied medical treatment. Dkt. No. 4 at 2-4.

Notwithstanding these contentions, plaintiff's medical records between February 2011 and August 2012 clearly reflect that plaintiff was not in urgent need of any of the medications he contends were discontinued by defendants Adams and Johnston in light of the fact that several days would elapse between plaintiff being provided medications due to his own conduct. *See, e.g.*, Dkt. No. 48-3 at 2; Dkt. Nos. 48-4 and 49-5 (reflecting that, on 258 occasions between February 2011 and August 2012, plaintiff refused to provide medical staff his name and DIN and was not provided any medical treatment on those dates, and that plaintiff was provided treatment on 294 occasions during this same time period). It is clear from the record that any delay in plaintiff's receipt of medication was based upon his refusal to abide by reasonable and medically appropriate safeguards and protocols at Upstate governing sick call and receipt of medication. Any claim of urgency is belied by the simple fact that to receive the prescribed medication, plaintiff had only to state his name and identification number. Under these circumstances, plaintiff cannot now be heard to complain of deliberate indifference to serious medical needs.[11] *See, e.g.* *Scarbrough v. Thompson*, 10-cv-0901, 2012 WL 7761439, at *12 (N.D.N.Y. Dec. 12, 2012) (holding, where inmate plaintiff refused medical care from a nurse because he preferred to receive care from a different nurse, that "any alleged delay or interference in treatment was due to [inmate's] own actions" and could not subsequently "be transformed into an Eighth Amendment claim") (Hummel, M.J.), *adopted by* 2013 WL 1100680 (N.D.N.Y. Mar. 15, 2013) (McAvoy, J.); *Nelson v. Rodas*, 01-cv-7887, 2002 WL 31075804, at *15-*16 (S.D.N.Y. Sept. 17, 2002), *aff'd* 132 Fed.Appx.401 (2nd Cir. June 1, 2005); *Brown v. Selwin*, 250 F. Supp. 2d 299, 307-308 (S.D.N.Y. 1999) (no deliberate indifference when it was uncontroverted that plaintiff refused medical treatment on several occasions); *Ross v. Kelly*, 784 F. Supp. 35, 46-47 (W.D.N.Y.) (evidence failed to establish deliberate indifference to medical needs where plaintiff was largely to blame for many of the delays in his treatment due to his second-guessing of physician's advice and refusal of treatment), *aff'd* 970 F.2d 896 (2d Cir. 1992), *cert. denied* 506 U.S. 1040 (1992); *Evering v. Rielly*, No. 98-CV-6718, 2001 WL 1150318, at *10 (S.D.N.Y. Sept. 28, 2001) ("[A]n inmate's refusal to accept medical treatment

in no way signifies a deliberate indifference to serious medical needs.") (citing cases)).

[11]   Plaintiff's alleged skin condition also does not qualify as a sufficiently serious medical need in the first instance. *See Reid v. Nassau Cty. Sheriff's Dep't*, No. 13-cv-1192, 2014 WL 4185195, at *20 (E.D.N.Y. Aug. 20, 2014) (dismissing claim for deliberate indifference to serious medical needs involving a persistent skin rash and infection, finding that neither condition constituted a "sufficiently serious" medical need); *see also Gonzales v. Wright*, No. 9:06-cv-1424, 2010 WL 681323, at *11 (N.D.N.Y. Feb. 23, 2010) (quotations omitted).

***7** Turning to the subjective element of plaintiff's remaining deliberate medical indifference claim, and construing the evidence in the light most favorable to plaintiff, the record fails to demonstrate that defendants Adams and Johnston acted with the requisite deliberate indifference to plaintiff's serious medical needs. Addressing first plaintiff's claims against defendant Patrick Johnston, the record reflects, as plaintiff acknowledged during his deposition, that Mr. Johnston did not work at Upstate after April 2010. *See* Dkt. No. 22-5 at 40-43. It is axiomatic that, as with any other type of civil rights violation, personal involvement in the conduct giving rise to a deliberate medical indifference claim is a prerequisite to a finding of liability. *Coffey v. Hollenbeck*, 14-cv-0196, 2016 WL 770087, at *10 (N.D.N.Y. Jan. 27, 2016) (Hummel, M.J.) (recommending dismissal of medical indifference claims against two defendants where there was no evidence in the record "establishing that either defendant was personally involved in any decision related to Coffeey's medical care during his four-day confinement to the side room"), *adopted by* 2016 WL 796081 (N.D.N.Y. Feb. 22, 2016) (Hurd, J.); *Soto v. Wright*, 11-cv-2289, 2012 WL 265962, at *5 (S.D.N.Y. Jan. 26, 2012) (noting, with respect to medical indifference claim, that personal involvement is "a prerequisite to liability" and recommending dismissal of claim based on failure to allege facts plausibly suggesting personal involvement of two nurses in facts giving rise to claim), *adopted by* 2012 WL 639166 (S.D.N.Y. Feb. 28, 2012). In this case, because it is clear that defendant Patrick Johnston did not participate in any of the alleged deprivations during the period between February 2011 and August 2012, plaintiff's claims against him are subject to dismissal on the basis of lack of personal involvement.

Turning to plaintiff's claims against defendant Adams, the record reflects that plaintiff received intensive treatment for his various medical conditions when he complied with the self-identification policy, and that defendant Adams, to the extent he was personally involved in the denial of plaintiff's treatment on a given occasion, had sound reason for doing so. [12] Moreover, there exists no evidence in the record showing that on an occasion when plaintiff refused to comply with the self-identification policy, defendant Adams nonetheless would have refused to treat him, or knew that he was in grave danger but still did not act.

[12]   As was previously noted, during the relevant period between February 2011 and August 2012, comprised of 547 days, plaintiff had a total of 552 encounters with medical personnel at Upstate. Dkt. No. 48-3 at 2.

In sum, the record evidence in this case fails to support a finding that plaintiff's claims against defendant Adams can meet either the objective or the subjective prong of the governing test. Objectively, plaintiff's evidence fails to establish that the deprivations complained of were sufficiently serious, involving conditions significantly affecting plaintiff's daily activities and causing chronic and substantial pain. Plaintiff also has failed to adduce evidence showing that he can meet the subjective element, in that the record now before the court fails to demonstrate that defendant Adams was actually aware of a substantial risk that, absent proper treatment, serious harm would occur to the plaintiff, and that he failed to act despite that knowledge.

For these reasons, I find that no reasonable factfinder could conclude, based on the evidence in the record, that defendant Adams and Johnston were deliberately indifferent to plaintiff's serious medical needs between February 2011 and August 2012, and therefore recommend that defendants' motion for summary judgment seeking dismissal of plaintiff's medical indifference claim against defendants Adams and Johnston be granted.

## IV. SUMMARY AND RECOMMENDATION

The claims remaining in this action include a cause of action against defendant Rock, the superintendent at Upstate, based exclusively upon his failure to intervene and rescind the policies implemented by medical staff at Upstate requiring inmates to follow certain protocols in order to obtain treatment and medication. The only evidence of defendant Rock's involvement comes in the form of plaintiff's speculation that because grievances filed by him addressing those concerns were presumably forwarded to defendant Rock he must have been aware of the deliberate indifference but failed to act. In light of this fact, and additionally because plaintiff failed to demonstrate that defendants Johnston and Adams were deliberately indifferent to his serious medical needs, I conclude that there is insufficient basis to hold defendant Rock liable in his supervisory capacity. Turning to plaintiff's remaining claims against defendants Patrick Johnston and Richard Adams, I conclude that those claims are subject to dismissal based upon lack of personal involvement, with respect to defendant Johnston, and because no reasonable factfinder could conclude that Adams was deliberately indifferent to plaintiff's serious medical needs.

**\*8** Accordingly, it is hereby respectfully

RECOMMENDED that defendants' motions for summary judgment (Dkt. No. 43; Dkt. No. 48) be GRANTED and that plaintiff's remaining claims, asserted against defendants Adams, Johnston, and Rock, be DISMISSED.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette, 984 F.2d 85 (2d Cir. 1993)*.

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

Dated: July 25, 2016.

**All Citations**

Not Reported in F.Supp.3d, 2016 WL 6604129

WESTLAW   © 2018 Thomson Reuters. No claim to original U.S. Government Works.                    7

Case 9:16-cv-00027-GLS-TWD   Document 85   Filed 08/13/18   Page 68 of 114

Internet Law Library, Inc. v. Southridge Capital..., Not Reported in...

2005 WL 3370542

2005 WL 3370542
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

INTERNET LAW LIBRARY, INC.
and Hunter M.A. Carr, Plaintiffs,
v.
SOUTHRIDGE CAPITAL
MANAGEMENT, LLC, et al., Defendants.
COOTES DRIVE, LLC.,
Defendant, Counterclaim-Plaintiff,
v.
INTERNET LAW LIBRARY, INC.,
Plaintiff, Counterclaim-Defendant.
Jack TOMPKINS, Kerwin Drouet, et al., Plaintiffs,
v.
SOUTHRIDGE CAPITAL
MANAGEMENT, et al., Defendants.

No. 01 Civ. 6600(RLC).
|
Dec. 12, 2005.

**Attorneys and Law Firms**

Koerner Silberberg & Weiner, LLP, New York, NY, for
Internet Law Library, Inc.

Maryann Peronti, of counsel.

Christian, Smith & Jewell, Houston, TX, for Internet Law
Library, Inc.

Gary M. Jewell, James W. Christian, of counsel.

Tate & Associates, Richmond, TX, for Internet Law
Library, Inc.

Richard L. Tate, James W. Christian, of counsel.

Dla Piper Rudnick Gray Cary U.S. LLP, New York, NY,
for Southridge Capital Management LLC, Cootes Drive
LLC, Stephen Hicks, Daniel Pickett, Christy Constabile,
David Sims, and Navigator Mangement Ltd.

Perrie M. Weiner, Caryn G. Mazin, Palmina M. Fava, of
counsel.

Kramer Levin Naftalis & Frankel LLP, New York, NY,
for Citco Group Limited.

Michael J. Dell, of counsel.

Law Offices of Michael S. Rosenblum, Los Angeles, CA,
for Southridge Capital Management LLC, Cootes Drive
LLC, Stephen Hicks, Daniel Pickett, Christy Constabile,
David Sims, and Navigator Management Ltd.

Michael S. Rosenblum, Amy M. Caves, of counsel.

Hanley Conroy Bierstein & Sheridan LLP, New York,
NY, for Kirwin Drouet, Jack Thompkins and Hunter
M.A. Carr.

Thomas I. Sheridan, III, of counsel.

Morrison & Foerster LLP, New York, NY, for Mark
Valentine.

Carl H. Loewenson, Jr., James E. Johnson, Joel C. Haims,
of counsel.

Gibbons, Del Deo, Dolan, Griffinger & Vecchione, PC,
New York, NY, for Thomson Kernaghan & Co, Ltd., and
TK Holdings, Inc.

Debra A. Clifford, of counsel.

OPINION

CARTER, J.

BACKGROUND

**\*1** This case is the result of several actions arising out
of a set of related financing transactions.[1] The court
consolidated these cases and named ITIS Holdings Inc.
("INL") (f/k/a ITIS Inc. and Internet Law Library),
Hunter Carr, Kerwin Drouet, and Jack Tompkins the
plaintiffs. *Internet Law Library, Inc. v. South Ridge Capital
Mgmt., LLC,* 208 F.R.D. 59 (S.D.N.Y.2002) (Carter,
J). Accordingly, Southridge Capital Management LLC,
Stephen Hicks, Daniel Pickett, Christy Constabile, David
Sims, Navigator Management Ltd., The Citco Group
Limited, Citco Trustees (Cayman) Limited and Cootes
Drive, LLC ("Cootes Drive") were named defendants and
Cootes Drive's claims against INL became counterclaims.
*Id.*

[1] On January 12, 2001, INL, its Chief Executive Officer, Hunter M .A. Carr, and several shareholders filed suit against Southridge and a number of its representatives in the Southern District of Texas, among other things, fraud, misrepresentation of material facts, manipulation of INL's stock and breach of contract. *See Internet Law Library, Inc., et al. v. South Ridge Capital Mgmt., LLC et al*, 01 Civ. 660(RLC). Later, some additional shareholders of INL brought suit in the Southern District of Texas alleging much the same facts. *See Brewer, et al. v. South Ridge Capital Mgmt ., LLC, et al.,* 0202 Civ. 0138(RLC). Finally, Cootes Drive LLC, a Southridge affiliate, brought suit in this court against INL and several of its directors asserting claims for breach of contract and fraud. *See Cootes Drive, LLC v. Internet Law Library, Inc.,* 01 Civ. 0877(RLC).

Over the years the court has dealt with various issues, (*see e.g., Internet Law Library Inc. v. South Ridge Capital Mgmt., LLC, 223 F.Supp.2d 474 (S.D.N.Y.2002)* (Carter, J) (hereinafter *"Internet Law I"* )) with which familiarity is assumed. Most importantly, the court dismissed the plaintiffs' claims with prejudice in *Internet Law Library Inc. v. South Ridge Capital Mgmt ., LLC, 2003 WL 21537782 (S.D.N.Y.2003)* (Carter, J.) (hereinafter *Internet Law II* ).

In the instant matter, defendant Cootes Drive moves for partial summary judgment against INL on its third counterclaim for breach of contract for failure to redeem preferred stock pursuant to a stock purchase agreement. Defendant Cootes Drive also seeks partial summary judgment against INL on its fourth counterclaim for breach of contract for failure to honor a promissory note. The plaintiffs cross move to dismiss defendants' counterclaims pursuant to *Rule 37(b)(2)(C), F.R. Civ. P.*, due to alleged abuses of discovery procedures, and move for the court to reconsider its judgment entered July 8, 2005 dismissing plaintiffs' claims with prejudice. Under separate covers, plaintiffs have twice moved to supplement the record of the aforementioned motions and defendants have moved to strike some of plaintiffs' supporting affidavits. We consolidate the former motions with the latter and resolve them all in this opinion. Because of the nature of the issues raised in plaintiffs' motions, we reach them first.

## DISCUSSION

## I PLAINTIFFS' MOTION FOR RECONSIDERATION

Plaintiffs' motion for reconsideration brought pursuant to U.S. Dist. Ct. S.D.N.Y. Local Civil Rule 6.3 is based on the court's possible oversight of two matters: (a) the *res judicata* effect of its June 8, 2003 decision, specifically whether plaintiffs' affirmative defenses are barred, and (b) because *Rule 37(b)(2)(C), Fed. R. Civ. P* ("Rule 37") allegedly does not authorize sanctions. The parties have also made a request for the to court clarify these two issues, especially as they pertain to the order entered on July 8, 2003.

Under Rule 37, if a party "fails to obey an order entered under Rule 26(f) ... the court in which the action is pending may ... (C) ... strike [ ] out pleadings or parts thereof ... or dismiss[ ] the action or proceeding or any part thereof, or render judgment by default against the disobedient party." Plaintiffs' attempt to read the rule as only being applicable to parties who fail to participate in discovery is inapposite to the plain meaning of the statute. Moreover, the court has the inherent authority to dismiss a case when a party disobeys any of its orders. *See Chambers v. Nasco, Inc., 501 U.S. 32, 45 (1991)*. Plaintiffs flagrantly disregarded the discovery instructions of this court. As a result the court, acting well within its explicit and implicit authority, dismissed the plaintiffs' complaint. The court did not, however, dismiss the defendants' counterclaims or the plaintiffs' affirmative defenses to those counterclaims.

**\*2** Cootes Drive argues that because the claims in plaintiffs' dismissed complaint form the basis for their affirmative defenses, plaintiffs' affirmative defenses are now barred by claim preclusion. Under the doctrine of claim preclusion, once a judgment has been made on the merits, the parties are prohibited from bringing a second suit based upon the same claims. *Hough v. Merrill Lynch, Pierce, Fenner & Smith, Inc. 757 F. Supp 283, 291 (S.D.N.Y.1991)* (Conner, J.). Cootes Drive would be correct to assert that plaintiffs are precluded from bringing another complaint based upon the same claims found in their dismissed complaint. [2] However, that issue is not before the court. The court mindfully chose not to dismiss the plaintiffs' affirmative defenses. Thus, these affirmative defenses have not been adjudicated and there is no logic or fairness to treating them as if they have.

Case 9:16-cv-00027-GLS-TWD   Document 85   Filed 08/13/18   Page 70 of 114

Internet Law Library, Inc. v. Southridge Capital..., Not Reported in...

2005 WL 3370542

<sup>2</sup>    A dismissal under Rule 37 is an adjudication on the
merits. *See* Rule 41(b), F.R. Civ P.; *Nasser v. Isthmian
Lines,* 331 F .2d 124 (2d Cir.1964).

We confirm that the court was within its authority
in dismissing plaintiffs' complaint and that plaintiffs'
affirmative defenses still stand. The court did not
overlook these subjects. Accordingly, the motion for
reconsideration is denied.

## II PLAINTIFFS' MOTION TO DISMISS DEFENDANTS' COUNTERCLAIMS

While arguing that the court lacked the authority to
dismiss their claims pursuant to Rule 37, the plaintiffs
have the audacity to request that we now dismiss Cootes
Drive's counterclaims pursuant to the same rule and
for the same alleged conduct. Without delving into
the sophistical reasoning that allows them to entertain
these contradictory propositions, it bears repeating that
plaintiffs flagrantly defied the court's order. The plaintiffs
and not Cootes Drive disrespected the court. If Cootes
Drive had done so, or if they ever do, the court would not
hesitate to impose sanctions. The motion is denied.

## III PLAINTIFFS' MOTIONS TO SUPPLEMENT THE RECORD

On February 12, 2004 and on April 6, 2004, plaintiffs
filed motions to supplement the record. The documents
that are the subject of these motions were produced
in connection with an action pending in Georgia. The
documents themselves are the organizational documents
and various agreements between companies affiliated with
Cootes Drive. There are also letters and memoranda sent
to and from these affiliated companies and the law firm
of Dorsey & Whitney LLP, their transactional counsel.
Plaintiffs assert that these documents demonstrate that the
defendants operated their businesses in a tiered structure
in order to limit liability. Even if true, this assertion
does not make the documents relevant to Cootes Drive's
claims of breach or plaintiffs' motions to dismiss and for
reconsideration. Indeed, many of the documents predate
the note and agreement by several years. Because plaintiffs
have not sufficiently demonstrated the relevance of the
documents to the motions that they seek to supplement,
plaintiffs' two motions to supplement the record are
denied.

## IV MOTIONS TO STRIKE PLAINTIFFS' AFFIDAVITS

 **\*3**  Cootes Drive moves to strike portions of the affidavit
of Hunter M. Carr, dated September 19, 2003 (the
"Carr Affidavit") and the affidavit of Richard L. Tate,
dated September 22, 2003 (the "First Tate Affidavit")
based on evidentiary objections. The court finds that
these affidavits comport with Rule 56(e). Cootes Drive's
motions to strike the Carr Affidavit and the First Tate
Affidavit are denied.

The Citco Group Limited and Citco Trustees (Cayman)
Limited (the "Citco defendants") move to strike the
Affidavit of Richard L. Tate, dated October 20, 2003
(the "Second Tate Affidavit"). The Second Tate Affidavit
is submitted as a response to the Citco Defendants'
motion for summary judgment. However, to the court's
best knowledge or that of the Citco defendants, there
never was such a motion. Submission of a reply to a
nonexistent motion is clearly inappropriate; furthermore,
even if the submission of the affidavit was appropriate, the
contents are not. An attorney's affidavit is typically used
to present documents to the court and should not be used
as counsel's personal vehicle to lobby the court. *Universal
Film Exchanges, Inc. v. Walter Reade, Inc.,* 37 F.R.D. 4, 5
(S.D.N.Y.1965) (Levet, J.). In the Second Tate Affidavit,
Tate, attorney for the plaintiffs, engages in extensive
argumentation and draws numerous conclusions of law.
Tate further swears to several matters of which he could
have no direct personal knowledge of as an attorney that
came upon this matter after the fact. The Second Tate
Affidavit is more akin to a memorandum of law than to an
attorney's affidavit. The motion to strike the Second Tate
Affidavit in its entirety is granted.

## V COOTES DRIVE'S MOTIONS FOR PARTIAL SUMMARY JUDGMENT

In deciding a motion for summary judgment, the court's
role is not to determine the truth of the matter but to
determine whether there is a genuine issue for trial.
*Anderson v. Liberty Lobby, Inc .,* 477 U.S. 242, 249
(1986). A party is entitled to summary judgment when
"the pleadings, depositions, answers to interrogatories
and admissions on file, together with the affidavits, if any,
show that there is no genuine issue as to any material fact
and that the moving party is entitled to judgment as a
matter of law." Rule 56(c), F.R. Civ. P.

Case 9:16-cv-00027-GLS-TWD Document 85 Filed 08/13/18 Page 71 of 114
Internet Law Library, Inc. v. Southridge Capital..., Not Reported in...
2005 WL 3370542

1. Counterclaim Three: The Convertible Preferred Stock Purchase Agreement

After several months of negotiations, on or about May 11, 2000, Cootes Drive [3] and INL entered into the Convertible Preferred Stock Agreement (the "agreement"). Under the agreement, INL agreed to sell Cootes Drive shares of INL's 5% Series A Convertible Preferred Stock, which could be redeemed for INL common stock at Cootes Drive's request. Cootes Drive's motion for summary judgment on their third counterclaim is based on the failure of INL to honor one of these redemption requests.

[3]    Plaintiffs allege that Cootes Drive was inserted into the agreement at the eleventh hour as a substitute for Southridge and is in fact little more than a "straw man" created to insulate Southridge from liability.

To prevail on a claim for breach of contract under New York law, a party must show: 1) the existence of an agreement between the parties; 2) adequate performance of the contract; 3) breach of the contract; and 4) damages resulting from the breach. [4] The parties admit that the agreement exists, Pls. Statement Pursuant to Local Rule 56.1 ("Pls.Statement") at ¶ 1, and that the defendants performed. *Id.* at ¶ 6. INL admits that they did not honor Cootes Drive's redemption request. *Id.* at ¶ 14-15. Finally, defendants are able to show damages based upon the position it would have been had INL performed under the agreement. Defs. Reply Mem. at 3. Cootes Drive has therefore met the requirements of their claim for breach against INL.

[4]    *Internet Law I,* 223 F.Supp.2d at 490 *citing Harsco Corp.,* 91 F.3d at 348; *See also Bridgeway Corp. v. Citibank, N.A.,* 132 F.Supp.2d 297, 305 (S.D.N.Y.2001) (Chin, J.).

**\*4** While INL does not contest that they failed to honor the redemption request, they defend their failure to redeem the stock on the grounds that defendants, among other things, [5] fraudulently induced them into entering the agreement and materially breached the agreement. As is the case here, "[o]ne who relies upon an affirmative defense to defeat an otherwise meritorious motion for summary judgment must adduce evidence which, viewed in the light most favorable to and drawing all reasonable inferences in favor of the non-moving party, would permit judgment for the non-moving party on the basis of that

defense." *Frankel v. ICD Holdings S.A.,* 930 F.Supp. 54, 65 (S.D.N.Y.1996) (Kaplan, J.). The non-moving party must come forward with "specific facts showing that there is a genuine issue for trial." *SHL Imaging, Inc. v. Artisan House, Inc.* 117 F.Supp.2d 301, 304 (S.D.N.Y.2000) (Pauley, J.). Within this framework the court will examine INL's defenses to Cootes Drive's counterclaims.

[5]    Plaintiff INL also raises a defense of "manipulation". This is not a recognized defense to breach of contract.

Plaintiffs contend that they relied upon a number of false statements made by the defendants outside of the agreement. Before deciding the underlying question of the merits of the fraudulent inducement claims, the court must first determine whether plaintiffs will be allowed to offer evidence pertaining to their claim. Under New York law, if a contract contains a merger clause, parol evidence is not admissible to "vary, or permit escape from the terms of an integrated contract." [6] However, a general merger clause will not preclude a party from introducing parol evidence that they were induced into entering a contract by means of fraud, [7] and a party may escape liability by establishing proof of such fraud. [8] The exception to this rule is that if the contract contains a disclaimer of certain representations, the relying party cannot claim that they were defrauded as to those specific representations. [9]

[6]    *Manufacturers Hanover Trust Co. v. Yanakas,* 7 F.3d 310, 315 (2d Cir1993) *citing Fogelson v. Rackfay Construction Co.,* 300 N.Y. 334, 340, 90 N.E.2d 881, 884 (1950)

[7]    *Sabo v. Delman,* 3 N.Y.2d 155, 161-62, 164 N.Y.S.2d 714, 717-19 (1957); *Bridger v. Goldsmith,* 143 N.Y. 424, 428, 38 N.E. 458, 459 (1894) ("fraud [in the inducement] vitiates every transaction")

[8]    See *Danann Realty Corp. v. Harris,* 5 N.Y.2d 317, 320, 157 N.E.2d 597, 598, 184 N.Y.S.2d 599, 601 (1959)(contract provided that "all understandings and agreements heretofore had between the parties hereto are merged in this contract ... neither party [is] relying upon any statement or representation not embodied in the is contract").

[9]    *Citibank v. Plapinger,* 66 N.Y.2d 90, 94, 495 N.Y.S.2d 309, 312 (1985) (provision in multimillion dollar agreement stating that all guarantees are "absolute and unconditional" precluded defense of fraud)

Case 9:16-cv-00027-GLS-TWD Document 85 Filed 08/13/18 Page 72 of 114

Internet Law Library, Inc. v. Southridge Capital..., Not Reported in...

2005 WL 3370542

The agreement between the parties contains both a merger clause [10] and a disclaimer of reliance. [11] Plaintiffs defend against these facts by asserting that the disclaimer is general and not specific. [12] In New York, no particular words are needed to make a disclaimer specific. [13] However, a specific disclaimer must "contain explicit disclaimers of the particular representations that form the basis of the fraud in the inducement ... the touchstone is specificity." [14] The disclaimer in question appears at the end of warranties and representations section of the agreement and reiterates that no warranties or representations shall be made other than those in the immediately preceding section. [15] This is, by nature, a general disclaimer; it lacks the specificity to meet the standard the Second Circuit has applied under New York law. New York law requires more than a "generalized boilerplate exclusion [clause]," [16] a disclaimer must speak directly to the matter at issue in order to preclude a claim of fraud in the inducement. [17] The court therefore finds that plaintiffs are not barred from introducing evidence of fraud in the inducement.

[10]  "The Transaction Documents ... contain the entire understanding of the parties with respect to the subject matter hereof and supersede all prior agreements and understandings, oral or written, with respect to such matters ..." agreement § 4.2.

[11]  "The Company acknowledges and agrees that no Purchaser makes or has made any representations or warranties with respect to the transactions contemplated hereby other than those specifically set forth in this Section 2.2" agreement § 2.2.

[12]  "[A] general merger clause is ineffective to exclude parol evidence to show fraud in inducing the contract ..." *Danann Realty* at 320.

[13]  *Wells Fargo Bank Northwest, N.A. v. Taca Intern. Airlines, S .A,* 247 F.Supp.2d 352, 368 (S.D.N.Y.,2002) (Lynch, J.) *quoting Lucas v. Oxigene, Inc.,* No. 94 Civ. 1691, 1995 WL 520752 at *5 (S.D.N.Y.1995) (Mukasey, J.)

[14]  *Yanakas,* 7 F.3d 310, 316 *citing Grumman Allied Industries, Inc. v. Rohr Industries, Inc.,* 748 F.2d 729 (2d Cir.1984)

[15]  § 2.2 includes representations by the purchasers regarding their organization and authority to enter into the agreement, investment intent, "accredited

investor" status, financial experience, ability to bear risk of the investment, access to information and other securities related matters.

[16]  *Yanakas,* 7 F.3d 310, 317.

[17]  *DiFilippo v. Hidden Ponds Associates,* 146 A.D.2d 737, 738; 537 N.Y.S.2d 222, 224 (N.Y.A.D. 2 Dept.1989) ("[b]ecause the [disclaimer] provision does not specifically disclaim reliance on any oral representation concerning the particular matter as to which plaintiff now claims he was defrauded, it does not foreclose him from offering evidence of the defendants' oral representations to the contrary.")

**\*5**  The court now examines the claims of fraud to determine if there is a genuine dispute as to a material fact. Under New York law, a claim of fraudulent inducement requires proof (1) that the defendants made a representation, (2) as to a material fact, (3) which was false, (4) and known to be false by the defendants, (5) that the representation was made for the purpose of inducing the other party to rely upon it, (6) that the other party rightfully did so rely, (7) in ignorance of its falsity, (8) to his injury. [18] Plaintiffs list nine misrepresentations that it claims the defendants made to them. Pls. Statement at ¶ 59. Although their claim has been plead with specificity, [19] plaintiffs have failed to prove reliance on each of the statements for one or more of the following reasons. Where the defendants' alleged misrepresentations are contradicted or subsumed by material in the agreement, for example, that INL's stock would be acquired for investment purposes and not for distribution or resale, we find that the plaintiffs' claims are unreasonable as a matter of law. [20] The court finds plaintiffs' reliance on other statements to be simply unreasonable. "Reliance means reasonable reliance." *M.H. Segan Ltd. Partnership v. Hasbro, Inc.* 924 F.Supp. 512, 526 (S.D.N.Y.1996) (Cote, J.) (internal quotations and citations omitted). After analysis of the material provided by the parties, the court concludes that alleged representations such as "[t]hey would not manipulate stock in order to depress its price", Pls. Statement at ¶ 59, are so important to the functioning of a publicly traded company that no reasonable businessperson would have relied on them without putting them in writing after first discussing them at length. [21] Other misrepresentations, for example, that other companies funded by defendants experienced increases in their stock prices, Pls. Statement at ¶ 59, would have been easily verifiable. [22] The remaining statements

Case 9:16-cv-00027-GLS-TWD Document 85 Filed 08/13/18 Page 73 of 114

Internet Law Library, Inc. v. Southridge Capital..., Not Reported in...

2005 WL 3370542

are uncontroverted or without consequence. Holding, as we do, that INL cannot satisfy the reliance element of their affirmative defense of fraudulent inducement we need not look into the remaining elements of the claim. INL's affirmative defense of fraudulent inducement as to Cootes Drive is hereby struck insofar as it pertains to the third counterclaim.

18    *Computerized Radiological Servs. v. Syntex Corp.*, 786 F.2d 72, 76 (2d Cir.1986) *quoting Brown v. Lockwood*, 76 A.D.2d 721, 432 N.Y.S.2d 186, 193 (1980).

19    In the court's previous decision, the fraud claims were examined under § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5, passed pursuant to § 10(b). The court held that because the plaintiff satisfied the elements for pleading a claim under the statutes, they had satisfied the nearly identical common law fraud requirements as well. *Internet Law I*, 223 F.Supp.2d 489-90.

20    *See Brown v. E.F. Hutton Group, Inc.*, 991 F.2d 1020, 1031 (2d Cir.1993) (district court correct in granting summary judgment after holding reliance unreasonable as a matter of law where alleged misrepresentations were contradicted by offering materials); *Emergent Capital Inv. Management, LLC v. Stonepath Group, Inc.*, 343 F.3d 189, 196 (2d Cir.2003) (plaintiffs' failure to insist that a representation be included in a stock purchase agreement "precludes as a matter of law a finding of reasonable reliance"); *Feinman v. Schulman Berlin & Davis*, 677 F.Supp. 168, 170-71 (S.D.N.Y.1988) (Kram, J.) (dismissal appropriate where plaintiffs relied on statements "directly contradicted by the clear language of the offering memorandum"); *M.H. Segan Ltd. Partnership v. Hasbro, Inc.*, 924 F.Supp. 512, 527 (S.D.N.Y.1996) (Cote, J.) (party failed to establish reasonable reliance as a matter of law where misrepresentations were "directly contradicted" by written waiver agreement).

21    "Sophisticated business entities, when put on notice of the existence of material facts which have not been documented, assume the business risk that the facts may not be as represented because a party will not be heard to complain that he has been defrauded when it is his own evident lack of due care which is responsible for his predicament." 247 F.Supp.2d 352, 369 (internal quotations omitted) *quoting Lazard Freres & Co. v. Protective Life Ins.*, 108 F.3d 1531, 1543 (2d Cir.1997).

22    "Where sophisticated businessmen engaged in major transactions enjoy access to critical information but fail to take advantage of that access, New York courts are particularly disinclined to entertain claims of justifiable reliance." *Grumman Allied Industries, Inc. v. Rohr Industries, Inc.* 748 F.2d 729, 737 (2d Cir.1984).

The court held previously that plaintiffs have successfully pleaded claims to meet the elements of an action for breach of contract. *Internet Law I*, 223 F. Supp at 490. The court now searches the record to see if there is sufficient evidence to prove these allegations. What is in dispute is whether Cootes Drive's breach, namely, selling shares short in violation of the agreement, was material. 23 If Cootes Drive's breach was material, plaintiffs argue, plaintiffs were excused from performance. As discussed above, Cootes Drive has proven its claim and the burden is upon plaintiffs to produce evidence that would "permit judgment for the [plaintiffs] on the basis of [their] defense." 24

23    "Under New York law, for a breach of a contract to be material, it must go to the root of the agreement between the parties. A party's obligation to perform under a contract is only excused where the other party's breach of the contract is so substantial that it defeats the object of the parties in making the contract." *Frank Felix Associates, Ltd. v. Austin Drugs, Inc.*, 111 F.3d 284, 289 (2d Cir.1997) (internal quotations and citations omitted); *Wechsler v. Hunt Health Systems, Ltd.*, 186 F.Supp.2d 402, 413 (S.D.N.Y.2002) ("Under New York law [materiality of a breach] is a question of law for the Court to decide.")

24    *Frankel v. ICD Holdings S.A.*, 930 F.Supp. 54 (S.D.N.Y.1996) (Kaplan, J.) (holding that custom crafted disclaimer language in notes negotiated between sophisticated parties waived a defense of fraud in the inducement)

**\*6** Plaintiffs make grand allegations but actually prove very little. Construing the facts in the light most favorable to them, but without taking any untoward leaps of faith, plaintiffs have shown that defendant Cootes Drive sold 64,346 shares "short" 25 prior to receiving a waiver 26 from INL that enabled them to sell shares in this manner. During the 93 trading days before the waiver, defendant Cootes Drive maintained short positions on only 7 days. Pls. Statement at ¶ 24. The shorted sales make up a very

Case 9:16-cv-00027-GLS-TWD Document 85 Filed 08/13/18 Page 74 of 114

Internet Law Library, Inc. v. Southridge Capital..., Not Reported in...

2005 WL 3370542

small minority of the shares traded by Cootes Drive and a minute percentage of the overall total shares traded during the period. The court finds that, in light of the peculiarities of this case, this small amount of trading is merely a technical violation of the agreement; it does not go to the root of the agreement between the parties and is therefore not is enough to constitute a material breach and excuse INL from performance. [27]

25    § 3.13 of the agreement defines short sales as a sale where there was not an equivalent offsetting long position including shares due under a notice of conversion.

26    Plaintiffs do not contest the authenticity of the waiver but allege the waiver was given as a result of the underlying fraudulent inducement. Holding, as we do, that plaintiffs' claims of fraudulent inducement are without merit, we find the parties validly entered into the waiver.

27    "The right of a party to enforce a contract will not be forfeited or lost by reason of technical, inadvertent, or unimportant omissions or defects." *Cablevision Systems Corp. v. Town of East Hampton,* 862 F.Supp. 875, 885 (E.D.N.Y.1994), *aff'd* 57 F.3d 1062 (2d Cir.1995) (unpublished table decision), *quoting Miller v. Benjamin,* 142 N.Y. 613, 617, 37 N.E. 631 (1894).

The one piece of evidence that plaintiffs produced which tends to mitigate in their favor are the trading records showing that Thomas Kernaghan, an agent and broker for Cootes Drive, was shorting INL stock. However, these trades begin well before the agreement and plaintiffs do not show that the trades were done at the behest of Cootes Drive. Plaintiffs have requested additional discovery to flesh out these particular weaknesses in their defense of breach. Plaintiffs have already been given ample time for discovery. In light of this and plaintiffs' conduct during such discovery, no additional discovery will be granted. [28]

28    *See Internet Law II,* 2003 WL 21537782 (S.D.N.Y.2003) (Carter, J.)

INL's defense of breach is hereby struck as it pertains to the third counterclaim. Plaintiffs have also included in their pleadings an everything-but-the-kitchen-sink list of affirmative defenses that they do not even attempt to support. [29] Like their affirmative defenses of fraud and breach, we find these defenses to be without merit as they pertain to Cootes Drive's Third Counterclaim. We hereby

award summary judgment in favor of Cootes Drive on their Third Counterclaim. INL is required to pay damages and interest to Cootes Drive for breach of the agreement.

29    Reply to Counterclaims at 17-19.

2. Counterclaim Four: The Promissory Note
Cootes Drive's fourth counterclaim for breach of contract is for failure to repay a promissory note. In New York, proof of a promissory note, demand and nonpayment establishes a prima facie case for recovery. [30] A prima facie case entitles the promisee to judgment as a matter of law. [31] In the instant matter, plaintiffs concede that "Cootes Drive agreed to loan INL $500,000 ... [as] memorialized by a promissory note dated December 5, 2000" (the "note"). Pls. Statement at ¶ 29-30. Plaintiffs further concede that Cootes Drive provided the funds; demanded payment on March 1, 2001; and that "[INL] has not paid the Note" *Id.* at 32-33. Based upon plaintiffs' admissions alone, Cootes Drive has squarely met the burden of proving a prima facie case.

30    *See First Federal Sav. Bank v. Tazzia,* 696 F.Supp. 904, 906 (S.D.N.Y.1988) (Sweet, J.); *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Fremont,* 760 F.Supp. 334, 336 (S.D.N.Y.1991) (Stanton, J.); *Citicorp Intern. Trading Co., Inc. v. Western Oil & Refining Co., Inc.,* 790 F.Supp 428 (S.D.N.Y.1992) (Sweet, J .).

31    *Gross v. Fruchter,* 230 A.D.2d 710, 711, 646 N.Y.S.2d 53, 54 (N.Y.A.D. 2 Dept.1996) (promisee established entitlement to judgment as a matter of law by producing note and demonstrating that maker failed to redeem when requested).

**\*7** Once the promisee has demonstrated a prima facie case for recovery on a note, in order to avoid judgment, it is up to the maker to produce evidence showing a triable issue fact establishing a bona fide defense. *Grasso v. John I. Shutts Agency, Inc.,* 517 N.Y.S.2d 113, 132 A.D.2d 768 (N.Y.App.Div.1987). To this end, mere conclusory allegations will not suffice; a genuine and substantial issue rebutting holder's entitlement to payment must be shown. *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Fremont,* 760 F.Supp. 334, 336 (S.D.N.Y.1991) (Stanton, J.). Without being explicit, plaintiffs seem to posit the same defenses to the payment of the note as the agreement, specifically that the note is a result of underlying fraud and that the defendants breached the

Case 9:16-cv-00027-GLS-TWD    Document 85    Filed 08/13/18    Page 75 of 114
Internet Law Library, Inc. v. Southridge Capital..., Not Reported in...

2005 WL 3370542

note in some manner. Although, plaintiffs' fraud defense is invalid for the reasons described above, it is worth noting that it would not be applicable to the note because the plaintiff specifically waived his right to protest payment of the note. Note § 6 ("[a]ll payments of principal and interest shall be made without setoff, deduction or counterclaim.") Under New York law, such a waiver among sophisticated parties is effective to overcome virtually any defense to enforcement. [32]

[32]    *Citicorp Intern. Trading Co., Inc.,* 790 F.Supp at 434; *Thornock v. Kinderhill Corp.,* 749 F.Supp. 513 (S.D.N.Y.1990) (Sweet, J.) (granting summary judgment in favor of promisee despite maker's defense of fraudulent inducement because such defense was not based upon misrepresentations concerning terms or conditions of loan itself); *Bank of Suffolk County v. Kite,* 49 N.Y.2d 827, 427 N.Y.S.2d 782 (1980) (Bank entitled to judgment on note despite alleged oral understanding that maker would not be liable where the unexpressed condition was inconsistent with the expressed terms of the note).

Plaintiffs offer no theories as to how Cootes Drive has breached the conditions of the note. Plaintiffs merely allege that after entering the agreement, their position with creditors had become so poor that they had no one else to turn to for money. Even assuming this is an attempt to contrive a non-frivolous economic duress defense, the court finds no merit in it. Plaintiffs were not "forced to agree to [the note] by means of a wrongful threat

precluding the exercise of his free will." [33] INL's defenses to enforcement of the note fail. Summary judgment is awarded to Cootes Drive on their fourth counterclaim. INL must repay the principal and accrued interest on the note.

[33]    *Signet Corp. v. Interbank Financial Services, Inc.,* 755 F.Supp. 103, 105 (S.D.N.Y.1991) (Eldelstein, J.) *quoting* *Austin Instrument, Inc. v. Loral Corp.,* 29 N.Y.2d 124, 130, 324 N.Y.S.2d 22, 25 (1971).

CONCLUSION

Plaintiffs' request for the court to reconsider the judgment entered July 8, 2005 is DENIED. Plaintiffs' motion to dismiss Cootes Drive's counterclaims is DENIED. Both of plaintiffs' motions to supplement the record are DENIED. Cootes Drive's motions to strike the Carr Affidavit and First Tate Affidavit are DENIED. The Citco defendants' motion to strike the Second Tate Affidavit is GRANTED. Partial summary judgment in favor of Cootes Drive on its third and fourth counterclaims is GRANTED.

IT IS SO ORDERED

All Citations

Not Reported in F.Supp.2d, 2005 WL 3370542

End of Document    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

Freeman v. Lundrigan, Not Reported in F.Supp. (1996)

1996 WL 481534

1996 WL 481534
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Millicient FREEMAN, Plaintiff,

v.

Kevin LUNDRIGAN, C.O., Defendant.

No. 96–CV–1190 (RSP/RWS).
|
Aug. 22, 1996.

**Attorneys and Law Firms**

Millicient Freeman, Oriskany, NY, Pro se.

McLane and Smith, L.L.P., Utica, NY (Steven A. Smith, of counsel), for Defendant.

ORDER

POOLER, District Judge.

**\*1** By Order dated February 5, 1996 ("Order"), I approved the Order and Report–Recommendation of Magistrate Judge Ralph W. Smith, Jr., dated October 5, 1995, and dismissed this action as against Daniel Middaugh, Michael Durant, Todd Egger, Robert Stanton and Daryl Bourant. *See* Dkt. No. 11.

A copy of the Order was served on Freeman at her last known address by regular mail on February 6, 1996. On February 12, 1996, the Order was returned to the Court marked "No Longer at This Facility—Please Return to Sender." *See* Dkt. No. 12.

On June 19, 1996, Steven A. Smith, Esq., attorney for the defendant, filed an affidavit with the Court stating that he had attempted to serve a first set of interrogatories on Freeman at the address listed on the summons, and that it was returned to him by the Post Office marked "RTS" or return to sender. *See* Dkt. No. 14.

Rule 41(b) of the Federal Rules of Civil Procedure provides that a court may, in its discretion, dismiss an action based upon the failure of a plaintiff to prosecute an action or comply with any order of the court. *Link v. Wabash Railroad County Independent School District,*

370 U.S. 626 (1962). This power to dismiss an action may be exercised when necessary to achieve orderly and expeditious disposition of cases. *See Rodriguez v. Walsh,* No. 92–Civ–3398, 1994 WL 9688, \*1 (S.D.N.Y. Jan. 14, 1994) (citations omitted).

Additionally, this Court specifically cautioned Freeman that her failure "to promptly notify the Clerk's Office of any change in her address ... [would] result in the dismissal of the instant action." *See* Dkt. No. 3 at 7.

Moreover, a plaintiff has the duty to inform the Court of any address changes. As I have stated:

> It is neither feasible nor legally required that the clerks of the district courts undertake independently to maintain current addresses on all parties to pending actions. It is incumbent upon litigants to inform the clerk of address changes, for it is manifest that communications between the clerk and the parties or their counsel will be conducted principally by mail. In addition to keeping the clerk informed of any change of address, parties are obliged to make timely status inquiries. Address changes normally would be reflected by those inquiries if made in writing.

*Dansby v. Albany Cty Corr. Facility,* No. 95–CV–1525, 1996 WL 172699, \*1 (N.D.N.Y. Apr. 10, 1996) (Pooler, J.) (quoting *Perkins v. King,* No. 84–3310, slip op. at 4 (5th Cir. May 19, 1985) (other citations omitted)); *see generally* Rule 41.2(b) of the Local Rules of Practice for the Northern District of New York.

This matter cannot proceed without notification to the Court by Freeman of her current address. Therefore, it is hereby:

ORDERED, that this action is dismissed, *See* Rule 41.2(b) of the Local Rules of Practice for the Northern District of New York, and it is further;

ORDERED, that the Clerk serve a copy of this Order on Freeman by regular mail at her last known address and on Steven A. Smith, Esq., attorney for the defendant.

**Freeman v. Lundrigan, Not Reported in F.Supp. (1996)**
1996 WL 481534

**\*2** IT IS SO ORDERED.

**All Citations**

Not Reported in F.Supp., 1996 WL 481534

---

**End of Document**                                   © 2018 Thomson Reuters. No claim to original U.S. Government Works.

2005 WL 2205816
Only the Westlaw citation is currently available.
United States District Court,
W.D. New York.

Wattie FOLK, Plaintiff,

v.

P. RADEMACHER, et al., Defendants.

No. 00-CV-199S.
|
Sept. 9, 2005.

**Attorneys and Law Firms**

Wattie Folk, Great Meadow Corr. Facility, Comstock, NY, pro se.

William Lonergan, New York State Attorney General's Office, Stephen F. Gawlik, Assistant Attorney General, Buffalo, NY, for Defendants.

DECISION AND ORDER

SKRETNY, J.

I. INTRODUCTION

**\*1** Plaintiff commenced this action under 42 U.S.C. § 1983 on March 3, 2000, by filing a Complaint in the United States District Court for the Western District of New York. Presently before this Court is a Motion to Dismiss filed by the remaining defendants in this case-P. Rademacher, Sgt. Stachewiez, Lt. Hendel, W.Kelley, Hartman, Fleming, Booker, Piasa and Sgt. Baker ("Defendants")-on September 2, 2004. Defendants bring their motion pursuant to Rules 41(b) and 37(b) of the Federal Rules of Civil Procedure. This is the third motion filed by Defendants on these grounds. For the reasons stated below, Defendants' motion is granted and this case is dismissed with prejudice.

II. BACKGROUND

This motion arises from a discovery ruling issued by the Honorable Hugh B. Scott, United States Magistrate Judge. On October 15, 2002, Defendants filed a Motion

to Compel Plaintiff to respond to their First Set of Interrogatories because Plaintiff's initial response had been inadequate. On May 27, 2003, Judge Scott granted Defendants' Motion to Compel and directed Plaintiff to file appropriate interrogatory responses within twenty days. Despite being granted an extension of time in which to respond, Plaintiff failed to file his interrogatory response. As a result, on August 19, 2003, Defendants filed a Motion to Dismiss pursuant to Rules 41(b) and 37(b) of the Federal Rules of Civil Procedure.

On November 5, 2003, this Court denied Defendants' Motion to Dismiss after Plaintiff satisfactorily explained the reason he failed to comply with Judge Scott's Order. This Court granted Plaintiff an additional thirty days within which to file his response to Defendants' First Set of Interrogatories. Plaintiff filed and served his response to Defendants' First Set of Interrogatories on November 21, 2003. This response, however, was simply a photocopy of the response Plaintiff initially filed on August 29, 2002, the one Judge Scott found to be inadequate.

Consequently, Defendants filed a second Motion to Dismiss on December 19, 2003. Plaintiff filed a response in opposition. Therein, Plaintiff did not deny that he simply re-filed his initial interrogatory response. Rather, he argued that Judge Scott did not have dispositive jurisdiction, and therefore lacked the proper authority to find his initial interrogatory response inadequate. Further, Plaintiff argued that he did not fail to respond as Defendants alleged because he did indeed file a response.

On May 24, 2004, this Court denied Defendants' Second Motion to Dismiss. In doing so, however, this Court rejected Plaintiff's arguments and excuses for not complying with Judge Scott's Order. Nonetheless, because Plaintiff is proceeding *pro se,* this Court determined that granting the relief Defendants requested would be too drastic a measure at that stage of the litigation. *See Bobal v. Rensselaer Polytechnic Inst.,* 916 F.2d 759, 764 (2d Cir.1990) ( "dismissal with prejudice [under Rule 37] is a harsh remedy to be used only in extreme situations ..."). This Court warned Plaintiff that his lawsuit may be dismissed with prejudice if he did not file and serve appropriate responses to Defendants' First Set of Interrogatories within thirty days. *Cf. id.* at 764 (discussing that a court may dismiss an action brought by a *pro se* plaintiff if such plaintiff has been advised by

Case 9:16-cv-00027-GLS-TWD   Document 85   Filed 08/13/18   Page 79 of 114
**Folk v. Rademacher, Not Reported in F.Supp.2d (2005)**
2005 WL 2205816

the court that further non-compliance with a court order
could result in dismissal of the case with prejudice).

**\*2** On June 17, 2004, Plaintiff filed a Motion to Extend
the thirty-day response deadline. By Order filed July 7,
2004, this Court directed Defendants to provide Plaintiff
with another copy of their First Set of Interrogatories,
extended Plaintiff's deadline to respond to August 30,
2004, and warned Plaintiff that this was his final extension
of time and that his failure to respond could result in
his case being dismissed with prejudice. On August 13,
2004, Plaintiff filed his response to Defendants' First Set
of Interrogatories.

On September 2, 2004, Defendants filed their instant
Third Motion to Dismiss pursuant to Rules 41(b) and
37(b) of the Federal Rules of Civil Procedure. By Order
filed October 7, 2004, this Court directed Plaintiff to file
a response to Defendants' motion on or before October
29, 2004. On October 29, 2004, Plaintiff filed a Motion for
Extension of Time to respond. By Order filed November 4,
2004, this Court extended Plaintiff's response deadline to
November 29, 2004, and warned Plaintiff that his failure
to file a response could lead to Defendants' motion being
granted as uncontested. To date, Plaintiff has not filed a
response to Defendants' motion.

## III. DISCUSSION

A. Dismissal under Rule 41(b) For Failure to Prosecute
This case first warrants dismissal based on Plaintiff's
failure to prosecute, pursuant to Rule 41(b) of the Federal
Rules of Civil Procedure, which provides that:

> [f]or failure of the plaintiff to prosecute
> or to comply with these rules or any
> order of court, a defendant may move
> for dismissal of an action or of any
> claim against the defendant. Unless
> the court in its order for dismissal
> otherwise specifies, a dismissal under
> this subdivision and any dismissal not
> provided for in this rule, other than a
> dismissal for lack of jurisdiction, for
> improper venue, or for failure to join
> a party under Rule 19, operates as an
> adjudication upon the merits.

FED. R. CIV. P. 41(b).

Rule 41(b) does not define what constitutes failure to
prosecute. However, the Second Circuit has stated that
failure to prosecute "can evidence itself either in an action
lying dormant with no significant activity to move it or in
a pattern of dilatory tactics." *Lyell Theatre Corp. v. Loews
Corp.,* 682 F.2d 37, 42 (2d Cir.1982). Dismissal pursuant
to Rule 41(b) falls within the court's discretion. *See id.
at 42-43* ("the scope of review of an order of dismissal is
confined solely to whether the trial court has exercised its
inherent power to manage its affairs within the permissible
range of its discretion"). It is, however, "a harsh remedy
to be utilized only in extreme situations." *Harding v. Fed.
Reserve Bank,* 707 F.2d 46, 50 (2d Cir.1983) (quoting
*Theilmann v. Rutland Hosp., Inc.,* 455 F.2d 853, 855 (2d
Cir.1972) (per curiam); *see also Chira v. Lockheed Aircraft
Corp.,* 634 F.2d 664, 665 (2d Cir.1980) (discussing
the sanction of dismissal for failure to prosecute as "pungent,
rarely used, and conclusive"). This is particularly true
in cases involving *pro se* litigants, where dismissal for
failure to prosecute should only be granted "when the
circumstances are sufficiently extreme." *Lucas v. Miles,*
84 F.3d 532, 535 (2d Cir.1996) (citing *Nita v. Connecticut
Dep't of Envtl. Prot.,* 16 F.3d 482, 487 (2d Cir.1994)).

**\*3** The following factors, none of which is dispositive,
must be considered in determining whether dismissal for
failure to prosecute is warranted: (1) the duration of
the plaintiff's failures, (2) whether the plaintiff received
notice that further delays would result in dismissal, (3)
whether the defendant is likely to be prejudiced by further
delay, (4) whether an appropriate balance has been struck
between alleviating the court's calendar congestion and
protecting the litigants' due process rights, and (5) whether
lesser sanctions would be appropriate. *See United States
ex rel. Drake v. Norden Sys., Inc.,* 375 F.3d 248, 255
(2d Cir.2004); *Nita,* 16 F.3d at 485; *Feurtado v. City of
New York,* 225 F.R.D. 474, 477 (S.D.N.Y.2004) (quoting
*Jackson v. City of New York,* 22 F.3d 71, 74 (2d Cir.1994)).
In the present case, these factors weigh in favor of
dismissal.

1. Duration of Failures
The relevant inquiry on this factor is twofold: (1) whether
the plaintiff is at fault for failing to prosecute, and (2)
whether the plaintiff's failures were of significant duration.
*See Norden Sys.,* 375 F.3d at 255.

WESTLAW   © 2018 Thomson Reuters. No claim to original U.S. Government Works.

In this case, Plaintiff has failed in two ways. First, as noted above, Plaintiff has failed to respond to Defendants' Third Motion to Dismiss, despite twice being directed by this Court to do so. Second, and more significant, Plaintiff has failed to adequately comply with Judge Scott's discovery Order of May 27, 2003. Plaintiff has been afforded numerous opportunities to file an appropriate response to Defendants' First Set of Interrogatories. This Court alone has twice extended Plaintiff the benefit of the doubt by denying two Motions to Dismiss for Plaintiff's failure to engage in discovery. While Plaintiff did, in fact, file a response to Defendants' First Set of Interrogatories on August 13, 2004, his response is wholly inadequate. Plaintiff's response contains multiple objections to Defendants' basic interrogatory requests and does not provide anything by way of meaningful discovery. In fact, no useful information whatsoever is contained in Plaintiff's response. Clearly, Plaintiff alone is responsible for repeatedly filing inadequate responses to Defendants' discovery request. As a result, Defendants still have not received any meaningful response to their interrogatory requests.

With respect to the second inquiry, which concerns the duration of Plaintiff's failures, it has been almost one year that Plaintiff has failed to file a response to Defendants' Third Motion to Dismiss. The delay caused by Plaintiff's failure to response to Defendants' interrogatory request is even more significant. Defendants filed and served their First Set of Interrogatories on August 17, 2001. It has thus been more than *four years* and Plaintiff still has not filed an adequate response. This is a failure of significant duration. *Cf. Chira,* 634 F.2d at 666-67 (delay of six months sufficient to warrant dismissal for failure to prosecute); *Antonios A. Alevizopoulos & Assoc., Inc. v. Comcast Int'l Holdings, Inc.,* No. 99 Civ. 9311, 2000 WL 1677984, at *2 (S.D.N.Y. Nov.8, 2000) (delay of four months warranted dismissal). Thus, this Court finds that this factor weighs in favor of dismissal. In this Court's view, all delay in this case is attributable to Plaintiff and it is of significant duration.

### 2. Notice of Dismissal

**\*4** The Second Circuit requires that the plaintiff receive adequate notice that the case could be dismissed due to inaction. *See Martens v. Thomann,* 273 F.3d 159, 180-81 (2d Cir.2001). In the present case, Plaintiff had adequate notice. First, both the initial Scheduling Order

on Defendants' Third Motion to Dismiss and the Order granting Plaintiff's request for an extension of time warned Plaintiff that his failure to file a response as directed could lead to Defendants' motion being granted as uncontested. Second, this Court's Decision and Order denying Defendants' First Motion to Dismiss explicitly stated that Defendants were free to seek dismissal of Plaintiff's Complaint if he failed to respond to the First Set of Interrogatories as directed. Moreover, this Court's Decision and Order denying Defendants' Second Motion to Dismiss warned Plaintiff that his failure to file appropriate responses to Defendants' First Set of Interrogatories could result in this action being dismissed with prejudice. Because Plaintiff was repeatedly put on notice that his case could be dismissed due to his continued inaction, this factor strongly weighs in favor of dismissal. *See Lyell Theatre,* 682 F.2d at 42-43 (Rule 41(b) dismissal upheld where plaintiff was warned by opposing counsel and the court that dismissal for failure to prosecute was possible).

### 3. Prejudice to Defendants

The third factor requires an inquiry into whether the defendant has been prejudiced by the plaintiff's inaction. "Prejudice to defendants resulting from unreasonable delay may be presumed, but in cases where delay is more moderate or excusable, the need to show actual prejudice is proportionately greater." *Lyell Theatre,* 682 F.2d at 43 (citations omitted). In *Lyell Theatre,* the court presumed prejudice where the plaintiff on numerous occasions failed to file documents as directed by the court. *Id.* at 39-40, 43. Similar to the present case, the plaintiff in *Lyell Theatre* continued to ignore the court's orders even after he had been warned that he was risking dismissal. *Id.* at 39. Under *Lyell Theatre,* the prejudice to Defendants in this case may be presumed. Thus, this factor weighs in favor of dismissal.

### 4. Balance between Calendar Congestion and Due Process Rights

The fourth factor requires the court to consider the balance between calendar congestion and the plaintiff's right to present his or her case. *See Norden Sys.,* 375 F.3d at 257. In this regard, " 'a court must not let its zeal for a tidy calendar overcome its duty to justice.' " *Feurtado,* 225 F.R.D. at 480 (quoting *Davis v. United Fruit Co.,* 402 F.2d 328, 331 (2d Cir.1968)). Plaintiff's failure to comply with Judge Scott's discovery order has resulted in this Court

having to prepare and file numerous scheduling orders, as well as decide three separate motions to dismiss. While this has been a needless expenditure of judicial resources, this Court cannot conclude that the overall effect on docket congestion has been significant.

**\*5** This Court notes, however, that Plaintiff has been afforded Due Process rights in that he has been provided numerous opportunities to comply with the Orders of this Court. Thus, Plaintiff's own failure to litigate this matter is not a denial of Due Process. *See Dodson v. Runyon, 957 F.Supp. 465, 470 (S.D.N.Y.1997)* ("any claim that plaintiff's due process rights were violated thus cannot prevail because the delay and resultant dismissal of plaintiff's case are of his own making"); *cf. Feurtado, 225 F.R.D. at 480* (repeated failure to comply with court orders diminishes a plaintiff's right to present his claims). Accordingly, this factor also weighs in favor of dismissal.

### 5. Consideration of Lesser Sanctions

Finally, the Second Circuit requires district courts to consider whether lesser sanctions would sufficiently remedy any prejudice resulting from the plaintiff's inaction. *See Norden Sys., 375 F.3d at 257*. Upon reviewing the entire record in this case, it is the opinion of this Court that Plaintiff has no intention of complying with this Court's Orders or properly litigating this case. Plaintiff has repeatedly ignored court orders by failing to file a response to Defendants' Third Motion to Dismiss and to Defendants' First Set of Interrogatories. Given the procedural history of this case, this Court finds that any sanction short of dismissal would be ineffective. *See Smith v. Human Res. Admin. of New York City, 2000 WL 307367, at \*3 (S.D.N.Y. Mar.24, 2000)* (finding lesser sanctions inappropriate where past court orders did not motivate the plaintiff to move the case forward); *Alevizopoulos, 2000 WL 1677984, at 4* (finding lesser sanctions inappropriate based on repeated failures to comply with court orders). Thus, this final factor also weighs in favor of dismissal.

Accordingly, this Court finds that dismissal of this case is warranted under *Rule 41(b)* for Plaintiff's failure to prosecute.

### B. Dismissal under *Rule 37(b)* For Failure to Comply with Discovery Orders

"A district court may impose sanctions when 'a party ... fails to obey an order to provide or permit discovery.' " *Burns v. Imagine Films Entm't, Inc., 164 F.R.D. 594, 598 (W.D.N.Y.1996)* (quoting *FED. R. CIV. P. 37(b)*). *Rule 37 of the Federal Rules of Civil Procedure*, which concerns the discovery obligations of civil litigants, vests district courts with "broad power" and discretion to impose sanctions, including dismissal, on parties who fail to adhere to discovery orders. *See Friends of Animals, Inc. v. United States Surgical Corp., 131 F.3d 332, 334 (2d Cir.1997)* (per curiam); *see also Jones v. J.C. Penney's Dep't Stores, Inc., 228 F.R.D. 190, 195 (W.D.N.Y.2005)* (identifying dismissal of the action as an available sanction under *Rule 37*); *JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs., Inc., No. 03 Civ. 5562, 2005 WL 1958361, at \*9 (S.D.N.Y. Aug. 16, 2005)*.

**\*6** While *Rule 37* dismissal is a drastic remedy to be reserved only for extreme circumstances, it "is warranted ... where a party fails to comply with the court's discovery orders willfully, in bad faith, or through fault." *John B. Hull, Inc. v. Waterbury Petroleum Prods., Inc., 845 F.2d 1172, 1176 (2d Cir.1988)* (and cases cited therein); *see also Societe Int'l v. Rogers, 357 U.S. 197, 212, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958)* (sanctions under *Rule 37* justified where responding party has control over information requested and fails or refuses production without showing of inability to comply with court's order). Moreover, "dismissal with prejudice may be imposed even against a plaintiff who is proceeding pro se, so long as a warning has been given that noncompliance can result in dismissal." *Valentine v. Museum of Modern Art, 29 F.3d 47, 50 (2d Cir.1994)* (per curiam).

For all of the reasons discussed above, this Court finds that dismissal of this case is also proper under *Rule 37(b)* for Plaintiff's failure to comply with discovery orders.

### IV. CONCLUSION

Mindful of the fact that *pro se* cases should not easily be dismissed for procedural deficiencies, this Court concludes that Plaintiff's failures in this case go beyond procedural deficiencies, and constitute actual neglect. Plaintiff has failed to diligently prosecute this action in any manner, and has failed to comply with orders of this Court. As such, because each of the factors relevant to the

2005 WL 2205816

Rule 41(b) and Rule 37(b) analysis favor dismissal, this Court will dismiss this case with prejudice.

## V. ORDERS

IT HEREBY IS ORDERED, that Defendants' Third Motion to Dismiss (Docket No. 145) is GRANTED.

FURTHER, that this case is dismissed with prejudice pursuant to Rules 41(b) and 37(b) of the Federal Rules of Civil Procedure.

FURTHER, that the Clerk of the Court is directed to close this case.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2005 WL 2205816

---

**End of Document**

© 2018 Thomson Reuters. No claim to original U.S. Government Works.

2008 WL 1758644, 70 Fed.R.Serv.3d 397

KeyCite Yellow Flag - Negative Treatment
Distinguished by Keitt v. Doe, W.D.N.Y., December 5, 2013

2008 WL 1758644
United States District Court,
S.D. New York.

John NOLAN, Plaintiff,
v.
PRIMAGENCY, INC. et al., Defendants.

No. 07 Civ. 134(RJS).
|
April 16, 2008.

*MEMORANDUM AND ORDER*

RICHARD J. SULLIVAN, District Judge.

**\*1** On January 31, 2008, this Court issued an Order to Show Cause (the "OSC") *sua sponte,* directing counsel for plaintiff John Nolan, Mr. Louis A. Piccone, Esq., and counsel for defendants Primagency, Inc., Steven Lebetkin, and Conrad J. Isoldi ("Defendants"), Mr. Neil R. Flaum, Esq., to show cause why this case should not be dismissed and/or why sanctions and a finding of civil contempt on Mr. Piccone and/or Mr. Flaum should not issue given the failure of plaintiff to diligently prosecute this case, and the failure of the parties to follow Court orders. After counsel for plaintiff failed to appear on the return date of the OSC, the Court issued an order on March 3, 2008 imposing sanctions on the parties, but declining to dismiss the case, provided that the parties complied with the directives contained in that order. *See Nolan v. Primagency, Inc.,* No. 07 Civ. 134(RJS), 2008 WL 650387 (S .D.N.Y. Mar. 3, 2008) ("*Nolan I*"). Plaintiff failed to comply with that order in each and every respect. Accordingly, pursuant to Federal Rule of Civil Procedure 41(b), this action is dismissed with prejudice.

## I. BACKGROUND

The Court presumes the parties' familiarity with the facts relevant to this Order, which are recounted in detail in the OSC, as well as prior orders and transcripts in this matter, including *Nolan I.* However, certain facts post-date those orders and are recounted here.

The Court in *Nolan I* imposed civil contempt sanctions on Mr. Piccone and Mr. Flaum, in the amounts of $750.00 and $200.00, respectively. *See Nolan I* at \*1-4. *Nolan I* also included the following directives:

> Additionally, Mr. Piccone has until March 17, 2008, to comply with the Court's November 1, 2008 and January 3, 2008 orders. This means that by March 17, 2008, Mr. Piccone must (1) properly file the Amended Complaint via the Court's electronic case system ("ECF"); (2) submit a courtesy copy of the Amended Complaint to chambers in accordance with the Individual Practices of the undersigned; (3) confer with Defendants' counsel, Mr. Flaum, regarding a joint proposed Case Management Plan; (4) submit a proposed Plan to the Court by hand delivery, email, or regular mail, provided that it reaches chambers by March 17, 2008; and (5) submit a joint status letter, along with Mr. Flaum, outlining what, if anything, has transpired in this case since the November 1, 2007 conference. Mr. Piccone is also directed to forward a copy of this order to his client, plaintiff John Nolan and file proof of service electronically with the Court .... ***Failure to comply with this Order in any respect shall result in dismissal of this case pursuant to*** Rule 41(b) of the Federal Rules of Civil Procedure.

*Nolan I,* 2008 WL 650387 at \*3 (emphasis added). With regard to Mr. Flaum, *Nolan I* contained the following directives:

> In addition, Mr. Flaum is given a limited amount of time in which to comply with past orders. This means that Mr. Flaum must (1) properly file an answer to the Amended Complaint via the Court's ECF system by April 7,

2008, assuming, of course, that the Amended Complaint has been filed as of March 17, 2008; (2) submit a courtesy copy of the Answer to chambers in accordance with the Individual Practices of the undersigned; (3) confer with Plaintiff's counsel, Mr. Piccone, regarding a joint proposed Case Management Plan; (4) submit a proposed Plan to the Court by hand delivery, email, or regular mail, provided that it reaches chambers by March 17, 2008; and (5) submit a joint status letter, along with Mr. Piccone, no later than March 17, 2008, outlining what, if anything, has transpired in this case since the November 1, 2007 conference. If for some reason a joint letter is not possible, Mr. Flaum shall submit a status letter to the Court by March 17, 2008 explaining why the submission of a joint letter was not possible. Additionally, Mr. Flaum shall be present at the conference on Tuesday, April 8, 2008 at 10:30 a.m., and is also directed to forward a copy of this Order to his clients and file proof of service electronically with the Court. Failure to strictly comply with this order shall result in further sanctions.

**\*2** *Id.* at \*4. The Court in *Nolan I* stated three separate times that the case would be dismissed if plaintiff failed to comply with any of these directives. *Id.* at \*1-5.

Incredibly, as of April 8, 2008, as noted in the record on that day's conference, **the parties collectively had failed to comply with even one of the directives contained in *Nolan I.*** (*See* Apr. 8 Tr. at 3.) Mr. Piccone admitted on the record that he had not complied with any of the directives in *Nolan I*, and that his failure to comply with *Nolan I* was due to personal issues that the Court does not recount here but are referenced, at least in part, in the transcript of the April 8, 2008 telephone conference.[1] (*See id.* at 3-4.) Mr. Flaum noted that although he had also "missed the boat" (*id.* at 8), he sent in payment of the $200.00 sanction

on April 7, 2008 and filed the status letter that day (*see id.*), 21 days after the deadline contained in *Nolan I.*[2] It is unclear whether Mr. Flaum ever forwarded a copy of *Nolan I* to his clients as directed, but it is certainly clear from the docket sheet in this case that Mr. Flaum failed to file the required proof of service. *See Nolan I,* 2008 WL 650387, at \*4.

[1]    Mr. Piccone asserted on the record at the April 8, 2008 conference that he had in fact filed the amended complaint in November, 2007, and that he could submit proof demonstrating this fact. (*See* Transcript of April 8, 2008 Conference ("Apr. 8 Tr.") at 5-7.) While it may be true that Mr. Piccone did technically file a hard copy of the amended complaint in this matter, the amended complaint was never *properly* filed on ECF, because he never emailed the amended complaint to case_openings@nysd . uscourts.gov, pursuant to ECF procedure. As a result of his failure to do so, the amended complaint is not available on ECF. This is exactly what the Court sought to ameliorate when it ordered Mr. Piccone to "properly file" the amended complaint on ECF. *See Nolan I,* 2008 WL 650387, at \*3. In any event, regardless of the extent of Mr. Piccone's non-compliance with this portion of *Nolan I,* this dismissal is based on plaintiff's counsel's failure to follow numerous other directives, as outlined in this and prior orders.

[2]    A letter from Mr. Flaum addressed to the Court and dated April 7, 2008 was received in Chambers on April 9, 2008, and contained a check payable to the Clerk of the Court in the amount of $200.00. That check was tendered to the cashier in the Clerk's office on April 9, 2008.

## II. DISCUSSION

### A. Legal Standard for Dismissal Pursuant to Rule 41(b)

Rule 41(b) expressly authorizes involuntarily dismissal "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order." Fed.R.Civ.P. 41(b); *see also LeSane v. Hall's Sec. Analyst, Inc.,* 239 F.3d 206, 209 (2d Cir.2001). The "primary rationale" for dismissal pursuant to Rule 41(b) is "the failure of plaintiff in his duty to process his case diligently." *Lyell Theatre Corp. v. Loews Corp.,* 682 F.2d 37, 43 (2d Cir.1982). Dismissal pursuant to Rule 41(b) is committed to the discretion of the district court, and may be imposed *sua sponte. See Link v. Wabash*

*Railroad Co.,* 370 U.S. 626, 633 (1962); *LeSane,* 239 F.3d at 209. Rule 41(b) provides that such a dismissal "operates as an adjudication on the merits" unless the dismissal order states otherwise. *See Lyell Theatre,* 682 F.2d at 42-43.

Dismissal is an extreme and "harsh" remedy only to be imposed in the most "extreme" situations, and the Court must consider the entire record in deciding whether dismissal is appropriate. *See Lucas v. Miles,* 84 F.3d 532, 535 (2d Cir.1996); *Minnette v. Time Warner,* 997 F.2d 1023, 1027 (2d Cir.1993). However, in appropriate cases, dismissal must be available, "not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." *Nat'l Hockey League v. Metro. Hockey Club, Inc.,* 427 U.S. 639, 643 (1976). While dismissal based on the actions of a party's attorney may have serious consequences for the represented party, the Supreme Court has recognized that "[t]here is certainly no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client." *Link,* 370 U.S. at 633.

**\*3** The Second Circuit has instructed that a district court weighing dismissal of a case pursuant to Rule 41(b) should employ a balancing test, considering the following factors:

> (1) the duration of the plaintiff's failure to comply with the court order, (2) whether plaintiff was on notice that failure to comply would result in dismissal, (3) whether the defendants are likely to be prejudiced by further delay in the proceedings, (4) a balancing of the court's interest in managing its docket with the plaintiffs interest in receiving a fair chance to be heard, and (5) whether the judge has adequately considered a sanction less drastic than dismissal.

*Lucas,* 84 F.3d at 535 (2d Cir.1996); *see also United States* ex rel. *Drake v. Norden Sys., Inc.,* 375 F.3d 248, 254 (2d Cir.2004). Generally, no one factor is dispositive. *Shannon v. Gen. Elec. Co.,* 186 F.3d 186, 194 (2d Cir.1999) (citing *Nita v. Conn. Dep't of Envtl. Prot.,* 16 F.3d 482, 485 (2d Cir.1994)).

### B. Analysis

Weighing all of the above factors, the Court dismisses this case with prejudice pursuant to Rule 41(b).

### 1. Duration

The first element of the balancing test, the duration of plaintiffs failures, requires that the court consider "(1) whether the failures to prosecute were those of the plaintiff; and (2) whether these failures were of significant duration." *Martens v. Thomann,* 273 F.3d 159, 180 (2d Cir.2001) (citing *Spencer v. Doe,* 139 F.3d 107, 113 (2d Cir.1998)); *see also United States* ex rel. *Drake,* 375 F.3d at 255. The court must also consider whether any of the delays are attributable to the defendant. *See Jackson v. City of New York,* 22 F.3d 71, 75 (2d Cir.1994).

Here, while the various failures to follow court orders can be attributed to both parties, plaintiff is primarily to blame for the fact that this case has not advanced in more than six months. *See Nolan I,* 2008 WL 650387, at \*5. This period of delay is particularly significant given that, during that time, the action did not merely lie dormant, but the parties ignored and disobeyed multiple court orders designed to move the case along. The six-month period at issue here thus is of sufficient duration to weigh in favor of dismissal. *See Lyell Theatre Corp.,* 682 F.2d at 42-43 (noting that Rule 41 dismissal may be warranted "after merely a matter of months").

### 2. Notice

The second element to be considered is whether the plaintiff was on notice that further delay would result in dismissal of the case. *See Lucas,* 84 F.3d at 535 (2d Cir.1996). The Second Circuit has held that where a court puts a plaintiff on notice that the court is considering dismissal, and a plaintiff fails to file a document explaining the failures and outlining why the action should not be dismissed, this element has been met. *See Shannon,* 186 F.3d at 194-95.

The notice element strongly weighs in favor of dismissal of this case. Plaintiff was given notice of the Court's intent to dismiss the action in *Nolan I,* which stated *three times*

that the action would be dismissed in the event of the plaintiffs failure to comply with its directives. *See Nolan I,* 2008 WL 650387, at *1-5. In addition, the OSC gave both parties an opportunity to submit papers and to appear in Court to contest dismissal. Plaintiff failed to submit papers in response to the OSC, or to appear on the return date, and failed to follow even one of the directives in *Nolan I.* Furthermore, the parties had previously been warned that the Court would consider sanctioning the parties for failure to comply with Court orders. (*See* Jan. 2, 2008 Order.) Finally, plaintiff himself appeared at the January 30, 2008 conference before the Court, and was informed of the Court's intention to issue the OSC and consider dismissing the case absent further action. (*See* Jan. 30, 2008 Tr. at 3-5.) Thus, because it is abundantly clear that the Court gave plaintiff notice of the impending dismissal of the case, the second element weighs in favor of dismissal.

### 3. Prejudice

**\*4** The third element requires that the Court consider the prejudice of further delay to the defendant. *See Lucas,* 84 F.3d at 535 (2d Cir.1996). Where the delay is unreasonable, prejudice may be presumed as a matter of law. *Shannon,* 186 F.3d at 195 (citing *Lyell Theatre,* 682 F.2d at 43). This is generally because "delay by one party increases the likelihood that evidence in support of the other party's position will be lost and that discovery and trial will be made more difficult." *Id.* However, "in cases where delay is more moderate or excusable, the need to show actual prejudice is proportionally greater." *Lyell Theatre,* 682 F.2d at 43. "Although a court cannot deny a plaintiff the right to be heard in the interest of avoiding docket congestion, where a plaintiff could have avoided dismissal 'there can be no claim by plaintiff that [its] due process rights have been denied.' " *Jacobs v. County of Westchester,* No. 99 Civ. 4976(WCC), 2008 WL 199469, at *6 (S.D.N.Y. Jan. 22, 2008) (quoting *Europacific Asset Mgmt. Corp. v. Tradescape Corp.,* 233 F.R.D. 344, 354 (S.D.N.Y.2005) (alteration in original)).

Defendants' counsel is to blame for at least some of the delay in this matter. Because of this, and because only six months have passed, the Court will not presume prejudice. While it is demonstrably unreasonable to fail to comply with court orders for six months, the unreasonable delay present in other cases in which courts presumed prejudice

is absent here. *See Shannon,* 186 F.3d at 195 (finding presumption of prejudice because events at issue in lawsuit had taken place over a decade earlier); *Peart v. City of New York,* 992 F.2d 458, 462 (2d Cir.1993) (citing potential for witness recollection to diminish or witness unavailability as the reason for a presumption of prejudice due to unreasonable delay); *Dodson,* 957 F.Supp. at 470 (S.D.N.Y.1997) (holding that dismissal was appropriate after a five-year delay because the court can presume that witnesses' "memories have faded" when eleven years have passed since the events giving rise to plaintiffs cause of action). Thus, the Court finds that the prejudice factor does not weigh in favor of dismissal.

### 4. Balancing the Court's and Plaintiff's Interests

With respect to the fourth element, the balancing of the court's interests and the plaintiff's right to a fair adjudication on the merits, the Second Circuit has instructed that "[t]here must be compelling evidence of an extreme effect on court congestion before a litigant's right to be heard is subrogated to the convenience of the court." *Lucas,* 84 F.3d at 535-36. As such, the plaintiff's failure to prosecute must be "vexatious and burdensome" on the Court's ability to manage its docket, as opposed to being merely "silent and unobtrusive." *LeSane,* 239 F.3d at 210.

Plaintiff's right to an opportunity to be heard is not taken lightly by this Court. However, this action has been pending for over a year, and there has been no significant progress of any kind for six months. During that time, this Court has issued six separate orders relating to the parties' various failures, and held three conferences relating to the parties' inability to advance the case. While the Court has less knowledge of what transpired prior to this action being reassigned to the undersigned on September 4, 2007, the parties' ongoing failure to comply with orders of this Court has taken up a grossly disproportionate amount of the Court's time since October, 2007. Plaintiff's duty to prosecute the case diligently "is designed to achieve 'fairness to other litigants, whether in the same case or merely in the same court as competitors for scarce judicial resources....' " *Dodson,* 957 F.Supp. at 470 (quoting *Chira v. Lockheed Aircraft Corp.,* 634 F.2d 664, 668 (2d Cir.1980)). As such, the Court finds that plaintiff's failures have been "vexatious and burdensome" and accordingly, the fourth element weighs in favor of dismissal.

### 5. Efficacy of Lesser Sanctions

**\*5** Finally, the fifth element looks to whether the Court has adequately considered remedies other than dismissal. "It is clear that a district judge should employ the remedy of dismissal 'only when he is sure of the impotence of lesser sanctions.' " *Dodson,* 86 F.3d at 39 (citing *Chira,* 634 F.2d at 665). "In deciding on the suitability of lesser sanctions, and whether the sanctions should be aimed primarily against the party or the attorney, it can be important for the district court to assess the relative roles of attorney and client in causing the delay...." *Id.* at 40. "[T]he more the delay was occasioned by the lawyer's disregard of his obligation toward his client, the more this factor argues in favor of a less drastic sanction imposed directly on the lawyer." *Id.* However, this Court must be guided by the Supreme Court's pronouncement that "[t]here is certainly no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client. Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent." *Link,* 370 U.S. at 633-34.

Although it is without question that plaintiff's failures in this case are solely attributable to his counsel, Mr. Piccone, plaintiff himself was on notice of Mr. Piccone's shortcomings up to and including his failure to appear on January 30, 2008. Nevertheless, as of the April 8, 2008 telephone conference, Mr. Piccone was still the counsel of record in this matter. Plaintiff voluntarily chose Mr. Piccone to represent him in this action. Thus, while dismissal is an unfortunate result for plaintiff, it is not an unjust result. *See Link,* 370 U.S. at 633-34.

As to the consideration of lesser sanctions, this factor clearly weighs in favor of dismissal. As reflected in the record of this case, the Court has given plaintiff numerous opportunities to be heard in relation to his failure to follow court orders. Prior admonishments and warnings have been wholly ineffective. Indeed, the Court previously issued a civil contempt sanction against Mr. Piccone in the amount of $750.00 in order to induce his compliance with future orders. *See Nolan I,* 2008 WL 650387 at \*3. As of the date of this Order, that sanction has not been paid. Moreover, as noted above, counsel has not complied with

*any* of the directives contained in *Nolan I.* As such, and based on the record in this case, the Court is convinced that lesser sanctions will have no impact on plaintiff's, or his counsel's, conduct or compliance with this court's orders.

As four of the five elements favor dismissal under Rule 41(b), the Court finds that dismissal is appropriate, and this case is accordingly dismissed with prejudice pursuant to Rule 41(b). While the Court is sympathetic to the personal issues encountered by plaintiffs counsel over the past few months, as alluded to by Mr. Piccone during the April 8, 2008 telephone conference, that fact does not alleviate Mr. Piccone's duties to the Court and his client. A simple letter to the Court explaining his plight could have resulted in the extension of deadlines, a short stay of the action, or other relief, including obtaining new counsel for plaintiff. Mr. Piccone has made no showing that he was unable to contact the Court during the time that he was preoccupied with personal matters. The Court recognizes that dismissal of this case with prejudice may have the result of denying plaintiff any relief that he might have obtained on his claims. However, plaintiff is responsible for his choice of counsel, and did not choose at any point, even after being advised of Mr. Piccone's failures, to replace him as counsel. *See Lastra v. Weil, Gotshal & Manges LLP,* No. 03 Civ. 8756(RJH) (RLE), 2005 WL 551996, at \*4 (S.D.N.Y. Mar. 8, 2005) ("Claims by a litigant that he should be excused from his attorney's actions because of alleged fraudulent conduct and disobeyance of the litigant's orders may give rise to a claim for malpractice, but does not constitute an extraordinary circumstance or excusable neglect.")

### III. CONCLUSION

**\*6** For the foregoing reasons, this action is DISMISSED with prejudice pursuant to Rule 41(b). The Clerk of the Court is respectfully directed to close this case.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2008 WL 1758644, 70 Fed.R.Serv.3d 397

---

**End of Document**

© 2018 Thomson Reuters. No claim to original U.S. Government Works.

2008 WL 686796
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Ryan S. McNAMEE, Plaintiff,
v.
SCHOHARIE COUNTY JAIL, Lt. James
Hazzard, CPL J. Cronk, Deputy Paul Marsh,
Jr., Deputy N. Alexander, Deputy Howland,
Deputy Hirst, Schoharie County Medical
Dept., Dr. Weitz, Dr. Belinger, Defendants.

No. 9:06-CV-1364 (LEK/GHL).
|
March 10, 2008.

**Attorneys and Law Firms**

Ryan S. McNamee, Wappingers Falls, NY, Plaintiff, pro se.

O'Connor, O'Connor, Bresee & First, P.C., Justin O. Corcoran, Esq ., of Counsel, Albany, NY, for Defendants Weitz and Belanger.

### DECISION AND ORDER

LAWRENCE E. KAHN, District Judge.

**\*1** This matter comes before the Court following a Report-Recommendation filed on February 13, 2008, by the Honorable George H. Lowe, United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b) and L.R. 72.3(c) of the Northern District of New York. Report-Rec. (Dkt. No. 32).

Within ten days, excluding weekends and holidays, after a party has been served with a copy of a Magistrate Judge's Report-Recommendation, the party "may serve and file specific, written objections to the proposed findings and recommendations," FED. R. CIV. P. 72(b), in compliance with L.R. 72.1. No objections have been raised in the allotted time with respect to Judge Lowe's Report-Recommendation. Furthermore, after examining the record, the Court has determined that the Report-Recommendation is not subject to attack for plain error or manifest injustice.

Accordingly, it is hereby

**ORDERED,** that the Report-Recommendation (Dkt. No. 32) is **APPROVED** and **ADOPTED** in its **ENTIRETY;** and it is further

**ORDERED,** that Defendants Weitz and Belanger's Motion to dismiss (Dkt. No. 16) is **GRANTED** and Plaintiff's claims against them are **DISMISSED with prejudice;** and it is further

**ORDERED,** that Plaintiff's remaining claims are *sua sponte* **DISMISSED with prejudice** for failure to diligently litigate; and it is further

**ORDERED,** that Case no. 9:06-CV-1364 be closed; and it is further

**ORDERED,** that the Clerk serve a copy of this Order on all parties.

**IT IS SO ORDERED.**

### REPORT-RECOMMENDATION

GEORGE H. LOWE, United States Magistrate Judge.

This *pro se* prisoner civil rights action, brought pursuant to 42 U.S.C. § 1983, has been referred to me for Report and Recommendation by the Honorable Lawrence E. Kahn, Senior United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c) of the Local Rules of Practice for this Court. Generally, the Amended Complaint of Ryan S. McNamee ("Plaintiff") asserts claims under the First and Eighth Amendments against the Schoharie County

Jail, the County Medical Department, and nine employees of the Jail arising from Plaintiff's incarceration at the Jail between September of 2005 and November of 2006. (*See generally* Dkt. No. 5 [Plf.'s Am. Compl.].) Among these claims is a claim that, in September and October of 2006, Defendants Zeev Weitz (a physician) and David Belanger (a nurse)[1] violated Plaintiff's Eighth Amendment right to adequate medical care by "abruptly" taking him off the prescription drug Lexapro with "no valid explanation"

Case 9:16-cv-00027-GLS-TWD    Document 85    Filed 08/13/18    Page 89 of 114
McNamee v. Schoharie County Jail, Not Reported in F.Supp.2d (2008)

2008 WL 686796

and merely "to save money," and by failing to cause him to be placed back on that drug. (*Id.* at 11-13.)

1    While Plaintiff's Amended Complaint and the caption of this case refer to "Dr. Belinger," I note that defense counsel has stated that the correct spelling of this individual's name is "Belanger." (*See* Dkt. No. 16, Part 3, at 1 [Defs.' Mem. of Law].) Defense counsel has stated also that Defendant Belanger is a Nurse Practitioner, not a doctor, as Plaintiff alleges. (*Id.*)

Currently pending before the Court is a motion by Defendants Weitz and Belanger to dismiss Plaintiff's Eighth Amendment inadequate-medical-care claim against them for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6). (Dkt. No. 16.) Despite having been specifically advised of the consequences of failing to respond to Defendants Weitz and Belanger's motion, and having been *sua sponte* granted an extension of the deadline by which he had to so response, Plaintiff has failed to so respond. (Dkt. No. 30.)

**\*2** For the reasons stated below, I recommend that Defendants Weitz and Belanger's motion to dismiss Plaintiff's claim against them be granted. I also recommend that Plaintiff's deliberate-indifference claim against Defendant "Jane Doe # 1" be *sua sponte* dismissed with prejudice due to Plaintiff's failure to name or serve her and/or for his failure to state a claim against her upon which relief might be granted. I also recommend that Plaintiff's claims against Defendant Schoharie County Medical Department be *sua sponte* dismissed with prejudice due to Plaintiff's failure to serve that entity and/or his failure to diligently litigate his claims against that entity. Finally, I recommend that Plaintiff's claims against the remaining Defendants (i.e., Defendants Hazzard, Cronk, Marsh, Hirst, Alexander, Grippin, and Schoharie County Jail) be *sua sponte* dismissed with prejudice due to Plaintiff's failure to diligently litigate his claims against them, unless Plaintiff shows cause for this failure within ten (10) days of the date of this Report-Recommendation.

# I. RECENTLY CLARIFIED LEGAL STANDARD GOVERNING MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM

Under Fed.R.Civ.P. 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). It has

long been understood that a defendant may base such a motion on either or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed.R.Civ.P. 8(a)(2);[2] or (2) a challenge to the legal cognizability of the claim.[3]

2    *See* 5C Wright & Miller, *Federal Practice and Procedure* § 1363 at 112 (3d ed. 2004) ("A motion to dismiss for failure to state a claim for relief under Rule 12(b)(6) goes to the sufficiency of the pleading under Rule 8(a)(2).") (citations omitted); *Princeton Indus., Inc. v. Rem,* 39 B.R. 140, 143 (Bankr.S.D.N.Y.1984) ("The motion under F.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint as to whether the plaintiff has conformed to F.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement' that the pleader is entitled to relief."); *Bush v. Masiello,* 55 F.R.D. 72, 74 (S.D.N.Y.1972) ("This motion under Fed.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint, determining whether the complaint has conformed to Fed.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement that the pleader is entitled to relief.' ").

3    *See Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 514, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) ("These allegations give respondent fair notice of what petitioner's claims are and the grounds upon which they rest.... In addition, they state claims upon which relief could be granted under Title VII and the ADEA."); *Wynder v. McMahon,* 360 F.3d 73, 80 (2d Cir.2004) ( "There is a critical distinction between the notice requirements of Rule 8(a) and the requirement, under Rule 12(b)(6), that a plaintiff state a claim upon which relief can be granted."); *Phelps v. Kapnolas,* 308 F.3d 180, 187 (2d Cir.2002) ("Of course, none of this is to say that a court should hesitate to dismiss a complaint when the plaintiff's allegation ... fails as a matter of law.") (citation omitted); *Kittay v. Kornstein,* 230 F.3d 531, 541 (2d Cir.2000) (distinguishing between a failure to meet Rule 12[b][6]'s requirement of stating a cognizable claim and Rule 8 [a]'s requirement of disclosing sufficient information to put defendant on fair notice); *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.,* 379 F.Supp.2d 348, 370 (S.D.N.Y.2005) ("Although Rule 8 does not require plaintiffs to plead a theory of causation, it does not protect a legally insufficient claim [under Rule 12(b)(6) ].") (citation omitted); *Util. Metal Research & Generac Power Sys.,* 02-CV-6205, 2004 U.S. Dist. LEXIS 23314, at *4-5, 2004 WL 2613993 (E.D.N.Y. Nov.

18, 2004) (distinguishing between the legal sufficiency of the cause of action under Rule 12[b][6] and the sufficiency of the complaint under Rule 8[a] ); *accord, Straker v. Metro Trans. Auth.,* 331 F.Supp.2d 91, 101-02 (E.D.N.Y.2004); *Tangorre v. Mako's, Inc.,* 01-CV-4430, 2002 U.S. Dist. LEXIS 1658, at *6-7, 2002 WL 313156 (S.D.N.Y. Jan. 30, 2002) (identifying two sorts of arguments made on a Rule 12[b][6] motion-one aimed at the sufficiency of the pleadings under Rule 8[a], and the other aimed at the legal sufficiency of the claims).

Rule 8(a)(2) requires that a pleading include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Such a statement must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." [4] The purpose of this rule is to "facilitate a proper decision on the merits." [5] A complaint that fails to comply with this rule "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [plaintiff's] claims." [6]

[4]   *Dura Pharmaceuticals, Inc. v. Broudo,* 544 U.S. 336, 125 S.Ct. 1627, 1634, 161 L.Ed.2d 577 (2005) (holding that the complaint failed to meet this test) (quoting *Conley,* 355 U.S. at 47); *see also Swierkiewicz,* 534 U.S. at 512 (quoting *Conley,* 355 U.S. at 47); *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993) (quoting *Conley,* 355 U.S. at 47).

[5]   *See Swierkiewicz,* 534 U.S. at 514 (quoting *Conley,* 355 U.S. at 48).

[6]   *Gonzales v. Wing,* 167 F.R.D. 352, 355 (N.D.N.Y.1996) (McAvoy, J.), *aff'd,* 113 F.3d 1229 (2d Cir.1997) (unpublished table opinion). Consistent with the Second Circuit's application of § 0.23 of the Rules of the U.S. Court of Appeals for the Second Circuit, I cite this unpublished table opinion, not as precedential authority, but merely to show the case's subsequent history. *See, e.g., Photopaint Technol., LLC v. Smartlens Corp.,* 335 F.3d 152, 156 (2d Cir.2003) (citing, for similar purpose, unpublished table opinion of *Gronager v. Gilmore Sec. & Co.,* 104 F.3d 355 [2d Cir.1996] ).

The Supreme Court has long characterized this pleading requirement under Fed.R.Civ.P. 8(a)(2) as "simplified" and "liberal," and has repeatedly rejected judicially

established pleading requirements that exceed this liberal requirement. [7] However, it is well established that even this liberal notice pleading standard "has its limits." [8] As a result, several Supreme Court decisions, and Second Circuit decisions, exist holding that a pleading has failed to meet this liberal notice pleading standard. [9]

[7]   *See, e.g., Swierkiewicz,* 534 U.S. at 513-14 (noting that "Rule 8(a)(2)'s simplified pleading standard applies to all civil actions, with limited exceptions [including] averments of fraud or mistake.").

[8]   2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed.2003).

[9]   *See, e.g., Bell Atlantic Corp. v. Twombly,* ---U.S. ----, ---- - ----, 127 S.Ct. 1955, 1964-74, 167 L.Ed.2d 929 (2007) (pleading did not meet Fed.R.Civ.P. 8[a][2]'s liberal requirement), *accord, Dura Pharmaceuticals,* 125 S.Ct. at 1634-1635, *Christopher v. Harbury,* 536 U.S. 403, 416-22, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002), *Freedom Holdings, Inc. v. Spitzer,* 357 F.3d 205, 234-35 (2d Cir.2004), *Gmurzynska v. Hutton,* 355 F.3d 206, 208-209 (2d Cir.2004). Several unpublished decisions exist from the Second Circuit affirming the Rule 8(a)(2) dismissal of a complaint after *Swierkiewicz. See, e.g., Salvador v. Adirondack Park Agency of the State of N.Y.,* No. 01-7539, 2002 WL 741835, at *5 (2d Cir. Apr.26, 2002) (affirming pre-*Swierkiewicz* decision from Northern District of New York interpreting Fed.R.Civ.P. 8[a] [2] ). Although these decisions are not themselves precedential authority, *see* Rules of the U.S. Court of Appeals for the Second Circuit, § 0.23, they appear to acknowledge the continued precedential effect, after *Swierkiewicz,* of certain cases from within the Second Circuit interpreting Fed.R.Civ.P. 8(a) (2). *See Khan v. Ashcroft,* 352 F.3d 521, 525 (2d Cir.2003) (relying on summary affirmances because "they clearly acknowledge the continued precedential effect" of *Domond v. INS,* 244 F.3d 81 [2d Cir.2001], after that case was "implicitly overruled by the Supreme Court" in *INS v. St. Cyr,* 533 U.S. 289 [2001] ).

Most notably, in the recent decision of *Bell Atlantic Corporation v. Twombly,* the Supreme Court, in reversing an appellate decision holding that a complaint had stated a claim upon which relief could be granted, "retire[d]" the famous statement by the Court in *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), that "a complaint should not be dismissed for failure to

2008 WL 686796

state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." --- U.S. ----, ---- -----, 127 S.Ct. 1955, 1968-69, 167 L.Ed.2d 929 (2007). [10] Rather than turning on the conceivability of an actionable claim, the Court clarified, the Fed.R.Civ.P. 8 standard turns on the "plausibility" of an actionable claim. *Id.* at 1965-74. More specifically, the Court held that, for a plaintiff's complaint to state a claim, his "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]" assuming, of course, that all the allegations in the complaint are true. *Id.* at 1965 [citations omitted]. What this means, on a practical level, is that there must be "plausible grounds to infer [actionable conduct]," or, in other words, "enough fact to raise a reasonable expectation that discovery will reveal evidence of [actionable conduct]." *Id.; accord, Iqbal v. Hasty,* 490 F.3d 143, 157-58 (2d Cir.2007) ("[W]e believe the [Supreme] Court [in *Bell Atlantic Corp. v. Twombly*] is ... requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible."* ) [emphasis in original].

[10]    The Court in *Twombly* further explained: "The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been adequately stated, it may be supported by showing any set of facts consistent with the allegations in the complaint.... *Conley,* then, described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival." *Twombly,* 127 S.Ct. at 1969.

**\*3** Having said that, it should be emphasized that, "[i]n reviewing a complaint for dismissal under Fed.R.Civ.P. 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." [11] "This standard is applied with even greater force where the plaintiff alleges civil rights violations or where the complaint is submitted *pro se."* [12] In other words, while all pleadings are to be construed liberally, *pro se* civil rights pleadings are to be construed with an *extra* degree of liberality. Indeed, "courts must construe *pro se* pleadings broadly, and interpret them to raise the strongest arguments that they suggest." [13]

[11]    *Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir.1994) (affirming grant of motion to dismiss) (citation omitted); *Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir.1994).

[12]    *Hernandez,* 18 F.3d at 136 (citation omitted); *see also Deravin v. Kerik,* 335 F.3d 195, 200 (2d Cir.2003) (citations omitted); *Vital v. Interfaith Med. Ctr.,* 168 F.3d 615, 619 (2d Cir.1999) (citation omitted).

[13]    *Cruz v. Gomez,* 202 F.3d 593, 597 (2d Cir.2000) (finding that plaintiff's conclusory allegations of a due process violation were insufficient) (internal quotation and citation omitted).

Moreover, when addressing a *pro se* complaint, generally a district court "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." [14] Of course, granting a *pro se* plaintiff an opportunity to amend is not required where the plaintiff has already been given a chance to amend his pleading. [15] Finally, "all normal rules of pleading are not absolutely suspended." [16] For example, an opportunity to amend should be denied where "the problem with [plaintiff's] causes of action is substantive" such that "[b]etter pleading will not cure it." [17]

[14]    *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) (internal quotation and citation omitted); *see also* Fed.R.Civ.P. 15(a) (leave to amend "shall be freely given when justice so requires"). Of course, granting a *pro se* plaintiff an opportunity to amend is not required where the plaintiff has already been given a chance to amend his pleading.

[15]    *Muniz v. Goord,* 04-CV-0479, 2007 WL 2027912, at \*2, n. 14 (N.D.Y.Y. July 11, 2007) (McAvoy, J., adopting report-recommendation of Lowe, M.J.); *Richards v. Goord,* 04-CV1433, 2007 WL 201109, at \*5, n. 34 (N.D.N.Y. Jan.23, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.); *Ariola v. Onondaga County Sheriff's Dept.,* 04-CV-1262, 2007 WL 119453, at \*2, n. 13 (N.D.N.Y. Jan.10, 2007) (Hurd, J., adopting report-recommendation of Lowe, M .J.); *Collins v. Fed. Bur. of Prisons,* 05-CV-0904, 2007 WL 37404, at \*4, n. 30 (N.D.N.Y. Jan.4, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.); *Goros v. Cent. Office Review Comm.,* 03-CV-0407, 2006 WL 2794415, at \*5, n. 18 (N.D.N.Y. Sept., 26, 2006) (Sharpe, J., adopting

2008 WL 686796

report-recommendation of Lowe, M.J.); *Williams v. Weaver,* 03-CV0912, 2006 WL 2799417, at *4, n. 16 (N.D.N.Y. Sept. 26, 2006) (Kahn, J., adopting report-recommendation of Lowe, M.J.).

16    *Stinson v. Sheriff's Dep't of Sullivan Cty.,* 499 F.Supp. 259, 262 & n. 9 (S.D.N.Y.1980) (citations omitted), *accord, Gil v. Vogilano,* 131 F.Supp.2d 486, 491 (S.D.N.Y.2001).

17    *Cuoco,* 222 F.3d at 112 (finding that repleading would be futile) (citation omitted); *see also Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir.1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") (affirming, in part, dismissal of claim with prejudice) (citation omitted).

## II. BACKGROUND

### A. Summary of Claims Asserted in Plaintiff's Amended Complaint

Liberally construed, Plaintiff's Amended Complaint sets forth the following claims:

(1) Between September of 2005 and November of 2006, Defendants Hazzard, Cronk, Marsh, Hirst, Alexander, and Grippin (and the Jail and the County Medical Department) violated Plaintiff's First Amendment rights by denying him access to the courts and interfering with his ability to practice his Catholic religion, and violated his Eighth Amendment rights by failing to protect him from an assault by a violent inmate, which occurred on November 7, 2005;

(2) During the days following November 7, 2005, Defendant "Jane Doe # 1," who was a physician at the Schoharie County Jail, violated Plaintiff's Eighth Amendment rights by "misdiagnos[ing] [Plaintiff's injury] and prescrib[ing] the wrong medication to [Plaintiff] for headaches that were occurring" as a result of a head injury he suffered during the referenced assault;

(3) On or about September 25, 2006, "with no valid explanation" but merely "to save money for the Schoharie County Jail," Defendant Weitz "abruptly" took Plaintiff off the prescription drug Lexapro (which he had been taking regularly since September 2005 for "anxiety, depression and uncontrollable rage attacks"), causing

Plaintiff to suffer "loss of sleep, disorientation, and illusions [sic]."; and

(4) During the early weeks of October 2006, after three requests to see medical staff about the discontinuation of his Lexapro medication, Plaintiff was finally seen by Defendant Belanger, who failed to discover why Plaintiff had been taken off Lexapro, failed to cause Plaintiff to be placed back on Lexapro, and callously stated that Plaintiff should not be experiencing the side effects he was claiming (although a year before Defendant Belanger had told Plaintiff that an "abrupt" discontinuation of the drug would be "dangerous"). (Dkt. No. 5 [Plf.'s Am. Compl.].)

### B. Defendants' Legal Arguments in Favor of Dismissal

**\*4**  In their memorandum of law, Defendants Weitz and Belanger argue that Plaintiff's inadequate-medical-care claim against them should be dismissed for two reasons: (1) Plaintiff has failed to allege facts plausibly suggesting either that he suffered from a serious medical need for purposes of the Eighth Amendment during the time in question, or that Defendants Weitz and/or Belanger was deliberately indifferent to such a need; and (2) Plaintiff has failed to allege facts plausibly demonstrating that, before filing this action in federal court, he exhausted his administrative remedies with regard to his inadequate-medical-care claim against Defendants Weitz and Belanger. (Dkt. No. 16, Part 4, at 5-11 [Defs.' Mem. of Law].)

## III. ANALYSIS

### A. First Basis for Dismissal: Facial Merit of Defendants Weitz and Belanger's Unopposed Motion to Dismiss

Defendants Weitz and Belanger filed their motion to dismiss on May 15, 2007. (Dkt. No. 16.) In light of Plaintiff's special status as a *pro se* civil rights litigant, on August 14, 2007, the Court advised Plaintiff that, while he was not required to respond, Defendants Weitz and Belanger's motion could be granted if the Court determined that they had met their requisite burden, thereby resulting in their dismissal from Plaintiff's action. (Dkt. No. 30.) The Court also *sua sponte* granted Plaintiff an extension of time in which to respond to their motion, until September 13, 2007. (*Id.*) Still, Plaintiff did not respond to the motion.

2008 WL 686796

"Where a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein, the nonmoving party's failure to file or serve any papers as required by this Rule shall be deemed as consent to the granting or denial of the motion, as the case may be, unless good cause be shown." N.D.N.Y. L.R. 7.1(b)(3).

Here, Defendants Weitz and Belanger's motion to dismiss has been properly filed, Plaintiff has failed to oppose it (despite being warned of the possible consequences of that failure), and Plaintiff has failed to show good cause as to why his failure to oppose the motion should not be deemed as "consent" to the granting of the motion. Therefore, the sole issue remaining before the Court is whether Defendants have met their "burden to demonstrate entitlement to the relief requested" in their motion. N.D.N.Y. L.R. 7.1(b)(3).

As a practical matter, an inquiry into whether a movant has met its "burden to demonstrate entitlement" to dismissal under Local Rule 7.1(b)(3) is a more limited endeavor than a review of a contested motion to dismiss. [18] Specifically, on an uncontested motion to dismiss, the movant's burden of persuasion is lightened such that, in order to succeed, his motion need only be "facially meritorious." [19] A movant's burden in making legal arguments that are facially meritorious has appropriately been characterized as "modest." [20]

[18] *See, e.g., Hernandez v. Nash,* 00-CV-1564, 2003 U.S. Dist. LEXIS 16258, at *7-8, 2003 WL 22143709 (N.D.N.Y. Sept. 10, 2003) (Sharpe, M.J.) (before an unopposed motion to dismiss may be granted under Local Rule 7.1[b][3], "the court must review the motion to determine whether it is *facially meritorious"* ) [emphasis added; citations omitted]; *Race Safe Sys. v. Indy Racing League,* 251 F.Supp.2d 1106, 1109-10 (N.D.N.Y.2003) (Munson, J.) (reviewing whether record contradicted defendant's arguments, and whether record supported plaintiff's claims, in deciding unopposed motion to dismiss, under Local Rule 7.1[b][3] ); *see also Wilmer v. Torian,* 96-CV-1269, 1997 WL 640982, 1997 U.S. Dist. LEXIS 16345, at *2 (N.D.N.Y. Aug. 29, 1997) (Hurd, M.J.) (applying prior version of Rule 7.1[b][3], but recommending dismissal because of plaintiff's failure to respond to motion to dismiss *and* the reasons set forth in defendants' motion papers), *adopted by* 1997 U.S. Dist. LEXIS 16340, at *2, 1997 WL 640982 (N.D.N.Y. Oct. 14, 1997) (Pooler, J.); *accord, Carter v. Superintendent Montello,* 95-CV-0989, 1996 U.S. Dist. LEXIS 15072, at *3 (N.D.N.Y. Aug. 27, 1996) (Hurd, M.J.), *adopted by* 983 F.Supp. 595 (N.D.N.Y.1996) (Pooler, J.).

[19] *See, e.g., Hernandez,* 2003 U.S. Dist. LEXIS 1625, at *8, 2003 WL 22143709; *accord, Topliff v. Wal-Mart Stores East LP,* 04-CV-0297, 2007 U.S. Dist. LEXIS 20533, at *28 & n. 43, 2007 WL 911891 (N.D.N.Y. March 22, 2007) (Lowe, M.J.); *Hynes v. Kirkpatrick,* 05-CV-0380, 2007 U.S. Dist. LEXIS 24356, at *5-6 & n. 2, 2007 WL 894375 (N.D.N.Y. March 21, 2007) (Lowe, M.J.); *Sledge v. Kooi,* 04-CV-1311, 2007 U.S. Dist. LEXIS 26583, at *28-29 & n. 40, 2007 WL 951447 (N.D.N.Y. Feb. 12, 2007) (Lowe, M.J.), *adopted by* 2007 U.S. Dist. LEXIS 22458, 2007 WL 969576 (N.D.N.Y. March 28, 2007) (McAvoy, J.); *Kele v. Pelkey,* 03-CV-0170, 2006 U.S. Dist. LEXIS 95065, at *5 & n. 2, 2006 WL 3940592 (N.D.N.Y. Dec. 19, 2006) (Lowe, M.J.), *adopted by* 2007 U.S. Dist. LEXIS 4336, 2007 WL 189021 (N.D.N.Y. Jan. 22, 2007) (Kahn, J.).

[20] *See, e.g., Ciaprazi v. Goord,* 02-CV0915, 2005 WL 3531464, at *8 (N.D.N.Y. Dec.22, 2005) (Sharpe, J.; Peebles, M.J.) (characterizing defendants' threshold burden on a motion for summary judgment as "modest") [citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ]; *accord, Saunders v. Ricks,* 03-CV-0598, 2006 WL 3051792, at *9 & n. 60 (N.D.N.Y. Oct.18, 2006) (Hurd, J., adopting Report-Recommendation of Lowe, M.J.), *Smith v. Woods,* 03-CV-0480, 2006 WL 1133247, at *17 & n. 109 (N.D.N.Y. Apr.24, 2006) (Hurd, J., adopting Report-Recommendation of Lowe, M.J.).

**\*5** After carefully reviewing Plaintiff's Amended Complaint, and Defendants Weitz and Belanger's memorandum of law in support of their motion to dismiss, I find that Defendant Weitz and Belanger have met their lightened burden on their unopposed motion, for the reasons stated in their memorandum of law. (*Compare* Dkt. No. 5 [Plf.'s Am. Compl.] *with* Dkt. No. 16, Part 3, at 1-11 [Defs.' Mem. of Law].)

For these reasons, I recommend that the Court grant Defendants Weitz and Belanger's motion to dismiss. Because adequate reason exists to grant Defendants Weitz and Belanger's unopposed motion, the Court need proceed no further in its analysis of Plaintiff's Amended Complaint. However, in the interest of thoroughness,

and toward the end of describing an *alternative basis* for dismissal of Plaintiff's claims against Defendants Weitz and Belanger, I will subject their motion to the more rigorous scrutiny appropriate for a contested motion to dismiss.

**B. Alternative Basis for Dismissal: Substantive Merit of Defendants Weitz and Belanger's Motion to Dismiss**

**1. Failure by Plaintiff to Allege Facts Plausibly Suggesting that Defendants Were Deliberately Indifferent to a Serious Medical Need**

A prisoner's allegation of deliberate indifference to a serious medical need arises under the Eighth Amendment when the alleged deliberate indifference occurred while prisoner was incarcerated on a sentence of conviction, and under the Fifth Amendment when the alleged deliberate indifference occurred while prisoner was detained awaiting trial. *Cuoco v. Moritsugu,* 222 F.3d 99, 106 (2d Cir.2000). Under either constitutional amendment, the legal standard (for a deliberate indifference claim) is the same. *Cuoco,* 222 F.3d at 106.

Generally, to state a claim for inadequate medical care under the United States Constitution, a plaintiff must allege facts plausibly suggesting two things: (1) that he had a sufficiently serious medical need; and (2) that the defendants were deliberately indifferent to that serious medical need. *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998).

**a. Whether Plaintiff Had a Sufficiently Serious Medical Need**

To be sufficiently serious for purposes of the Constitution, a medical condition must be "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Nance v. Kelly,* 912 F.2d 605, 607 (2d Cir.1990) (Pratt, J. dissenting) [citations omitted], *accord, Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1996), *cert. denied,* 513 U.S. 1154, 115 S.Ct. 1108, 130 L.Ed.2d 1074 (1995); *Chance,* 143 F.3d at 702.

Here, Plaintiff alleges that, during the time in question, he suffered from "mental health problems," specifically, "anxiety, depression and uncontrollable rage attacks." (Dkt. No. 5, at 13 [Plf.'s Am. Compl.].) Conspicuously absent from Plaintiff's Amended Complaint (which is otherwise very lengthy and detailed) is any allegation that, during the time in question, he suffered from panic attacks or that he had attempted (or even contemplated) suicide.

**\*6** After reviewing the relevant case law, I am unable to find that Plaintiff has alleged facts plausibly suggesting a serious medical need under the Eighth Amendment. *See Doty v. County of Lassen,* 37 F.3d 540, 546 (9th Cir.1994) (depression, headaches, nausea and shakes not serious medical needs); *Jones v. Tammany Parish Sheriff,* 06-CV-2875, 2007 U.S. Dist. LEXIS 18816, at \*27-28, 2007 WL 647299 (E.D.La. Feb. 1, 2007) ("While some courts have characterized mental illnesses as a 'serious medical need' for purposes of constitutional analysis in Section 1983 claims by detainees, they have generally done so in circumstances in which the plaintiff also exhibited seriously harmful or severe symptoms or other ailments in combination with a mental illness sufficient to render plaintiff's overall condition serious.") [collecting cases]; *White v. Ghost,* 456 F.Supp.2d 1096, 1102-03 (D. Dakota 2006) (bare allegations of "depression" and "suicide" not sufficiently serious, but allegation of two *attempted* suicides sufficiently serious).

**b. Whether Defendants Weitz and/or Belanger Were Deliberately Indifferent to any Serious Medical Need**

In any event, even if I were to assume, for the sake of argument, that Plaintiff has alleged facts plausibly suggesting that (during the time in question) he suffered from a serious medical need, I would find that he has not alleged facts plausibly suggesting that either Defendant Weitz or Belanger possessed a sufficient state of mind during the time in question to make him *deliberately indifferent* to that need.

An official is "deliberately indifferent" to a serious medical need when he " 'knows of and disregards an excessive risk to inmate health or safety.' "[21] " '[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.' "[22] What this means, as a practical matter, is that "deliberate indifference describes a state of mind more blameworthy than negligence,"[23] one that is "equivalent to criminal recklessness."[24]

21    *Johnson v. Wright,* 412 F.3d 398, 403 (2d Cir.2005) (citing *Farmer v. Brennan,* 511 U.S. 825, 837 [1994] ).

22    *Johnson,* 412 F.3d at 403 (citing *Farmer,* 511 U.S. at 837).

23    *Farmer v. Brennan,* 511 U.S. 825, 835, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) ("[D]eliberate indifference [for purposes of an Eighth Amendment claim] describes a state of mind more blameworthy than negligence."); *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *Murphy v. Grabo,* 94-CV1684, 1998 WL 166840, at *4 (N.D.N.Y. Apr.9, 1998) (Pooler, J.) ("Deliberate indifference, whether evidenced by [prison] medical staff or by [prison] officials who allegedly disregard the instructions of [prison] medical staff, requires more than negligence.... Disagreement with prescribed treatment does not rise to the level of a constitutional claim.... Additionally, negligence by physicians, even amounting to malpractice, does not become a constitutional violation merely because the plaintiff is an inmate.... Thus, claims of malpractice or disagreement with treatment are not actionable under section 1983.") [citations omitted].").

24    *Hemmings v. Gorczyk,* 134 F.3d 104, 108 (2d Cir.1998) ("The required state of mind [for a deliberate indifference claim under the Eighth Amendment], equivalent to criminal recklessness, is that the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists; and he must also draw the inference.") [internal quotation marks and citations omitted]; *Hathaway v. Coughlin,* 99 F.3d 550, 553 (2d Cir.1996) ("The subjective element requires a state of mind that is the equivalent of criminal recklessness ....") [citation omitted]; *cf. Farmer,* 511 U.S. at 827 ("[S]ubjective recklessness as used in the criminal law is a familiar and workable standard that is consistent with the Cruel and Unusual Punishments Clause as interpreted in our cases, and we adopt it as the test for 'deliberate indifference' under the Eighth Amendment.").

There is no such criminal recklessness alleged in Plaintiff's Amended Complaint. (See Dkt. No. 5, at 10-13 [Plf.'s

Am. Compl.].) Plaintiff alleges facts plausibly suggesting that, for some if not all of the relevant time period, both Defendants Weitz and Belanger were acting under the *mistaken* belief that, during the weeks before Plaintiff had been taken off of Lexapro, he had not been taking the drug. (*Id.* at 12.) Moreover, Plaintiff does not even conclusorily allege that Defendant Weitz was aware of the withdrawal symptoms that Plaintiff was allegedly experiencing. (*Id.* at 11-13.) At most, there might be a *hint* of negligence alleged. However, negligence is not sufficient to state a claim for deliberate indifference. Nor is a disagreement over a treatment decision-which is what Plaintiff is essentially alleging. *See Sonds v. St. Barnabas Hosp. Corr. Health Servs.,* 151 F.Supp.2d 303, 312 (S.D.N.Y.2001) ("[D]isagreements [between a prisoner and prison officials] over medications ... are not adequate grounds for a section 1983 claim. These issues implicate medical judgments and, at worst, negligence amounting to medical malpractice, but not the Eighth Amendment.") [citation omitted]. As the Second Circuit once observed:

> *7 It must be remembered that the State is not constitutionally obligated, much as it may be desired by inmates, to construct a perfect plan for [medical] care that exceeds what the average reasonable person would expect or avail herself of in life outside the prison walls. [A] correctional facility is not a health spa, but a prison in which convicted felons are incarcerated. Common experience indicates that the great majority of prisoners would not in freedom or on parole enjoy the excellence in [medical] care which plaintiff [ ] understandably seeks.... We are governed by the principle that the objective is not to impose upon a state prison a model system of [medical] care beyond average needs but to provide the minimum level of [medical] care required by the Constitution.... The Constitution does not command that inmates be given the kind of medical attention that judges would wish to have for themselves.... The essential test is one of medical

2008 WL 686796

necessity and not one simply of desirability.

*Dean v. Coughlin,* 804 F.2d 207, 215 (2d Cir.1986) [internal quotations and citations omitted].

For the above reasons, I recommend that, in the alternative, the Court dismiss Plaintiff's claims against Defendants Weitz and Belanger due to Plaintiff's failure to allege facts plausibly suggesting that either Defendants Weitz or Belanger was deliberately indifferent to any serious medical need possessed by Plaintiff.

**2. Whether Plaintiff Failed to Exhaust Administrative Remedies**

In the alternative, Defendants Weitz and Belanger argue that Plaintiff's claim against them should be dismissed because Plaintiff's Amended Complaint "contains no allegation that plaintiff ever complained administratively about the same medical decisions by Dr. Weitz and Mr. Belanger about which plaintiff complains at pages 11 through 13 of his complaint." (Dkt. No. 16, Part 3, at 10 [Defs.' Mem. of Law].)

Although I agree with the main thrust of this argument (i.e., that Plaintiff's claim against Defendants Weitz and Belanger should be dismissed due to Plaintiff's failure to exhaust his available administrative remedies), I disagree somewhat with Defendant Weitz and Belanger's reasoning.

For some years now, it has been the majority rule (followed by the Second Circuit) that a prisoner's fulfillment of his duty to exhaust his available administrative remedies under the Prison Litigation Reform Act ("PLRA") is not a fact that the prisoner had to plead in order to state a claim under 42 U.S.C. § 1983 but a fact that may be challenged by a defendant through an affirmative defense (such as on a motion for summary judgment pursuant to Fed.R.Civ.P. 56, or a motion to dismiss for lack of subject-matter jurisdiction pursuant to Fed.R.Civ.P. 12[b][1] ) established by the PLRA. *See, e.g., Jenkins v. Haubert,* 179 F.3d 19, 28-29 (2d Cir.1999) ("Because, under the PLRA, a prisoner must exhaust administrative remedies before filing a § 1983 suit ..., a defendant in a prisoner § 1983 suit may also assert as an affirmative defense the plaintiff's failure to comply with the PLRA's requirements."); *Snider v. Melindez,* 199 F.3d 108, 114 (2d Cir.1999) ("A court may not dismiss

for failure to exhaust administrative remedies unless the court determines that such remedies are available. Snider's answers [on a form complaint] cannot establish that.").

**\*8** Recently, the Supreme Court upheld this interpretation of the exhaustion requirement, prohibiting circuits (such as the Sixth, Tenth and Eleventh Circuits) from using exhaustion as a heightened pleading requirement in prisoner civil rights case. *See Jones v. Block,* 549 U.S. 199, ---- - ----, ---- - 127, 127 S.Ct. 910, 914-915, 918-923, 166 L.Ed.2d 798 (2007). A prisoner has no independent *duty* to plead facts plausibly suggesting that he exhausted his available administrative remedies, in order to state an actionable claim under 42 U.S.C. § 1983. *Block,* 127 S.Ct. at 919-21. "[T]his is not to say that failure to exhaust cannot be a basis for dismissal for failure to state a claim." *Id.* at 921. If a prisoner *chooses* to plead facts regarding exhaustion, and those facts plausibly suggest that he failed to exhaust his available administrative remedies, then his Complaint may be dismissed for failure to state a claim. *Id.* at 920-21. Simply stated, if a prisoner says nothing or little about exhaustion in his *pro se* civil rights complaint, he is likely protected from a Fed.R.Civ.P. 12(b)(6) motion to dismiss premised on failure to exhaust. However, if he says too much about exhaustion in that complaint so that his non-exhaustion is readily apparent, he may "plead himself out of court," as the saying goes.

This is what has happened here. Addressing the exhaustion requirement in his Amended Complaint, Plaintiff alleges as follows:

> The plaintiff Mr. McNamee (# 21562) believes the exhaustion rule is not inflexible and *need not be followed* when the facility has previously been challenged by other inmates. Challenges have been made with grievances and determinations have been made that to resort [t]o administrative remedies would be obviously futile and pursuit would cause irreparable injuries. The County Defendants take advantage of not answering grievances and delaying them for the sole purpose of causing harm to plaintiffs.

(Dkt. No. 5, at 7 [Plf.'s Am. Compl.] [emphasis added].) Through this allegation, Plaintiff has effectively acknowledged that the Schoharie Jail had a grievance procedure during the time in question, and that he knowingly did not pursue that grievance procedure.

Granted, Plaintiff appears to attempt to invoke the "unavailability," "estoppel," and "special circumstances" exceptions to the exhaustion rule. More specifically, Plaintiff appears to rely on the three-part inquiry that the Second Circuit has held is appropriate where a defendant contends that a prisoner has failed to exhaust his available administrative remedies, as required by the PLRA.[25] *First,* "the court must ask whether [the] administrative remedies [not pursued by the prisoner] were in fact 'available' to the prisoner."[26] *Second,* if those remedies were available, "the court should ... inquire as to whether [some or all of] the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it ... or whether the defendants' own actions inhibiting the [prisoner's] exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense."[27] *Third,* if the remedies were available and some of the defendants did not forfeit, and were not estopped from raising, the non-exhaustion defense, "the Court should consider whether 'special circumstances' have been plausibly alleged that justify the prisoner's failure to comply with the administrative procedural requirements."[28]

[25]     See *Hemphill v. State of New York,* 380 F.3d 680, 686, 691 (2d Cir.2004).

[26]     *Hemphill,* 380 F.3d at 686 (citation omitted).

[27]     *Id.* [citations omitted].

[28]     *Id.* [citations and internal quotations omitted].

**\*9** However, Plaintiff provides absolutely no factual allegations supporting his conclusory allegation that he "need not ... follow[ ]" the exhaustion procedure since (1) unidentified courts or administrative bodies have accepted the argument of "other inmates" that their pursuit of their administrative remedies would have been futile, and (2) "[t]he County Defendants take advantage of not answering grievances and delaying them for the sole purpose of causing harm to plaintiffs." (*See generally*

Dkt. No. 5 [Plf .'s Am. Compl.].) For example, Plaintiff does not allege that any court or administrative body has ruled that *Plaintiff's* administrative remedies have ever been unavailable at *the Schoharie County Jail.* Nor does Plaintiff allege that either Defendant Weitz or Defendant Belanger in any way frustrated Plaintiff's ability to administratively grieve his claim against them. The closes he comes is when he alleges that his "litigation" has been "injure[d]" by the refusal of the County "Medical Department" to release to him his medical records supporting his claim against Defendant "Jane Doe # 1." (*Id.* at 11.) Such an allegation in no way supports Plaintiff's conclusory allegation that he did not have to exhaust his administrative remedies before filing his claim against *Defendants Weitz and Belanger.*

For the above reasons, I recommend that, in the alternative, the Court dismiss Plaintiff's claims against Defendants Weitz and Belanger due to Plaintiff's having alleged facts demonstrating that, before filing this action in federal court, he failed to exhaust his administrative remedies with regard to his inadequate-medical-care claim against Defendants Weitz and Belanger.

### C. Failure to Name or Serve, and/or Failure to State Claim Against, Defendant "Jane Doe # 1"

Plaintiff had a duty to diligently litigate his deliberate-indifference claim against Defendant "Jane Doe # 1," including a specific duty to identify, name and serve her. *See* Fed.R.Civ.P. 41(b); N.D.N.Y. L.R. 41.2(a); Fed.R.Civ.P. 4(m); Fed.R.Civ.P. 16(e),(f). (*See also* Dkt. No. 6, at 2-4 [Order of Judge Kahn, filed 1/22/07, advising Plf. that "the U.S. Marshals cannot effect service on a 'Jane Doe' defendant," and that "if this individual is not timely served, this action will be dismissed as against her," and directing Plf. to "take reasonable steps to ascertain her identity" and "file a Motion to amend his Complaint and add such individual[ ], by name, as [a] defendant[ ] to this lawsuit"].) Plaintiff has failed to fulfill that duty, and has not shown good cause excusing that failure.

Furthermore, using the well-known five-part balancing test appropriate for a failure-toprosecute analysis,[29] I find that this failure to name and serve has persisted for more than a year; Plaintiff has had specific notice of the failure and the consequences of the failure; the individual designated as "Jane Doe # 1" (whomever she may be) has been prejudiced by the failure; and no

sanction less drastic than dismissal would be appropriate. Under the circumstances, I find that Plaintiff's deliberate-indifference claim against "Jane Doe" should be dismissed under a variety of authorities. [30]

> [29]    In the Second Circuit, courts consider five factors (none of which is dispositive) when deciding whether or not to dismiss an action for failure to prosecute: "[1] the duration of the plaintiff's failures, [2] whether plaintiff had received notice that further delays would result in dismissal, [3] whether the defendant is likely to be prejudiced by further delay, [4] whether the district judge has taken care to strike the balance between alleviating court calendar congestion and protecting a party's right to due process and a fair chance to be heard and [5] whether the judge has adequately assessed the efficacy of lesser sanctions." *Shannon v. GE Co.,* 186 F.3d 186, 193 (2d Cir.1999) (affirming Fed.R.Civ.P. 41[b] dismissal of plaintiff's claims by U.S. District Court for Northern District of New York based on plaintiff's failure to prosecute the action) [citations omitted].

> [30]    I note that the Court need not issue such an order only upon motion of defense counsel but may do so *sua sponte. See* Fed. R. Civ. 4(m) ("[T]he Court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time."); Fed. R. Civ. 16(f) ("[T]he judge, upon motion or the judge's own initiative, may make such orders with regard thereto as are just...."). Furthermore, with regard to Fed.R.Civ.P. 41(b), which speaks only of a *motion* to dismiss on the referenced grounds, courts retain the "inherent power" to *sua sponte* "clear their calendars of cases that have remained dormant because of the inaction or dilatoriness of the parties seeking relief." *Link v. Wabash R.R. Co.,* 370 U.S. 626, 630, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962); *see also Saylor v. Bastedo,* 623 F.2d 230, 238 (2d Cir.1980); *Theilmann v. Rutland Hospital, Inc.,* 455 F.2d 853, 855 (2d Cir.1972). Indeed, Local Rule 41.2(a) recognizes this authority. *See* N.D.N.Y. L.R. 41.2(a) ("Whenever it appears that the plaintiff has failed to prosecute an action or proceeding diligently, the assigned judge *shall* order it dismissed.") [emphasis added].

**\*10** However, even if the Court were to overlook Plaintiff's failure to name and serve Defendant "Jane Doe # 1," and to review the pleading sufficiency of Plaintiff's deliberate-indifference claim against her, the Court would find that Plaintiff's factual allegations against her do not state a claim upon which relief maybe granted. [31] Liberally construed, Plaintiff's Amended Complaint alleges that, during the days following November 7, 2005, Defendant "Jane Doe # 1," who was a physician at the Schoharie County Jail, violated Plaintiff's Eighth Amendment rights by "misdiagnos[ing] [Plaintiff's injury] and prescrib[ing] the wrong medication to [Plaintiff] for headaches that were occurring" as a result of "a head injury" that he suffered during the November 7, 2005, assault. (Dkt. No. 5, at 11 [Plf.'s Am. Compl.].) For the sake of argument, I will assume that the vague "head injury" that Plaintiff suffered during the referenced assault constituted a *sufficiently serious medical need* for purposes of the Eighth Amendment. In any event, the alleged errors that Defendant Jane Doe # 1 committed during the days following that injury constitute, at most, *negligence,* not the sort of *criminal recklessness* that is required to state a claim under the Eighth Amendment. (*See, supra,* Part III.B. 1.b. of this Report-Recommendation.)

> [31]    I note that the Court is authorized to conduct such an analysis of the pleading sufficiency of Plaintiff's claims pursuant 28 U.S.C. § 1915(e)(2)(B)(ii) and/or 28 U.S.C. § 1915A(b).

For all of these reasons, I recommend that the Court *sua sponte* dismiss Plaintiff's deliberate indifference claim against Defendant "Jane Doe # 1" due to Plaintiff's failure to name or serve her, and/or his failure to state a claim against her upon which relief may be granted.

### D. Failure to Serve Defendant Schoharie County Medical Department

As indicated above in Part III.C. of this Report-Recommendation, Plaintiff had a duty to diligently litigate his claims against Defendant Schoharie County Medical Department (if there exists such an entity), including a specific duty to serve that entity. *See* Fed.R.Civ.P. 41(b); N.D.N.Y. L.R. 41.2(a); Fed.R.Civ.P. 4(m); Fed.R.Civ.P. 16(e),(f). (*See also* Dkt. No. 8, at [Order of Magistrate Judge Lowe, filed 3/5/07, directing that Plf. "must comply with the requests by the Clerk's Office for any documents [including accurate USM 285 Forms] that are necessary to maintain this action."].) [32] Plaintiff has failed to fulfill that duty. (*See* Dkt. No. 27 [Summons Returned Unexecuted as to Schoharie County Medical Dept., filed 5/23/07].) Furthermore, he has not shown good cause excusing that failure.

32    To the extent Plaintiff misnamed this entity, he had
a duty to discover and correct that error. (*See* Dkt.
No. 6, at 4 [Order of Judge Kahn, filed 1/22/07,
advising Plf. that he shall "take reasonable steps
to ascertain the identities of any other individual(s)
that purportedly violated plaintiff's civil and/or
constitutional rights and, if appropriate, file a Motion
to amend his Complaint and add such individual [ ],
by name, as [a] defendant[ ] to this lawsuit"].)

Finally, using the balancing test appropriate for a failure-
to-prosecute analysis, I find that this failure to name
and serve has persisted for approximately nine months;
Plaintiff has had specific notice of the failure and the
consequences of the failure; the entity designated as
"The Schoharie County Medical Department" (whichever
entity that may be) has been prejudiced by the failure;
and no sanction less drastic than dismissal would
be appropriate. Under the circumstances, I find that
Plaintiff's claims against Defendant Schoharie County
Medical Department should be dismissed under a variety
of authorities. (*See, supra,* note 30 of this Report-
Recommendation.)

**\*11**  For these reasons, I recommend that the Court
*sua sponte* dismiss Plaintiff's claims against Defendant
Schoharie County Medical Department due to Plaintiff's
failure to serve, and/or his failure to diligently litigate his
claims against, that entity.

### E. Failure to Prosecute Claims Against Remaining Defendants

As indicated above in Part III.C. of this Report-
Recommendation, Plaintiff had a duty to diligently
litigate his claims against the remaining Defendants (i.e.,
Defendants Hazzard, Cronk, Marsh, Hirst, Alexander,
Grippin, and Schoharie County Jail). *See* Fed.R.Civ.P.
41(b); N.D.N.Y. L.R. 41.2(a); Fed.R.Civ.P. 4(m);
Fed.R.Civ.P. 16(e),(f).

Using the balancing test appropriate for a failure-to-
prosecute analysis, I find that Plaintiff has failed to
diligently prosecute this action for approximately eight
months, i.e., since about *June 4, 2007.* I reach this
conclusion for two reasons. First, June 4, 2007, was
the original deadline for Plaintiff's papers in response to
Defendants Weitz and Belanger's motion to dismiss. Since
that date, the Court has delayed deciding the motion to
dismiss, in large part, out of special solicitude to Plaintiff,
to permit him an adequate opportunity to respond. I note

that Local Rule 7.1(b)(3) gives a non-movant a duty to
promptly notify the Court when he intends to not respond
to a motion, and makes the failure to fulfill such a duty
punishable by the imposition of sanctions. N.D.N.Y. L.R.
7.1(b)(3). Plaintiff has failed to provide such notice to
the Court. Second, Local Rule 41.2(a) of the Local Rules
of Practice for this Court provides that "[i]n the absence
of an order by the assigned judge or magistrate judge
setting any date for any pretrial proceeding or for trial, the
plaintiff's failure to take action for four (4) months shall be
presumptive evidence of lack of prosecution ." N.D.N.Y.
L.R. 41.2(a). As of June 4, 2007, the last time that Plaintiff
had taken any action in this matter was about four months
before, i.e., on February 2, 2007. (Dkt. No. 7 [Plf.'s IFP
App., filed 2/2/07].)

Furthermore, I find that Plaintiff has had adequate notice
of his failure to prosecute and the consequences of the
failure, due to (1) Local Rules 7.1(b)(3) and 41.2(a) of
the Local Rules of Practice for this Court, which were
available at Plaintiff's correctional facility when he signed
his Complaint in this action in August of 2006, and (2) the
several Orders that have been filed in this action reminding
Plaintiff, in part, of his various litigation duties. (*See* Dkt.
Nos. 4, 6, 8, 30, 31.)

Moreover, I find that the remaining Defendants have
been prejudiced by Plaintiff's failure to prosecute, and will
continue to be prejudiced by a further failure to prosecute.
Further delay by Plaintiff may very well result in the
fading of memories, the discarding of relevant documents,
and the retirement or transfer of witnesses. [33]

33    *See, e.g., Geordiadis v. First Boston Corp.,* 167 F.R.D.
24, 25 (S.D.N.Y.1996) ("The passage of time always
threatens difficulty as memories fade. Given the age
of this case, that problem probably is severe already.
The additional delay that plaintiff has caused here can
only make matters worse.").

Additionally, I find that the need to alleviate congestion
on the Court's docket outweighs Plaintiff's right to receive
a further chance to be heard in this action. It is cases
like this one that delay the resolution of other cases,
and that contribute to the Second Circuit's dubious
distinction as having (among the twelve circuits, including
the D.C. Circuit) the longest median time to disposition
for prisoner civil rights cases, between 2000 and 2005 (9.8
months, as compared to a national average of 5.7 months).
Simply stated, I am unable to afford Plaintiff with further

special solicitude without impermissibly burdening the Court and unfairly tipping the scales of justice against the remaining Defendants.

 **\*12** Finally, I have considered all less-drastic sanctions and rejected them, in part because they would be futile under the circumstances (e.g., an Order warning or chastising Plaintiff would likely fall upon deaf ears, as did the Court's extension Order of August 14, 2007, due to Plaintiff's apparent intent to abandon pursuit of his claims in this action). (*See* Dkt. No. 30 [Order filed 8/14/07].)

For these reasons, I recommend that the Court dismiss Plaintiff's claims against the remaining Defendants (i.e., Defendants Hazzard, Cronk, Marsh, Hirst, Alexander, Grippin, and Schoharie County Jail) due to Plaintiff's failure to diligently litigate his claims against them, unless Plaintiff shows cause for this failure within ten (10) days of the date of this Report-Recommendation.

**ACCORDINGLY,** it is

**RECOMMENDED** that Defendants Weitz and Belanger's motion to dismiss for failure to state a claim (Dkt. No. 16) be *GRANTED,* and that Plaintiff's claim of inadequate medical care by Defendants Weitz and Belanger, set forth in Count Three of Plaintiff's Amended Complaint (Dkt. No. 5), be *DISMISSED* **with prejudice** for failure to state a claim; and it is further

**RECOMMENDED** that Plaintiff's claim of inadequate medical care by Defendant "Jane Doe # 1," set forth in Count Three of Plaintiff's Amended Complaint (Dkt.

No. 5), be *sua sponte* *DISMISSED* **with prejudice** due to Plaintiff's failure to name or serve her, or, in the alternative, due to his failure to state a claim upon which relief might be granted; and it is further

**RECOMMENDED** that Plaintiff's claims against Defendant Schoharie County Medical Department be *sua sponte* *DISMISSED* **with prejudice** due to Plaintiff's failure to serve that entity and/or his failure to diligently litigate his claims against that entity; and it is further

**RECOMMENDED** that Plaintiff's claims against the remaining Defendants (i.e., Defendants Hazzard, Cronk, Marsh, Hirst, Alexander, Grippin, and Schoharie County Jail) be *sua sponte* *DISMISSED* **with prejudice** due to Plaintiff's failure to diligently litigate his claims against them, unless Plaintiff shows cause for this failure within **TEN (10) DAYS** of the date of this Report-Recommendation.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Sec'y of Health and Human Svcs.,* 892 F.2d 15 [2d Cir.1989] ); 28 U.S.C. § 636(b); Fed.R.Civ.P. 6(a), 6(e), 72.

**All Citations**

Not Reported in F.Supp.2d, 2008 WL 686796

---

**End of Document**

© 2018 Thomson Reuters. No claim to original U.S. Government Works.

2016 WL 1275621
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Oscar Garcia and Gloria Arocho, Plaintiffs,

v.

The City of New York, The New York City
Police Department, Police Officers Michael
Demonda, Louis Stephenson, Nicole Perl,
and Sgt. Nathan Mole of the 75Th Precinct,
and Other Officers Whose Identities are
Unkown at this Time all Member of the
NYPD, and Ruben Mijares, Defendants.

14-CV-4160 (NGG) (LB)
|
Signed 03/31/2016

**Attorneys and Law Firms**

Andres Manuel Aranda, Andres M. Aranda, Esq., Bronx,
NY, for Plaintiffs.

Peter John Fogarty, New York City Law Department,
New York, NY, for Defendants.

**MEMORANDUM & ORDER**

NICHOLAS G. GARAUFIS, United States District
Judge

 **\*1** Before the court is the City of New York's (the
"City") motion to dismiss the Complaint for failure to
prosecute. [1] For the reasons stated below, Defendant's
motion is GRANTED with prejudice. Further, the court
sua sponte DISMISSES the Complaint against all other
Defendants with prejudice.

---

[1]     Due to Plaintiffs' failure to properly serve process, the
        City is the only Defendant to appear thus far.

**I. BACKGROUND**
On July 7, 2014, Plaintiffs filed their Complaint, but they
did not file any proposed summonses. (See Compl. (Dkt.
1).) Two weeks later, on July 21, 2014, Plaintiffs served a
document entitled "Summons & Complaint" on the City

at the New York City Law Department; however, no
summons was attached to the document. (Decl. of Peter
J. Fogarty in Supp. of Def.'s Mot. to Dismiss ("Fogarty
Decl.") (Dkt. 22) ¶ 4.) The next day, Plaintiffs' counsel
filed affidavits of service as to Police Officers Louis
Stephenson and Nicole Perl; however, neither summons
bore the court's seal or was signed by the Clerk of Court.
(Aff. of Service (Dkts. 3, 4); see also Fogarty Decl. ¶ 11.)
Plaintiffs aver that they mailed a copy of the Complaint
to Sergeant Mole, Officer Demonda, and Ruben Mijeres
on July 28, 2014 (Aff. of Eliana Sanchez in Opp'n to Mot.
to Dismiss ("Sanchez Aff.") (Dkt. 20-4) at 1); however,
the public docket does not reflect that Mole, Demonda, or
Mijeres were ever served.

On October 21, 2014, the City's counsel emailed Plaintiffs'
counsel to inform him that no Defendant had been
properly served with a summons. (Fogarty Decl. ¶ 8.)
Plaintiffs' counsel responded that he would presently file
proof of service. (Id.) However, no proof of service was
filed. Three days later, on October 24, 2014, the City's
counsel again emailed Plaintiffs' counsel regarding service.
(Id. ¶ 9.) This time, Plaintiffs' counsel responded that
his "person in charge of service" would call the City's
counsel to determine what the problems with service were.
(Id.) Despite Plaintiffs' counsel's assurances, no such call
occurred.

On November 6, 2014, the City filed a letter seeking a pre-
motion conference. (Nov. 6, 2014, Ltr-Mot. (Dkt. 8).) The
City noted the deficiencies in Plaintiffs' attempted service.
Specifically, the City indicated that (1) "[a] further review
of the summons and complaint that was purportedly
served on the City ... on July 21, 2014, revealed that, in
fact, no summons was served on the City ... "; (2) "[a]n
additional review of the summonses purportedly served on
defendants Nicole Perl and Louis Stephenson shows they
were neither signed by the Clerk of the Court nor bear the
Court's seal as is required by Fed. R. Civ. P. 4(a)(1)(F) and
(a)(1)(G)"; and (3) "there is no adequate proof of service
on Police Officer Michael Demonda or Sergeant Nathan
Mole on the docket sheet, an issue which was raised in
both of defendant City's requests for an enlargement of
time to respond to plaintiffs' complaint." (Id. at 2.) On
March 16, 2015, Defendants filed a fully briefed motion
to dismiss, arguing that Plaintiffs had failed to properly
effect service within the time limits set out in the Federal
Rules of Civil Procedure. (Not. of Mot. to Dismiss (Dkt.
19).)

**\*2** On May 18, 2015, Plaintiffs' counsel, Andres Manuel Aranda, was reciprocally suspended from practice before this court following his suspension from practice before the Court of Appeals for the Second Circuit. See In re Andres Manuel Aranda, No. 06-MC-303 (BMC) (E.D.N.Y. May 18, 2015).

Consequently, on January 11, 2016, the court ordered Mr. Aranda to inform Plaintiffs that he can no longer represent them and ordered Plaintiffs, within 30 days, to inform the court whether they wished to secure new counsel, proceed pro se, or discontinue the case. (See Jan. 11, 2016, Order (Dkt. 26).) The January 11, 2016, Order was sent to Mr. Aranda both electronically and by mail and was mailed to Plaintiffs' last known addresses. (Id.) Neither Mr. Aranda nor Plaintiffs have responded in any way to the court's order and their time to do so has now passed.

On March 1, 2016, the City moved to dismiss the case for failure to prosecute. (Ltr.-Mot. to Dismiss (Dkt. 28).) Plaintiffs have not responded in any way.

## II. LEGAL STANDARD

"If the plaintiff fails to prosecute ... a defendant may move to dismiss the action." Fed. R. Civ. P. 41. However, "dismissal is 'a harsh remedy to be utilized only in extreme situations.'" Minnette v. Time Warner, 997 F.2d 1023, 1027 (2d Cir. 1993) (quoting Gibbs v. Hawaiian Eugenia Corp., 996 F.2d 101, 109 (2d Cir. 1992)).

In deciding whether to dismiss a case for failure to prosecute, the Second Circuit has instructed district courts to consider whether: "(1) the plaintiff's failure to prosecute caused a delay of significant duration; (2) plaintiff was given notice that further delay would result in dismissal; (3) defendant was likely to be prejudiced by further delay; (4) the need to alleviate court calendar congestion was carefully balanced against plaintiff's right to an opportunity for a day in court; and (5) the trial court adequately assessed the efficacy of lesser sanctions." U.S. ex rel. Drake v. Norden Sys., Inc., 375 F.3d 248, 254 (2d Cir. 2004).

"In analyzing the factors, the court reviews the record as a whole." Caussade v. United States, 293 F.R.D. 625, 629 (S.D.N.Y. 2013) (alteration omitted) (quoting Toliver v. Comm'r of N.Y.C. D.O.C., No. 10-CV-5805

(DLC), 2011 WL 5242643, at *3 (S.D.N.Y. Nov. 3, 2011)). Accordingly, "no one factor is dispositive." Lewis v. Rawson, 564 F.3d 569, 576 (2d Cir. 2009) (quoting Drake, 375 F.3d at 254).

## III. DISCUSSION

### A. Plaintiffs' Failure Caused a Significant Delay

The first factor asks whether Plaintiffs are at fault for causing a significant delay. "The first factor ... breaks down into two parts: (1) whether the failures to prosecute were those of the plaintiff, and (2) whether these failures were of significant duration." Drake, 375 F.3d at 255.

With regard to the first element. Plaintiffs have failed to respond in any way to the court's January 11, 2016, Order. This failure is plainly attributable to Plaintiffs. Moreover, even if Plaintiffs were to argue that their counsel, Mr. Aranda, was responsible for the failure to respond, "apportionment of blame between counsel and client, ... is best considered when [the court gets] to the fifth factor." Id. Instead, at this stage, the court need only ask "whether or not the delay was caused by plaintiff's side as a whole." Id. The court has no trouble concluding that the delay was caused by Plaintiffs' side as a whole.

**\*3** With regard to the second element, "[t]here is no fixed period of time that must elapse before a plaintiff's failure to prosecute becomes substantial enough to warrant dismissal." Caussade, 293 F.R.D. at 629. Nonetheless, "[d]elays of several months have been found to warrant dismissal." Id. Here, Plaintiffs have completely failed to respond to the court's January 11, 2016, Order, which has already delayed adjudication of Plaintiffs' claims by several months. This delay weighs heavily in favor of dismissal.

Moreover, the court is reluctant to view Plaintiffs' failure to prosecute as simply failing to respond to the January 11, 2016, Order. Throughout the case, Plaintiffs have failed to carry out even the most basic tasks associated with prosecuting the case. (See Fogarty Decl. (outlining Plaintiffs repeated failures to serve process); Pls.' Resp. to Mot. to Dismiss (Dkt. 20) at 3-4 (acknowledging that Plaintiffs failed to properly serve process).) Accordingly, the court finds that Plaintiffs have substantially delayed the adjudication of this case.

In any event, even if the court only considered Plaintiffs' failure to respond to the January 11, 2016, Order standing alone, and even if that delay was itself not sufficiently substantial to warrant dismissal, the court would still find the delay here sufficient to counsel in favor of dismissal because Plaintiffs are unreachable. "Courts have found dismissal appropriate for [delays shorter than several months] when a party has become completely inaccessible, as inaccessibility 'strongly suggests that [Plaintiffs are] not diligently pursuing [their] claim.'" Caussade, 293 F.R.D. at 630 (S.D.N.Y. 2013) (quoting Dong v. United States, No. 02-CV-7751 (SAS), 2004 WL 385117, at *3 (S.D.N.Y. Mar. 2, 2004)).

Accordingly, the court finds that the first factor favors dismissal.

### B. Plaintiffs Were Given Notice That Further Delay Would Result in Dismissal

The second factor asks whether Plaintiffs are on notice that their failure to prosecute could cause their case to be dismissed. Generally, a party should be given notice prior to dismissal of their complaint for failure to prosecute. See Drake, 375 F. 3d at 254. However, "this is not an absolute requirement." Caussade, 293 F.R.D. at 630 (S.D.N.Y. 2013) (quoting Link v. Wabash R.R. Co., 370 U.S. 626, 633 (1962) ("[A] District Court may dismiss a complaint for failure to prosecute even without affording notice of its intention to do so or providing an adversary hearing before acting.")). Here, Plaintiffs were notified that the case might be dismissed for failure to prosecute when the City served its motion. See Dong, 2004 WL 385117, at *3 ("By serving this motion, the Government has notified Dong that his failure to prosecute might result in dismissal.").

"In any event, given that the Court and counsel have no way to contact [Plaintiffs], any further attempt to warn them would be futile." Id. Indeed, courts in this circuit regularly dismiss cases for failure to prosecute without notice where the plaintiffs are unreachable. See, e.g., Blake v. Pavane, No. 08-CV-0930 (PAC) (PED), 2011 WL 7163172, at * 2 (S.D.N.Y. Mar. 11, 2011) (report and recommendation); Fitzgerald v. Anderson, No. 91-CV-3881 (MJL), 1994 WL 97144, at *2 (S.D.N.Y. Mar. 21, 1994).

Thus, the court finds that the second factor favors dismissal.

### C. Defendants Are Likely to Be Prejudiced by Further Delay

The third factor asks whether Defendants are likely to be prejudiced by further delay. "Where a plaintiff has become inaccessible for months at a time, courts presume prejudice." Caussade, 293 F.R.D at 630 (collecting cases). Here, Plaintiffs have been inaccessible since at least the January 11, 2016, Order. Accordingly, the court presumes prejudice.

*4 In any event, the court finds that Defendants have been prejudiced by Plaintiffs' delay. The events giving rise to this action occurred on August 20, 2011. (See Compl. (Dkt. 1) ¶¶ 10-15.) It is only natural that in the intervening five years, Defendants' and their potential witnesses' memory of those events have faded. Courts in this circuit routinely find prejudice where a plaintiff's delay makes it less likely that a defendant will recall the facts critical to defending the case. See, e.g., McNamee v. Schoharie Cnty. Jail, No. 06-CV-1364 (LEK) (GHL), 2008 WL 686796, at *11 (N.D.N.Y. Mar. 10, 2008) (report and recommendation) ("Further delay by Plaintiff may very well result in the fading of memories."); Dodson v. Runyon, 957 F. Supp. 465, 470 (S.D.N.Y. 1997) ("As the Second Circuit has found, a delay of this length makes likely the chance that memories have faded and that witnesses who might once have been available may well not be found"), aff'd, 152 F.3d 917 (2d Cir. 1998).

Consequently, the court finds that the third factor favors dismissal.

### D. Need to Alleviate Court Calendar Congestion

The fourth factor considers whether dismissal of the case would alleviate the court's docket. The court is cognizant that it "must not let its zeal for a tidy calendar overcome its duty to do justice." Outley v. City of New York, 837 F.2d 587, 589 (2d Cir. 1988) (internal citation omitted). However, where a plaintiff is unreachable, courts do not hesitate to find the need to alleviate the court's calendar militates in favor of dismissal. This is because "[i]t is not an efficient use of the Court's or Defendants['] resources to permit this case to languish on the docket in the hope that plaintiff will reappear in the future." Caussade, 293 F.R.D at 631 (quoting Davison v. Grillo, No. 05-CV-4960 (NG) (LB), 2006 WL 2228999, at *2 (E.D.N.Y. Aug. 3, 2006)).

Case 9:16-cv-00027-GLS-TWD    Document 85    Filed 08/13/18    Page 104 of 114
Garcia v. City of New York, Not Reported in F.Supp.3d (2016)
2016 WL 1275621

Here, the court has no way of reaching Plaintiffs. Accordingly, the court finds that the fourth factor weighs in favor of dismissal.

### E. Adequacy of Lesser Sanctions
The fifth factor asks whether a sanction less than dismissal could sufficiently remedy the plaintiff's delay. "Courts consistently find that dismissal is the only adequate remedy for failure to prosecute where a plaintiff cannot be contacted because the plaintiff would be unaware of any lesser sanction that could be imposed." Caussade, 293 F.R.D. at 631 (collecting cases).

Because Plaintiffs are unreachable here, the court finds that the fifth factor weighs in favor of dismissal.

### IV. CONCLUSION
Because all five factors weigh in favor of dismissal, the court concludes that Plaintiffs' failure to prosecute warrants dismissal. The City's motion to dismiss is therefore GRANTED. In addition, the court sua sponte DISMISSES the Complaint against all other Defendants for failure to prosecute. The Complaint is DISMISSED WITH PREJUDICE. The Clerk of Court is respectfully requested to close the case.

SO ORDERED.

### All Citations

Not Reported in F.Supp.3d, 2016 WL 1275621

© 2018 Thomson Reuters. No claim to original U.S. Government Works.

 © 2018 Thomson Reuters. No claim to original U.S. Government Works.    4

2006 WL 3150030
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Lacy BAKER, Plaintiff,
v.
Anthony M. VOLPE, Corrections Officer at Auburn
Correctional Facility; Shawn Blowers, Corrections
Officer at Auburn Correctional Facility; J. Fasce,
Corrections Officer at Auburn Correctional Facility;
Charles Murphy, Sergeant at Auburn Correctional
Facility; K. Dipronio, Corrections Officer at Auburn
Correctional Facility; Lt. Kruger; John J. Burns,
Deputy Superintendent at Auburn Correctional
Facility; Hans Walker, Superintendent at Auburn
Correctional Facility; Glenn S. Goord and Donald
Selsky, Director of SHU/Disp. Review Officer
at Auburn Correctional Facility, Defendants.

Civil Action No. 9:01-cv-1894 (GLS/GJD).
|
Nov. 1, 2006.

**Attorneys and Law Firms**

Lacy Baker, Fishkill, NY, pro se.

Hon. Eliot Spitzer, Attorney General, Syracuse, NY,
Gary L. Sharpe, U.S. District Judge, Ed J. Thompson,
Esq., Assistant Attorney General, for Defendants.

*ORDER*

GARY L. SHARPE, District Judge.

 **\*1** The above-captioned matter comes to this
court following a Report-Recommendation by Chief
Magistrate Judge Gustave J. DiBianco, duly filed October
6, 2006. Following ten days from the service thereof, the
Clerk has sent the file, including any and all objections
filed by the parties herein.

No objections having been filed, and the court
having reviewed the Magistrate Judge's Report-
Recommendation for clear error, it is hereby

ORDERED, that the Report-Recommendation of Chief
Magistrate Judge Gustave J. DiBianco filed October 6,
2006 is ACCEPTED in its entirety for the reasons state
therein, and it is further

ORDERED, that defendants' motion to dismiss for
failure to prosecute (Docket No. 45) is **GRANTED,** and
the complaint **DISMISSED IN ITS ENTIRETY WITH
PREJUDICE,** and it is further

ORDERED, that the Clerk of the Court is to enter
judgment in favor of Defendants and close this case.

IT IS SO ORDERED.

GUSTAVE J. DI BIANCO, Magistrate Judge.

**REPORT-RECOMMENDATION**

This matter has been referred to me for Report and
Recommendation by the Honorable Gary L. Sharpe,
United States District Judge, pursuant to 28 U.S.C. §
636(b) and Local Rules N.D.N.Y. 72.3(c).

In this civil rights complaint, plaintiff alleges a variety of
constitutional violations, including excessive force; failure
to protect; and cruel and unusual punishment. Plaintiff
also states that he has been subjected to false disciplinary
charges and wrongful confinement. (Dkt. No. 1).

Presently before the court is defendants' motion to
dismiss this action for failure to prosecute. (Dkt. No.
45). Plaintiff has not responded to the motion. For the
following reasons, this court agrees with defendants and
will recommend dismissal of the complaint.

**DISCUSSION**

**1.** *Background*
Plaintiff filed this action on December 12, 2001. (Dkt. No.
1). Plaintiff complains of defendants' conduct, allegedly
occurring between April and June of 2001. The case
was originally assigned to the Honorable Lawrence E.
Kahn. On December 28, 2001, I issued an order, granting
plaintiff *in forma pauperis* status and ordering service
of the complaint by the Marshal. (Dkt. No. 4). In my
December 28, 2001 order, I specifically stated that plaintiff

2006 WL 3150030

was to promptly notify the court and defendants of any change of address. (Dkt. No. 4 at p. 3). I also specifically warned plaintiff that the failure to do so could result in dismissal of the complaint. *Id.*

Defendants filed their answer on May 8, 2002. (Dkt. No. 21). On July 10, 2002, I issued a scheduling order, setting a discovery deadline of January 30, 2003 and a dispositive motion deadline of May 30, 2003. (Dkt. No. 25). During the period between September 18, 2002 and July 29, 2004, plaintiff filed **six change of address notices** with the court. (Dkt.Nos.26, 29-32, 34). On March 5, 2004 this case was assigned to the Honorable Gary L. Sharpe. (Dkt. No. 33).

On June 12, **2006,** I issued an order scheduling a telephone status conference in this case. (Dkt. No. 36). On June 19, 2006, defense counsel filed a letter indicating that plaintiff had been paroled on January 14, **2005** and had been released from parole supervision in May of 2006. (Dkt. No. 37). On June 20, 2006, I asked defense counsel to attempt to determine plaintiff's address through the Division of Parole. (Dkt. No. 38). On June 27, 2006, defense counsel filed a letter stating that the Division of Parole had no address for plaintiff. (Dkt. No. 41). Defendants filed their motion to dismiss for failure to prosecute on July 21, 2006.

**2.** *Failure to Prosecute*

**\*2** Rule 41(b) of the Federal Rules of Civil Procedure provides that a court may, in its discretion, dismiss an action based upon the failure of a plaintiff to prosecute the action, or comply with any order of the court. *Dansby v. Albany County Correctional Facility Staff,* 95-CV-1525, 1996 WL 172699 (N.D.N.Y. April 10, 1996)(citing *Link v. Wabash R.R. Co.,* 370 U.S. 626, 629 (1962)). Moreover, notwithstanding the leniency with which pro se plaintiffs are treated, a plaintiff has the duty to inform the court of any address changes. *See Lucas v. Miles,* 34 F.3d 532, 538 (2d Cir.1996) (pro se plaintiffs are entitled to a degree of leniency, but that should not extend to a disregard of the court's plain directives).

"The demand that plaintiffs provide contact information *is no esoteric rule of civil procedure, but rather the obvious minimal requirement for pursuing a lawsuit.*" *Dumpson v. Goord,* 2004 U.S. Dist. LEXIS 14317, *8 (W.D.N.Y. July 22, 2004)(emphasis added). Additionally, Rule 41.2(b) of the Local Rules of Practice for the Northern District of New York states that failure to notify the court of a change

of address in accordance with LOCAL RULE 10.1(b) may result in the dismissal of any pending action.

The Second Circuit has held that generally, a determination of whether to dismiss for failure to prosecute involves a consideration of whether plaintiff's failure caused a delay of considerable duration; whether plaintiff was given notice that further delay would result in dismissal, and whether defendants will be prejudiced by further delay. *United States ex rel. Drake v. Norden Sys., Inc.,* 375 F.3d 248, 254 (2d Cir.2004). The court must also carefully balance the need to alleviate court congestion with plaintiff's right to have his day in court, and the court must consider the efficacy of lesser sanctions. *Id.* Dismissal is a harsh remedy to be utilized only in "extreme situations." *Minnette v. Time Warner,* 997 F.2d 1023, 1027 (2d Cir.1993).

Defendants have now moved to dismiss this action. Certainly there has been a great delay in this case due to plaintiff's failure to participate. The events giving rise to plaintiff's claims allegedly occurred in mid-2001. It is now more than five years later, and there appears to have been no discovery. On September 20, 2002, defendants obtained an order pursuant to FED.R.CIV.P. 30(a) to depose plaintiff, but it is unclear whether any deposition occurred. Any further delay will certainly prejudice defendants' ability to defend this action. Plaintiff was **well aware** of the requirement to keep the court informed of his changes of address, since **he filed six of them.** Plaintiff was also warned in the filing order that the failure to inform the court and defendants of a change of address would result in the dismissal of his case.

Because plaintiff has failed to keep the court informed of his whereabouts, it is impossible to contact him for any purposes. It is also impossible to consider or impose any lesser sanction than dismissal of the action. At the request of the court, defense counsel even contacted the Division of Parole to determine if plaintiff's current address could be found. Defendants have no further obligation to pursue this inquiry. It is neither defendants', nor the court's responsibility to make extraordinary efforts to locate a plaintiff who has clearly abandoned his action.

**\*3** **WHEREFORE,** based on the above, it is

**RECOMMENDED,** that defendants' motion to dismiss for failure to prosecute (Dkt. No. 45), be **GRANTED,** and

2006 WL 3150030

the complaint **DISMISSED IN ITS ENTIRETY WITH PREJUDICE.**

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v.*

*Racette,* 984 F.2d 85, 89 (2d Cir.1993)(citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(e), 72.

**All Citations**

Not Reported in F.Supp.2d, 2006 WL 3150030

---

**End of Document**                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

2003 WL 21507345

2003 WL 21507345
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Bernard PATTERSON, Plaintiff,

v.

Sharon LILLEY, Wladyslaw Sidorowicz, Ginger
Eggler, and William Brown, Defendants.

No. 02 Civ.6056 NRB.
|
June 30, 2003.

**Synopsis**

Prisoner brought federal civil rights suit against prison intake nurse, prison doctor, and two supervisors, alleging deliberate indifference to his asthmatic condition. Defendants moved to dismiss complaint for failure to state claim. The District Court, Buchwald, J., held that: (1) prisoner's asthma was not sufficiently serious to require care immediately upon his arrival at prison; (2) intake nurse was not deliberately indifferent to prisoner's medical needs; (3) prisoner's preference for treatment by particular doctor and his disagreements concerning method of treatment did not show deliberate indifference to his medical needs; (4) prison doctor's alleged remark about effect of budgetary constraints on treatment did not give rise to claim under facts; and (5) supervisors were not liable for alleged Eighth Amendment violations.

Motion granted.

West Headnotes (7)

**[1]**   **Prisons**
👉 Particular Conditions and Treatments

**Sentencing and Punishment**
👉 Medical care and treatment

Prisoner's asthmatic condition was not sufficiently serious to give rise to Eighth Amendment violation when intake nurse informed prisoner at midnight that he would have to wait to following morning to receive medication; prisoner did not allege any discomfort at time or experience any

symptoms of emergent attack. U.S.C.A. Const.Amend. 8.

15 Cases that cite this headnote

**[2]**   **Prisons**
👉 Particular Conditions and Treatments

**Sentencing and Punishment**
👉 Medical care and treatment

Prison nurse was not deliberately indifferent to prisoner's serious medical needs in violation of Eighth Amendment when she informed him, during intake to prison, that he would have to wait until morning to be evaluated for asthma medications; nothing suggested that nurse acted with requisite mental state of criminal recklessness, where prisoner was not experiencing discomfort at time or any symptoms of emergent attack. U.S.C.A. Const.Amend. 8.

8 Cases that cite this headnote

**[3]**   **Prisons**
👉 Particular Conditions and Treatments

**Sentencing and Punishment**
👉 Medical care and treatment

Prisoner's preference for examination by particular physician did not prove deliberate indifference to his serious medical needs, in violation of Eighth Amendment, where he did receive medical treatment between his arrival at facility and examination by physician of choice. U.S.C.A. Const.Amend. 8.

10 Cases that cite this headnote

**[4]**   **Prisons**
👉 Particular Conditions and Treatments

**Sentencing and Punishment**
👉 Medical care and treatment

Prisoner's disagreements with method in which his asthma was treated, including lowering medication dosage, changing medications, and for some period, taking him entirely off medication, involved mere difference of opinion, rather than deliberate

indifference to his serious medical needs and thus could not violate Eighth Amendment. U.S.C.A. Const.Amend. 8.

6 Cases that cite this headnote

**[5]**    **Sentencing and Punishment**
         👉 **Medical care and treatment**

Any alleged negligence on part of prison physician in treating prisoner did not rise to level of Eighth Amendment violation merely because patient was prisoner. U.S.C.A. Const.Amend. 8.

1 Cases that cite this headnote

**[6]**    **Prisons**
         👉 **Particular Conditions and Treatments**

         **Prisons**
         👉 **Health and medical care**

         **Sentencing and Punishment**
         👉 **Medical care and treatment**

Prison physician's alleged remark concerning possible effect of budgetary constraints on treatment for prisoner's asthma was insufficient to create Eighth Amendment violation; there was no withholding of treatment contemporaneous to remark, and prisoner did not suffer any attacks as result of later elimination of asthma medications. U.S.C.A. Const.Amend. 8.

1 Cases that cite this headnote

**[7]**    **Civil Rights**
         👉 **Criminal law enforcement;prisons**

         **Prisons**
         👉 **Particular Conditions and Treatments**

         **Sentencing and Punishment**
         👉 **Medical care and treatment**

Alleged failure of nurse administrator and another prison supervisor to act on prisoner's information about alleged indifference to his medical needs did not violate Eighth Amendment; supervisors were not personally involved in prisoner's medical treatment, no unconstitutional custom or practice was

implicated, supervisory officials were not grossly negligent, and there was no underlying violation by medical personnel. U.S.C.A. Const.Amend. 8; 42 U.S.C.A. § 1983.

5 Cases that cite this headnote

**Attorneys and Law Firms**

Mr. Bernard Patterson, Green Haven Correctional Facility, Stormville, New York, for Plaintiff.

Kimberly A. Dasse, Assistant Attorney General, New York, New York, for Defendant.

MEMORANDUM AND ORDER

BUCHWALD, J.

**\*1**  Plaintiff Bernard Patterson ("plaintiff"), currently incarcerated in Central New York Psychiatric Center's satellite unit at Green Haven Correctional Facility, brings this action *pro se* against the following health care workers and staff members of Sullivan Correctional Facility, where plaintiff was formerly imprisoned: Nurse Ginger Eggler; Dr. Wladyslaw Sidorowicz; Nurse Administrator Sharon Lilley; and Deputy of Administrative Services William Brown (collectively, "defendants"). Plaintiff brings suit under 42 U.S.C. § 1983, alleging that defendants violated his rights under the Eighth and Fourteenth Amendments to the United States Constitution by their deliberate indifference to his medical care. Defendants have moved to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted and pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction due to a failure to exhaust administrative remedies required by the Prison Litigation Reform Act. 42 U.S.C. § 1197e(a). For the reasons that follow, the defendants' motion to dismiss for failure to state a claim is granted. [1]

[1]    While the parties dispute whether the plaintiff has exhausted all of his claims, the defendants concede that he exhausted at least some of his administrative remedies, and as we dismiss the complaint on the merits, we need not resolve the exhaustion issue.

BACKGROUND [2]

[2]     Unless otherwise noted, all facts are taken from
        plaintiff's complaint.

Plaintiff alleges that on December 19, 2001, at approximately twelve o'clock midnight, he arrived at Sullivan Correctional Facility ("Sullivan"). Upon arrival, he advised the processing officer that he was an asthmatic and had not received his medication for that day. The processing officer notified the nurse of plaintiff's condition. Shortly thereafter, the processing officer returned and informed plaintiff that Nurse Ginger Eggler said plaintiff would have to wait until morning to be seen by anyone. Plaintiff was then escorted to a housing unit without being screened for medical or mental disorders and without receiving any asthma medication.

The following morning, December 20, 2001, at approximately 8:20 a .m., plaintiff maintains he suffered an asthma attack. Plaintiff was examined at the facility clinic, given breathing treatment, and provided oral medication. He was advised he would be called to the clinic to pick up his asthma medication that evening, but was never called. The following morning, plaintiff reported to the facility clinic to inquire why he had not been called to pick up his medication. Plaintiff avers he was informed that the doctor had lowered the dosage of his medication. Plaintiff inquired as to why his dosage had been lowered without a personal consultation by a doctor. Plaintiff does not state what the response was to this inquiry.

Plaintiff claims that because the dosage had been lowered, and because he was never evaluated properly, he suffered five additional asthma attacks on January 6, 9, 11, 13, and 14, 2002. However, plaintiff does not allege that he sought treatment at the infirmary for any of the attacks in January. Nonetheless, on January 14, 2002, plaintiff was examined by Dr. Wladyslaw Sidorowicz. During this examination, Dr. Sidorowicz put plaintiff on a different medication and further advised plaintiff to let him know if the new medication did not work and he would change it. Plaintiff also alleges that during this same examination, Dr. Sidorowicz told him that he intended to stop plaintiff's asthma medication in an effort to keep the budget down.

*2  On February 21, 2002, plaintiff alleges that he was placed in the infirmary as a result of inadequate medical treatment for his asthma, but he does not describe the reasons for his admission to the infirmary, the treatment he received, or when he was discharged. Plaintiff claims that on March 8, 2002, he informed a nurse that the new medication was not working and requested to be placed back on his original asthma medication. Several days later, on March 11, plaintiff maintains he reported to sick call and was told by a nurse that she had, in fact, spoken with Dr. Sidorowicz about his asthma medication, and that the doctor had decided to discontinue the medication because it was not working and chose not to prescribe anything in its place. Plaintiff suffered no additional asthma attacks.

Although the precise timing is unclear, plaintiff claims he wrote a letter to Nurse Administrator ("N.A.") Sharon Lilley explaining his unhappiness with the treatment he was receiving for his asthma. In her response letter, plaintiff claims N.A. Lilley justified Nurse Eggler's screening upon his initial intake at Sullivan and Dr. Sidorowicz's decision to discontinue his medication. Plaintiff also claims he wrote a letter to Deputy of Administrative Services William Brown. Plaintiff does not describe the contents of his own letter, only that Deputy Brown advised plaintiff that his medication had been changed to a better regime with more effective medication. Plaintiff further avers that in a later letter from Deputy Brown, he was advised that "testing at this facility does not support your self diagnosis of asthma."

Plaintiff claims that as a result of the mental duress caused by this situation, he chose to cut his right forearm with a shaving razor on March 25, 2002. Plaintiff further avers that Dr. Sidorowicz initially refused to send him to an outside hospital to treat the wound, but that after being pressured by the mental health staff, the doctor sent him to an outside medical center where he received twenty stitches. Thereafter, on April 3, 2002, Dr. Sidorowicz placed plaintiff back on his original asthma medication.

Plaintiff herein has four complaints: (1) Nurse Eggler denied plaintiff his asthma medication upon his initial intake at Sullivan and did not properly screen him, such that if he were properly screened, he would not have been given a shaving razor due to his mental disorder; (2) Dr. Sidorowicz did not properly treat and failed to examine him earlier than January 14, 2002, and that prior thereto, plaintiff suffered six asthma attacks; (3) N.A. Lilley failed to act on the content of the plaintiff's complaint letter; and

2003 WL 21507345

(4) Deputy Brown, a non-medical professional, should not have given a medical opinion in response to plaintiff's complaint letter, and failed to remedy the inadequate medical care of which plaintiff complained.

Plaintiff filed suit on August 23, 2002. He moved to have counsel assigned, which we denied on October 10, 2002. Defendants moved to dismiss on November 22, 2002.

## DISCUSSION

### I. Motion to Dismiss Standard

**\*3** A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) tests the legal sufficiency of a complaint and should be granted "only if it is clear that no relief could be granted under any set of facts consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984) (citing *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). In this context, our function is "merely to assess the legal feasibility of the complaint, not to assay the legal feasibility of the evidence which might be offered in support thereof." *Geisler v. Petrocelli,* 616 F.2d 636, 639 (2d Cir.1980). We acknowledge, towards this end, the well-settled principle that the movant bears the burden of persuasion and that the nonmovant's well-pleaded factual allegations must be accepted as true. *Allen v. WestPoint–Pepperell, Inc.,* 945 F.2d 40, 44 (2d Cir.1991). Moreover, a complaint submitted *pro se* must be liberally construed and is held to a less rigorous standard of review than formal pleadings drafted by an attorney. *Hughes v. Rowe,* 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980); *Salahuddin v. Coughlin,* 781 F.2d 24, 28 (2d Cir.1986).

### II. Eighth Amendment Standard

In an action brought under 42 U.S.C. § 1983, the plaintiff must establish that a person acting under color of state law deprived him of a federal constitutional right. *Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980). Here, plaintiff claims that defendants Nurse Eggler and Dr. Sidorowicz violated his Eighth Amendment rights by failing to provide him with proper medical care, and that defendants N.A. Lilley and Deputy Brown violated his Eighth Amendment rights by failing to properly address his complaints regarding such inadequate care.

The Eighth Amendment, made applicable to the states by the Fourteenth Amendment, prohibits the infliction of "cruel and unusual punishment." *See Farmer v. Brennan,* 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (holding that the Eighth Amendment is applicable to treatment and conditions of confinement for prison inmates). We are additionally mindful of the state's constitutional obligation to provide inmates with adequate medical care. *See Id.* at 832. Indeed, it is well-established that a prison official's denial of access to medical care or interference with prescribed treatment may constitute the "unnecessary and wanton infliction of pain" proscribed by the Eighth Amendment. *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Todaro v. Ward,* 565 F.2d 48, 52 (2d Cir.1977). To state a cognizable claim under § 1983 for inadequate medical care, an inmate must allege acts or omissions sufficiently harmful to evidence "deliberate indifference" to his serious medical needs. *Estelle,* 429 U.S. at 104. As such, the plaintiff must allege conduct that is "an unnecessary and wanton infliction of pain," or that is "repugnant to the conscience of mankind." *Id.* at 105–06.

The deliberate indifference standard "embodies both an objective and subjective prong" and the plaintiff must satisfy both prongs in order to establish that prison officials unconstitutionally deprived him of adequate medical care. *Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1994), *cert. denied, sub nom. Foote v. Hathaway,* 513 U.S. 1154, 115 S.Ct. 1108, 130 L.Ed.2d 1074 (1995). First, the inmate's medical condition must be, in objective terms, "sufficiently serious." *Wilson v. Seiter,* 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). A condition is "sufficiently serious" under the Eighth Amendment if it is "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Hathaway,* 37 F.3d at 66 (citing *Nance v. Kelly,* 912 F.2d 605, 607 (2d Cir.1990) (Pratt, J., dissenting). Second, the charged official must act with a sufficiently culpable state of mind. *See Wilson,* 501 U.S. at 298. "Deliberate indifference requires more than negligence, but less than conduct undertaken for the very purpose of causing harm." *Hathaway,* 37 F.3d at 66 (citing *Farmer,* 511 U.S. at 835–36). More specifically, a prison official does not act in a deliberately indifferent manner unless that official "knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer,* 511 U.S. at 837.

2003 WL 21507345

III. Evaluation of Plaintiff's Claims

**\*4** Having set forth the two-part standard for deliberate indifference, we now consider whether plaintiff's allegations satisfy both the objective and subjective prongs with regard to each individual defendant.

### A. Nurse Eggler

**[1]** Plaintiff claims that upon his intake at Sullivan he was denied his asthma medication by Nurse Eggler and was not properly screened for mental disorders. Assuming the truth of these allegations and viewed in the light most favorable to the plaintiff, they do not amount to a constitutional deprivation as they meet neither the objective nor subjective elements of the deliberate indifference standard.

At the time of Nurse Eggler's involvement, around midnight on December 19, 2001, she was informed only that plaintiff was an asthmatic and that he desired his medication. Plaintiff did not allege any discomfort or any symptoms of an emergent attack. Thus, plaintiff does not satisfy the objective component of a deliberate indifference claim. More than minor discomfort or injury is required for plaintiff to meet the objective prong of demonstrating a "sufficiently serious" medical need.

Being an asthmatic (a person susceptible to asthma attacks) is not a condition, in Eighth Amendment parlance, that is severe or "sufficiently serious." The existence of the condition is distinct from the situation in which an inmate is suffering an actual attack. *Cf. Ennis v. Davies,* No. 87 Civ. 1465, 1990 WL 121527 (S.D.N.Y. Aug.15, 1990) (denying a motion for summary judgment based on prison official's refusal to provide an inmate his asthma medication during an actual attack). Indeed, in *Sulkowska v. City of New York,* 129 F.Supp.2d 274 (S.D.N.Y.2001), where plaintiff was denied her asthma medication while a detainee in police custody, the court found that such conduct amounted to no more than mere negligence, not deliberate medical indifference, as asthma was not sufficiently serious to warrant Eighth Amendment protection in the absence of an attack or symptoms of an attack. [3] *Id.* at 292.

---

3       In contrast to the response at the time of plaintiff's midnight arrival, he received medical care the next

morning when he had an attack. Nurse Eggler's conduct should be examined only in the context of plaintiff's condition at the time of his arrival at the facility. Nurse Eggler could only be held deliberately indifferent to an existing, serious medical condition, not a speculative, future medical injury. The requisite culpable state of mind would necessarily be absent for the unknown, future injury. Plaintiff's allegation that he cut his arm three months after arriving at Sullivan because he was not initially screened for mental disorders by Nurse Eggler (without making any indication or notification of such a disorder) also fails for this reason.

**[2]** Plaintiff's allegations concerning Nurse Eggler also fail to meet the subjective prong of the indifference claim. Plaintiff does not provide facts sufficient to find that Nurse Eggler acted with the requisite mental state of criminal recklessness. *See Hennings v. Gorczyk,* 134 F.3d 104, 108 (2d Cir.1998). As noted, plaintiff never complained to Nurse Eggler of any pain, discomfort, or any condition that was "fast-degenerating" or "life-threatening." Nurse Eggler did not refuse to treat plaintiff altogether, but merely informed plaintiff when he arrived at midnight that he would have to wait until morning to be evaluated. Assuming that these allegations amount to negligent treatment, they are insufficient to state a claim for deliberate indifference, and plaintiff has not alleged any denial of care in the face of needed medical attention that would suggest a higher level of culpability. *See Estelle,* 429 U.S. at 106 (holding that a negligent diagnosis is not enough to meet the subjective test). Plaintiff's perspective that something more should have been done in light of his medical condition is not sufficient basis for a deliberate indifference claim. *See Chance v. Armstrong,* 143 F.3d 698, 703 (2d Cir.1998).

**\*5** Accordingly, as plaintiff has failed to plead that Nurse Eggler was deliberately indifferent to a serious medical need of his, he has failed to state a claim against her for which relief may granted.

### B. Dr. Sidorowicz

**[3]** Plaintiff makes a variety of claims against Dr. Sidorowicz. First, plaintiff contends that Dr. Sidorowicz did not personally examine him until January 14. However, even plaintiff's own complaint establishes that he did receive medical treatment between his arrival at the facility and his examination by Dr. Sidorowicz, and moreover, that a doctor was involved in that period of

treatment. The record is unclear as to whether it was Dr. Sidorowicz or another physician who was involved in plaintiff's treatment before January 14. Indeed, plaintiff does not allege that any serious medical event between his arrival and January 14 (the date of his last alleged attacked) was knowingly untreated by health officials. Furthermore, on January 14, Dr. Sidorowicz did treat plaintiff. The Eighth Amendment requires that there not be deliberate indifference to a prisoner's serious medical needs, but not that a prisoner receive unfettered access to the medical care of his choice. *Alston v. Howard,* 925 F.Supp. 1034 (S.D.N.Y.1996). "Plaintiff's preference for an examination by a physician does 'not sustain a claim for denial of medical assistance. 'There is no right to the medical treatment of one's choice if the prescribed treatment is based upon applicable medical standards." ' *Reyes v. Turner,* No. 93 Civ. 8951, 1996 WL 93728, at *2 (S.D.N.Y. Mar.5, 1996) (quoting *McCloud v. Delaney,* 677 F.Supp. 230, 232 (S.D.N.Y.1988).

**[4]** Plaintiff also raises issues relating to the treatment of his asthma that involved changing his medication, lowering the dosage, and for some period, taking him off of his medication entirely. These complaints are properly characterized as a difference of opinion —plaintiff's desired treatment versus Dr. Sidorowicz's medical judgment—rather than deliberate indifference. "It is well-established that mere disagreement over the proper treatment does not create a constitutional claim." *Chance,* 143 F.3d at 703; *Dean v. Coughlin,* 804 F.2d 207, 215 (2d Cir.1986). In fact, "so long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." *Id.* The government must provide medical care for its prisoners, *Estelle,* 429 U.S. at 103, but "the prisoner's right is to medical care—not to the type or scope of medical care which he personally desires." *Linden v. Westchester County,* No. 93 Civ. 8373, 1995 WL 686742, at *3 (S.D.N.Y. Nov.20, 1995) (quoting *United States ex rel. Hyde v. McGinnis,* 429 F.2d 864, 867 (2d Cir.1970)). In fact, plaintiff's allegations, rather than reflecting indifference, reflect attention and include Dr. Sidorowicz's telling statement to plaintiff to let the doctor know if the medication was not effective so it could be changed.

**\*6** **[5]** At worst, plaintiff's allegations against Dr. Sidorowicz amount to negligence or medical malpractice. Even if we assume those conclusions *arguendo,* plaintiff's

claim must still fail because a "complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Estelle,* 429 U.S. at 105–06; *Hathaway,* 99 F.3d at 553; *Farmer,* 511 U.S. at 837; *see also Vento v. Lord,* No. 96 Civ. 6169, 1997 WL 431140, at *4 (S.D.N.Y. July 31, 1997) ("[D]isagreement with the defendants' diagnoses and dissatisfaction with the treatment of her medical condition [are] allegations which are not actionable under the Eighth Amendment."). Further, allegations of negligence, medical malpractice, or errors in professional judgment are insufficient to sustain an Eighth Amendment claim. *See Zimmerman v. Macomber,* No. 95 Civ. 0882, 2001 WL 946383 (S.D.N.Y. Aug.21, 2001); *see also Gill v. Mooney,* 824 F.2d 192 (2d Cir.1987). It is also clear that medical malpractice does not become a constitutional violation merely because the victim is a prisoner. *Estelle,* 429 U.S. at 106.

**[6]** Finally, we comment on one particular aspect of plaintiff's allegations, namely, the remark attributed to Dr. Sidorowicz concerning the possible effect of budgetary constraints on plaintiff's treatment. First, based on plaintiff's own allegations, there was no withholding of treatment contemporaneous to the alleged remark. Second, even when plaintiff was taken off his asthma medication weeks later, he did not suffer any attacks. Furthermore, it should be noted that consideration of cost factors in choosing a course of treatment of a prisoner is, in and of itself, no more violative of a prisoner's constitutional rights than is, for example, the consideration of the cost of providing prescription drug coverage to non-incarcerated recipients of Medicare.

## C. N.A. Lilley and Deputy Brown

**[7]** Plaintiff asserts that he wrote letters complaining about his medical treatment to both N.A. Lilley and Deputy Brown. Plaintiff claims that N.A. Lilley failed to properly address the problems outlined in his complaint letter to her and that Deputy Brown improperly offered a medical opinion in his response to plaintiff's complaint letter to him. Plaintiff asserts N.A. Lilley wrote a response to him in support of the course of treatment plaintiff was receiving from Dr. Sidorowicz and the behavior of Nurse Eggler. In Deputy Brown's alleged response to plaintiff, he justified the medical regime implemented by Dr. Sidorowicz. Neither defendant, based on these

2003 WL 21507345

facts alleged in plaintiff's complaint, can be said to have violated plaintiff's constitutional rights in any manner.

It is well-established that liability for damages under § 1983 may not be based on the *respondeat superior* or vicarious liability doctrines. *Monell v. Dep't of Social Servs.,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Koehl v. Dalsheim,* No. 94 Civ. 3351, 1995 WL 331905, at *2 (S.D.N.Y. June 5, 1995). The mere fact that a defendant occupies a position of authority will not merit the imposition of § 1983 liability. *See Al Jundi v. Estate of Rockefeller,* 885 F.2d 1060, 1065 (2d Cir.1989). A supervisor is not liable for civil rights violations committed by his subordinates;[4] to recover damages in a § 1983 claim, a plaintiff must demonstrate that the defendants were personally involved in the alleged wrongdoing. *Id; McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977) (holding that defendants' personal involvement is a prerequisite to recovery of damages under § 1983, since the doctrine of *respondeat superior* does not apply), *cert. denied,* 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1978). Personal involvement of a supervisory official within the meaning of § 1983 may be established through: (1) direct participation in a constitutional wrong; (2) failure to remedy a known wrong; (3) creation of an unconstitutional practice or custom; or (4) gross negligence in managing subordinates who have caused the violation. *Williams v. Smith,* 781 F.2d 319, 323–24 (2d Cir.1986); *Candeleria v. Coughlin,* 787 F.Supp. 368, 372 (S.D.N.Y.), *aff'd,* 979 F.2d 845 (2d Cir.1992). Plaintiff's complaint fails to meet any of the four circumstances recognized.

[4]   We are assuming only for purposes of this decision that the relationship of supervisor/subordinate exists between the relevant actors.

**\*7** Plaintiff does not present any facts to suggest that the supervisory defendants were personally responsible for the alleged denial of medical care or in the alleged deprivation of plaintiff's rights. No unconstitutional practice or custom was created nor were the supervisory defendants grossly negligent in managing their subordinates. Moreover, as we find no underlying constitutional violations were committed by Nurse Eggler or Dr. Sidorowicz, N.A. Lilley's and Deputy Brown's alleged failure to act on information concerning such alleged violations does not support liability under § 1983.[5]

[5]   Defendants argue additionally that they are not individually liable under § 1983 because they are entitled to qualified immunity. Because we dismiss plaintiff's claims on the merits, it is unnecessary to address this issue.

*CONCLUSION*

A *pro se* complaint can only be dismissed for failure to state a claim if it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–6, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Even applying these liberal standards, plaintiff's claims against each of the defendants is not cognizable under § 1983. Accordingly, we conclude that plaintiff's allegations of deliberate indifference to his medical needs fail to state a claim upon which relief can be granted. Defendants' motion to dismiss is granted.

Pursuant to 28 U.S.C. § 1915(a)(3), it is hereby certified that any appeal from this order would not be taken in good faith. *See Coppedge v. United States,* 369 U.S. 438, 444–45, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962). The Clerk of the Court is hereby requested to close this case on the Court's docket.

IT IS SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2003 WL 21507345

---

**End of Document**                © 2018 Thomson Reuters. No claim to original U.S. Government Works.